**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                               :

In re:                      :        Chapter 11
                               :

FLAG TELECOM HOLDINGS LIMITED,  :     Case Nos. 02-11732 through
FLAG LIMITED,                 :     02-11736 and 02-11975 through
FLAG PACIFIC USA LIMITED,       :     02-11979 (ALG)
FLAG TELECOM GROUP SERVICES LIMITED,  :
FLAG TELECOM LIMITED,        :     (Jointly Administered)
FLAG TELECOM USA LTD.,        :
FLAG ASIA LIMITED,           :
FLAG ATLANTIC HOLDINGS LIMITED,   :
FLAG ATLANTIC LIMITED, and     :
FLAG ATLANTIC USA LIMITED,      :
                               :

                 Debtors.     :
---------------------------------------------------------------x


### THIRD AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION OF DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE (AS MODIFIED BY CERTAIN TECHNICAL AMENDMENTS)


**GIBSON, DUNN & CRUTCHER LLP**
Conor D. Reilly (CR-6559)
M. Natasha Labovitz (MNL-5153)
Craig A. Bruens (CB-2349)
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Attorneys for Debtors

Dated: August 8, 2002
Modified:   September 23, 2002

**TABLE OF CONTENTS**

Page

I.   DEFINITIONS AND CONSTRUCTION OF TERMS..................................................................1

   1.1. Definitions ...............................................................................................................1
      1.1.1.    Account .......................................................................................1
      1.1.2.    Ad Hoc FLAG Holdco Bondholder Committee.....................1
      1.1.3.    Administrative Expense Claim ...............................................1
      1.1.4.    Administrative Bar Date .........................................................1
      1.1.5.    Alcatel.......................................................................................1
      1.1.6.    Alcatel Agreements..................................................................2
      1.1.7.    Alcatel Collateral.....................................................................2
      1.1.8.    Allowed......................................................................................2
      1.1.9.    Allowed Claim...........................................................................2
      1.1.10.   Allowed Interest........................................................................3
      1.1.11    Avoidance Action .....................................................................3
      1.1.12.   Bankruptcy Code ......................................................................3
      1.1.13.   Bankruptcy Court......................................................................3
      1.1.14.   Bankruptcy Rules......................................................................3
      1.1.15.   Bar Date ....................................................................................3
      1.1.16.   Bar Date Order .........................................................................3
      1.1.17.   Barclays.....................................................................................3
      1.1.18.   Bermuda Court ..........................................................................3
      1.1.19.   Bermuda Priority Claims .........................................................3
      1.1.20.   Bermuda Provisional Liquidator .............................................4
      1.1.21.   Bermuda Proceedings...............................................................4
      1.1.22.   Bermuda Reorganization Reserve ............................................4
      1.1.23.   Bermuda Schemes.....................................................................4
      1.1.24.   Blackstone.................................................................................4
      1.1.25.   Blackstone Note ........................................................................4
      1.1.26.   Business Day..............................................................................4
      1.1.27.   Cash ...........................................................................................4
      1.1.28.   Change in Control.....................................................................4
      1.1.29.   Chapter 11 Cases ......................................................................5
      1.1.30.   Ciena .........................................................................................5
      1.1.31.   Claim .........................................................................................5
      1.1.32.   Class...........................................................................................5
      1.1.33.   Commencement Date ................................................................5
      1.1.34.   Confirmation Date.....................................................................5
      1.1.35.   Confirmation Hearing ...............................................................5
      1.1.36.   Confirmation Hearing Date ......................................................5
      1.1.37.   Confirmation Order...................................................................5
      1.1.38.   Corporate Documents................................................................5
      1.1.39.   Creditor......................................................................................6
      1.1.40.   Creditors' Committee................................................................6
      1.1.41.   Debtors......................................................................................6
      1.1.42.   Disclosure Statement ................................................................6
      1.1.43.   Disputed Claim .........................................................................6

1.1.44. Disputed Interest ........................................................................................6
1.1.45. Distribution Date .........................................................................................6
1.1.46. Effective Date .............................................................................................6
1.1.47. Estate ..........................................................................................................6
1.1.48. Executive Employment Agreements ...........................................................6
1.1.49. Executive Retention Plans ..........................................................................6
1.1.50. Executive Term Sheet .................................................................................7
1.1.51. Executives ...................................................................................................7
1.1.52. Final Order ..................................................................................................7
1.1.53. Final Resolution ..........................................................................................7
1.1.54. FLAG Atlantic Banks ...................................................................................7
1.1.55. FLAG Atlantic Banks Claim .........................................................................7
1.1.56. FLAG Atlantic Debtors ................................................................................7
1.1.57. FLAG Atlantic Disputed Claims Reserve .....................................................7
1.1.58. FLAG Atlantic Holdings Assets ...................................................................7
1.1.59. FLAG Atlantic Limited Assets .....................................................................7
1.1.60. FLAG Atlantic Limited Credit Agreement ....................................................8
1.1.61. FLAG Atlantic Net Avoidance Recoveries ...................................................8
1.1.62. FLAG Atlantic Segregated Recovery Account .............................................8
1.1.63. FLAG Atlantic Segregated Recovery Account Initial Deposit .......................8
1.1.64. FLAG Atlantic USA Limited Assets .............................................................8
1.1.65. FLAG Holdco ...............................................................................................8
1.1.66. FLAG Holdco Assets ...................................................................................8
1.1.67. FLAG Holdco Bondholder ............................................................................9
1.1.68. FLAG Holdco Bondholder Claim ..................................................................9
1.1.69. FLAG Holdco Bondholder Distribution Record Date .....................................9
1.1.70. FLAG Holdco Bondholder Notes ..................................................................9
1.1.71. FLAG Holdco Bondholder Notes Guarantors ...............................................9
1.1.72. FLAG Holdco Bonds .....................................................................................9
1.1.73. FLAG Holdco Bonds Section 510(b) Claims ................................................9
1.1.74. FLAG Holdco Disputed Claims Reserve .......................................................9
1.1.75. FLAG Holdco Indenture ...............................................................................9
1.1.76. FLAG Holdco Indenture Trustee ...................................................................9
1.1.77. FLAG Holdco Other Section 510(b) Claims .................................................9
1.1.78. FLAG Limited Banks .................................................................................10
1.1.79. FLAG Limited Bondholder ..........................................................................10
1.1.80. FLAG Limited Bondholder Claim ...............................................................10
1.1.81. FLAG Limited Bondholder Distribution Record Date ...................................10
1.1.82. FLAG Limited Bonds ..................................................................................10
1.1.83. FLAG Limited Bonds Section 510(b) Claims ..............................................10
1.1.84. FLAG Limited Common Shares ..................................................................10
1.1.85. FLAG Limited Credit Agreement ................................................................10
1.1.86. FLAG Limited Indenture .............................................................................10
1.1.87. FLAG Limited Indenture Trustee ................................................................10
1.1.88. Fully Diluted Basis .....................................................................................10
1.1.89. General Unsecured Claim ..........................................................................10
1.1.90. Houlihan ....................................................................................................11
1.1.91. Houlihan Note ............................................................................................11
1.1.92. Intercompany Claim ...................................................................................11
1.1.93. Interest ......................................................................................................11
1.1.94. Kasowitz ...................................................................................................11

1.1.95. Kasowitz Performance Fee...............................................................................11
1.1.96. Lien.......................................................................................................................11
1.1.97. Liquidation ..........................................................................................................11
1.1.98. Litigation Trust ....................................................................................................11
1.1.99. Litigation Trustee ................................................................................................11
1.1.100. Litigation Trust Beneficiaries .............................................................................11
1.1.101. New Holdco ..........................................................................................................11
1.1.102. New Holdco Common Shares...............................................................................11
1.1.103. New Holdco Indenture..........................................................................................12
1.1.104. Non-Debtor Affiliates...........................................................................................12
1.1.105. Other Indemnified Directors/Employees.............................................................12
1.1.106. Other Priority Claim ............................................................................................12
1.1.107. Objection ..............................................................................................................12
1.1.108. Party in Interest ...................................................................................................12
1.1.109. Person...................................................................................................................12
1.1.110. Plan.......................................................................................................................12
1.1.111. Plan Administrator ...............................................................................................13
1.1.112. Plan Supplement ..................................................................................................13
1.1.113. Priority Tax Claim................................................................................................13
1.1.114. Professionals ........................................................................................................13
1.1.115. Professional Fees .................................................................................................13
1.1.116. Pro Rata Share or Pro Rata Basis ......................................................................13
1.1.117. Reach.....................................................................................................................13
1.1.118. Reach Agreements ................................................................................................13
1.1.119. Reach and Alcatel Assumption Order...................................................................13
1.1.120. Reach Development Agreement .............................................................................14
1.1.121. Reinstated or Reinstatement ................................................................................14
1.1.122. Released Parties ...................................................................................................14
1.1.123. Reorganized ..........................................................................................................14
1.1.124. Retiree Benefits ....................................................................................................14
1.1.125. Schedules...............................................................................................................14
1.1.126. Secondary Liability Claim ...................................................................................14
1.1.127. Section 510(b) Claim............................................................................................14
1.1.128. Secured Claim ......................................................................................................14
1.1.129. Security..................................................................................................................15
1.1.130. Subcommittee of FLAG Limited Bondholders .....................................................15
1.1.131. U.S. Trustee...........................................................................................................15
1.1.132. Voting Deadline ....................................................................................................15
1.1.133. Voting Record Date...............................................................................................15
1.2. Bankruptcy Code Terms .....................................................................................................15
1.3. Accounting Terms................................................................................................................15
1.4. Rules of Construction ..........................................................................................................15
1.5. Computation of Time ...........................................................................................................15

II. TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND
PRIORITY TAX CLAIMS; PAYMENT OF CERTAIN STATUTORY FEES...........................15

2.1. Administrative Expense Claims ..........................................................................................15
2.2. Bar Date for Filing Administrative Expense Claims...........................................................16
2.3. Professional Compensation and Expense Reimbursement Claims .........................................16
2.4. Priority Tax Claims .............................................................................................................16
2.5. Statutory Fees ......................................................................................................................16

III. CLASSIFICATION OF CLAIMS AGAINST AND INTERESTS IN DEBTORS........................ 17

   3.1. Classification of Claims ................................................................................................ 17
   3.2. Classes with Respect to FLAG Holdco ....................................................................... 17
       3.2.1.    Class FH-1 ..................................................................................................... 17
       3.2.2.    Class FH-2 ..................................................................................................... 17
       3.2.3.    Class FH-3 ..................................................................................................... 17
       3.2.4.    Class FH-4 ..................................................................................................... 17
       3.2.5.    Class FH-5 ..................................................................................................... 17
       3.2.6.    Class FH-6 ..................................................................................................... 17
       3.2.7.    Class FH-7 ..................................................................................................... 17
   3.3. Classes with Respect to FLAG Limited ....................................................................... 17
       3.3.1.    Class FL-1 ...................................................................................................... 17
       3.3.2.    Class FL-2 ...................................................................................................... 17
       3.3.3.    Class FL-3 ...................................................................................................... 17
       3.3.4.    Class FL-4 ...................................................................................................... 17
       3.3.5.    Class FL-5 ...................................................................................................... 18
       3.3.6.    Class FL-6 ...................................................................................................... 18
   3.4. Classes with Respect to FLAG Telecom Group Services Limited ............................. 18
       3.4.1.    Class FTGSL-1 .............................................................................................. 18
       3.4.2.    Class FTGSL-2 .............................................................................................. 18
       3.4.3.    Class FTGSL-3 .............................................................................................. 18
       3.4.4.    Class FTGSL-4 .............................................................................................. 18
   3.5. Classes with Respect to FLAG Pacific USA Limited .................................................. 18
       3.5.1.    Class FPUL-1 ................................................................................................ 18
       3.5.2.    Class FPUL-2 ................................................................................................ 18
       3.5.3.    Class FPUL-3 ................................................................................................ 18
       3.5.4.    Class FPUL-4 ................................................................................................ 18
   3.6. Classes with Respect to FLAG Telecom Limited ........................................................ 18
       3.6.1.    Class FTL-1 ................................................................................................... 18
       3.6.2.    Class FTL-2 ................................................................................................... 18
       3.6.3.    Class FTL-3 ................................................................................................... 18
       3.6.4.    Class FTL-4 ................................................................................................... 18
   3.7. Classes with Respect to FLAG Telecom USA Ltd. ..................................................... 18
       3.7.1.    Class FTUL-1 ................................................................................................ 18
       3.7.2.    Class FTUL-2 ................................................................................................ 18
       3.7.3.    Class FTUL-3 ................................................................................................ 19
       3.7.4.    Class FTUL-4 ................................................................................................ 19
   3.8. Classes with Respect to FLAG Asia Limited .............................................................. 19
       3.8.1.    Class FASL-1 ................................................................................................ 19
       3.8.2.    Class FASL-2 ................................................................................................ 19
       3.8.3.    Class FASL-3 ................................................................................................ 19
       3.8.4.    Class FASL-4 ................................................................................................ 19
   3.9. Classes with Respect to FLAG Atlantic Holdings Limited ......................................... 19
       3.9.1.    Class FAHL-1 ............................................................................................... 19
       3.9.2.    Class FAHL-2 ............................................................................................... 19
       3.9.3.    Class FAHL-3 ............................................................................................... 19
       3.9.4.    Class FAHL-4 ............................................................................................... 19
       3.9.5.    Class FAHL-5 ............................................................................................... 19
   3.10. Classes with Respect to FLAG Atlantic Limited ........................................................ 19
       3.10.1.   Class FAL-1 .................................................................................................. 19

3.10.2. Class FAL-2 .................................................................................................. 19
3.10.3. Class FAL-3 .................................................................................................. 19
3.10.4. Class FAL-4 .................................................................................................. 19
3.10.5. Class FAL-5 .................................................................................................. 19
3.11. Classes with Respect to FLAG Atlantic USA Limited .............................................. 20
3.11.1. Class FAUL-1 ................................................................................................ 20
3.11.2. Class FAUL-2 ................................................................................................ 20
3.11.3. Class FAUL-3 ................................................................................................ 20
3.11.4. Class FAUL-4 ................................................................................................ 20
3.11.5. Class FAUL-5 ................................................................................................ 20

IV.  TREATMENT OF CLAIMS AND INTERESTS AND DESIGNATION
WITH RESPECT TO IMPAIRMENT ................................................................................ 20

4.1. Treatment of Class FH-1 – Other Priority Claims Against FLAG Holdco .............................. 20
4.1.1. Impairment and Voting .................................................................................... 20
4.1.2. Distributions .................................................................................................... 20
4.2. Treatment of Class FH-2 – Secured Claims Against FLAG Holdco ........................................ 20
4.2.1. Impairment and Voting .................................................................................... 20
4.2.2. Distributions .................................................................................................... 20
4.3. Treatment of Class FH-3 – General Unsecured Claims Against FLAG Holdco ....................... 21
4.3.1. Impairment and Voting .................................................................................... 21
4.3.2. Distributions .................................................................................................... 21
4.4. Treatment of Class FH-4 – FLAG Holdco Bondholder Claims ............................................. 21
4.4.1. Impairment and Voting .................................................................................... 21
4.4.2. Distributions .................................................................................................... 21
4.4.3. Terms of the FLAG Holdco Bondholder Notes .............................................. 22
4.4.4. Full and Complete Satisfaction ....................................................................... 25
4.5. Treatment of Class FH-5 – All FLAG Holdco Bonds Section 510(b) Claims ........................ 26
4.5.1. Impairment and Voting .................................................................................... 26
4.5.2. Distributions .................................................................................................... 26
4.6. Treatment of Class FH-6 – Interests in FLAG Holdco ....................................................... 26
4.6.1. Impairment and Voting .................................................................................... 26
4.6.2. Distributions .................................................................................................... 26
4.7. Treatment of Class FH-7 – All FLAG Holdco Other Section 510(b) Claims ......................... 26
4.7.1. Impairment and Voting .................................................................................... 26
4.7.2. Distributions .................................................................................................... 26
4.8. Treatment of Class FL-1 – Other Priority Claims Against FLAG Limited ............................. 26
4.8.1. Impairment and Voting .................................................................................... 26
4.8.2. Distributions .................................................................................................... 26
4.9. Treatment of Class FL-2 – Secured Claims Against FLAG Limited ...................................... 27
4.9.1. Impairment and Voting .................................................................................... 27
4.9.2. Distributions .................................................................................................... 27
4.10. Treatment of Class FL-3 – General Unsecured Claims Against FLAG Limited ..................... 27
4.10.1. Impairment and Voting .................................................................................... 27
4.10.2. Distributions .................................................................................................... 27
4.11. Treatment of Class FL-4 – FLAG Limited Bondholder Claims ........................................... 27
4.11.1. Impairment and Voting .................................................................................... 27
4.11.2. Distributions .................................................................................................... 27
4.11.3. Full and Complete Satisfaction ....................................................................... 28
4.12. Treatment of Class FL-5 – All FLAG Limited Bonds Section 510(b) Claims ....................... 28
4.12.1. Impairment and Voting .................................................................................... 28

4.12.2. Distributions .................................................................. 28
4.13. Treatment of Class FL-6 – Interests in FLAG Limited .......................................... 28
    4.13.1. Impairment and Voting ....................................................... 28
    4.13.2. Distributions .................................................................. 28
4.14. Treatment of Class FTGSL-1 – Other Priority Claims Against FLAG Telecom Group............. 29
    4.14.1. Impairment and Voting ....................................................... 29
    4.14.2. Distributions .................................................................. 29
4.15. Treatment of Class FTGSL-2 – Secured Claims Against FLAG Telecom Group
    Services Limited ............................................................................. 29
    4.15.1. Impairment and Voting ....................................................... 29
    4.15.2. Distributions .................................................................. 29
4.16. Treatment of Class FTGSL-3 – General Unsecured Claims Against FLAG Telecom
    Group Services Limited ...................................................................... 29
    4.16.1. Impairment and Voting ....................................................... 29
    4.16.2. Distributions .................................................................. 29
4.17. Treatment of Class FTGSL-4 – Interests in FLAG Telecom Group Services Limited............... 29
    4.17.1. Impairment and Voting ....................................................... 29
    4.17.2. Distributions .................................................................. 29
4.18. Treatment of Class FPUL-1 – Other Priority Claims Against FLAG Pacific USA Limited ....... 30
    4.18.1. Impairment and Voting ....................................................... 30
    4.18.2. Distributions .................................................................. 30
4.19. Treatment of Class FPUL-2 – Secured Claims Against FLAG Pacific USA Limited................ 30
    4.19.1. Impairment and Voting ....................................................... 30
    4.19.2. Distributions .................................................................. 30
4.20. Treatment of Class FPUL-3 – General Unsecured Claims Against FLAG Pacific
    USA Limited ................................................................................ 30
    4.20.1. Impairment and Voting ....................................................... 30
    4.20.2. Distributions .................................................................. 30
4.21. Treatment of Class FPUL-4 – Interests in FLAG Pacific USA Limited.................................. 30
    4.21.1. Impairment and Voting ....................................................... 30
    4.21.2. Distributions .................................................................. 30
4.22. Treatment of Class FTL-1 – Other Priority Claims Against FLAG Telecom Limited ............... 31
    4.22.1. Impairment and Voting ....................................................... 31
    4.22.2. Distributions .................................................................. 31
4.23. Treatment of Class FTL-2 – Secured Claims Against FLAG Telecom Limited........................ 31
    4.23.1. Impairment and Voting ....................................................... 31
    4.23.2. Distributions .................................................................. 31
4.24. Treatment of Class FTL-3 – General Unsecured Claims Against FLAG Telecom Limited........ 31
    4.24.1. Impairment and Voting ....................................................... 31
    4.24.2. Distributions .................................................................. 31
4.25. Treatment of Class FTL-4 – Interests in FLAG Telecom Limited........................................ 31
    4.25.1. Impairment and Voting ....................................................... 31
    4.25.2. Distributions .................................................................. 31
4.26. Treatment of Class FTUL-1 – Other Priority Claims Against FLAG Telecom USA Ltd.......... 32
    4.26.1. Impairment and Voting ....................................................... 32
    4.26.2. Distributions .................................................................. 32
4.27. Treatment of Class FTUL-2 – Secured Claims Against FLAG Telecom USA Ltd .................. 32
    4.27.1. Impairment and Voting ....................................................... 32
    4.27.2. Distributions .................................................................. 32
4.28. Treatment of Class FTUL-3 – General Unsecured Claims Against FLAG
    Telecom USA Ltd ........................................................................... 32

4.28.1.    Impairment and Voting ................................................................ 32
4.28.2.    Distributions ............................................................................. 32
4.29. Treatment of Class FTUL-4 – Interests in FLAG Telecom USA Ltd ................................... 32
4.29.1.    Impairment and Voting ................................................................ 32
4.29.2.    Distributions ............................................................................. 32
4.30. Treatment of Class FASL-1 – Other Priority Claims Against FLAG Asia Limited.................. 33
4.30.1.    Impairment and Voting ................................................................ 33
4.30.2.    Distributions ............................................................................. 33
4.31. Treatment of Class FASL-2 – Secured Claims Against FLAG Asia Limited ......................... 33
4.31.1.    Impairment and Voting ................................................................ 33
4.31.2.    Distributions ............................................................................. 33
4.32. Treatment of Class FASL-3 – General Unsecured Claims Against FLAG Asia Limited .......... 33
4.32.1.    Impairment and Voting ................................................................ 33
4.32.2.    Distributions ............................................................................. 33
4.33. Treatment of Class FASL-4 – Interests in FLAG Asia Limited ........................................ 33
4.33.1.    Impairment and Voting ................................................................ 33
4.33.2.    Distributions ............................................................................. 33
4.34. Treatment of Class FAHL-1 – Other Priority Claims Against FLAG Atlantic
        Holdings Limited ................................................................................... 34
4.34.1.    Impairment and Voting ................................................................ 34
4.34.2.    Distributions ............................................................................. 34
4.35. Treatment of Class FAHL-2 – Secured Claims Against FLAG Atlantic Holdings
        Limited (Other Than the FLAG Atlantic Banks Claim) ........................................ 34
4.35.1.    Impairment and Voting ................................................................ 34
4.35.2.    Distributions ............................................................................. 34
4.36. Treatment of Class FAHL-3 – Secondary Liability Claims of FLAG Atlantic Banks ............... 34
4.36.1.    Impairment and Voting ................................................................ 34
4.36.2.    Distributions ............................................................................. 34
4.37. Treatment of Class FAHL-4 – General Unsecured Claims Against FLAG Atlantic
        Holdings Limited ................................................................................... 34
4.37.1.    Impairment and Voting ................................................................ 34
4.37.2.    Distributions ............................................................................. 34
4.38. Treatment of Class FAHL-5 – Interests in FLAG Atlantic Holdings Limited.......................... 35
4.38.1.    Impairment and Voting ................................................................ 35
4.38.2.    Distributions ............................................................................. 35
4.39. Treatment of Class FAL-1 – Other Priority Claims Against FLAG Atlantic Limited................ 35
4.39.1.    Impairment and Voting ................................................................ 35
4.39.2.    Distributions ............................................................................. 35
4.40. Treatment of Class FAL-2 – Secured Claims Against FLAG Atlantic Limited Senior
        in Right of Payment to the FLAG Atlantic Banks Claim ........................................ 35
4.40.1.    Impairment and Voting ................................................................ 35
4.40.2.    Distributions ............................................................................. 35
4.41. Treatment of Class FAL-3 – FLAG Atlantic Banks Claim............................................. 35
4.41.1.    Impairment and Voting ................................................................ 35
4.41.2.    Distributions ............................................................................. 35
4.41.3.    Full and Complete Satisfaction ..................................................... 36
4.42. Treatment of Class FAL-4 – General Unsecured Claims Against FLAG Atlantic Limited ........ 36
4.42.1.    Impairment and Voting ................................................................ 36
4.42.2.    Distributions ............................................................................. 36
4.43. Treatment of Class FAL-5 – Interests in FLAG Atlantic Limited ................................... 36
4.43.1.    Impairment and Voting ................................................................ 36

        4.43.2.     Distributions ................................................................................. 36

    4.44. Treatment of Class FAUL-1 – Other Priority Claims Against FLAG Atlantic USA Limited ..... 36

        4.44.1.     Impairment and Voting ................................................................. 36

        4.44.2.     Distributions ................................................................................. 36

    4.45. Treatment of Class FAUL-2 – Secured Claims Against FLAG Atlantic USA Limited
    (Other than the FLAG Atlantic Banks Claim) .................................................... 37

        4.45.1.     Impairment and Voting ................................................................. 37

        4.45.2.     Distributions ................................................................................. 37

    4.46. Treatment of Class FAUL-3 – Secondary Liability Claims of FLAG Atlantic Banks .............. 37

        4.46.1.     Impairment and Voting ................................................................. 37

        4.46.2.     Distributions ................................................................................. 37

    4.47. Treatment of Class FAUL-4 – General Unsecured Claims Against FLAG Atlantic
    USA Limited ........................................................................................... 37

        4.47.1.     Impairment and Voting ................................................................. 37

        4.47.2.     Distributions ................................................................................. 37

    4.48. Treatment of Class FAUL-5 – Interests in FLAG Atlantic USA Limited ................................. 37

        4.48.1.     Impairment and Voting ................................................................. 37

        4.48.2.     Distributions ................................................................................. 38

    4.49. No Duplication of Claims or Distributions ....................................................... 38

V.    PROVISIONS REGARDING VOTING, EFFECT OF REJECTION BY IMPAIRED
    CLASSES, AND CONSEQUENCES OF NONCONFIRMABILITY ......................................... 38

    5.1.  Voting Rights ....................................................................................... 38

    5.2.  Controversy Regarding Impairment ............................................................ 38

    5.3.  Acceptance Requirements ........................................................................ 38

    5.4.  Nonconsensual Confirmation .................................................................... 38

    5.5.  Nonconfirmability ................................................................................. 38

VI.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................................. 38

    6.1.  Assumption of Contracts and Leases ........................................................... 38

    6.2.  Rejection of Certain Specified Contracts and Leases ........................................ 39

    6.3.  Insurance Policies ................................................................................. 39

    6.4.  D & O Advance and Reimbursement Obligations ........................................... 39

    6.5.  Cure of Defaults ................................................................................... 40

    6.6.  Rejection Claims .................................................................................. 40

    6.7.  Special Provisions Regarding Executive Employment Agreements and Executive
    Retention Plans ..................................................................................... 40

        6.7.1.     Amendments ............................................................................... 40

        6.7.2.     Severance ................................................................................... 41

        6.7.3      Retention of Pre-Commencement Date Payments ............................... 41

        6.7.4.     Bonuses .................................................................................... 41

        6.7.6.     No Defaults/Cure Obligations ......................................................... 42

        6.7.7.     Waiver of Deferred Compensation ................................................... 42

VII. MEANS OF IMPLEMENTATION OF THE PLAN ......................................................... 42

    7.1.  Funding of Plan .................................................................................... 42

    7.2.  Formation of New Holdco ....................................................................... 42

    7.3.  Transfer of All Assets from FLAG Holdco to New Holdco Free and Clear of Liens ............. 42

    7.4.  Transfer of FLAG Atlantic Holdings and Limited Assets and Certain Cash to New
    Holdco; Transfer of FLAG Atlantic USA Limited Assets to FLAG Telecom USA
    Limited; Release of FLAG Atlantic Banks' Claims and Liens ................................. 43

7.5. Issuance of New Holdco Common Shares and FLAG Holdco Bondholder Notes ....................43
    7.5.1.    Issuance of New Holdco Common Shares............................................................43
    7.5.2.    Issuance of FLAG Holdco Bondholder Notes......................................................44
    7.5.3.    Listing of New Holdco Common Shares................................................................44
7.6. Transfer and Exchange of FLAG Limited Common Shares ..................................................44
7.7. Post Effective-Date Management...........................................................................................45
    7.7.1.    Reorganized Debtors (Other than FLAG Holdco and the FLAG Atlantic
            Debtors)...............................................................................................................45
    7.7.2.    FLAG Holdco........................................................................................................45
    7.7.3.    FLAG Atlantic Debtors ........................................................................................45
    7.7.4.    New Holdco ..........................................................................................................47
7.8. The FLAG Atlantic Net Avoidance Recoveries.....................................................................47
    7.8.1.    Rights to Prosecute..............................................................................................47
    7.8.2.    The FLAG Atlantic Segregated Recovery Account...............................................48
    7.8.3.    Repayment of the FLAG Atlantic Segregated Recovery Account Initial Deposit .....48
    7.8.4.    Distributions of the FLAG Atlantic Net Avoidance Action Recoveries...................48
7.9. Eventual Wind Down and Liquidation of the FLAG Atlantic Debtors ...................................48
    7.9.1.    FLAG Atlantic USA Limited ................................................................................48
    7.9.2.    FLAG Atlantic Holdings Limited and FLAG Atlantic Limited ..............................48
7.10. Method of Distributions Under the Plan.................................................................................49
    7.10.1.    In General.............................................................................................................49
    7.10.2.    Delivery of Distributions......................................................................................49
    7.10.3.    Timing of Distributions........................................................................................49
    7.10.4.    Distributions of Cash............................................................................................49
    7.10.5.    Minimum Cash Distributions ...............................................................................49
    7.10.6.    Unclaimed Distributions ......................................................................................49
    7.10.7.    Withholding and Reporting Requirements ...........................................................49
    7.10.8.    Set off Rights........................................................................................................49
7.11. Disputed Claims and Disputed Interests.................................................................................50
    7.11.1.    Right to Object to Claims .....................................................................................50
    7.11.2.    Process for Disputing Claims ...............................................................................50
    7.11.3.    Deadline for Asserting Disputes...........................................................................50
    7.11.4.    Distributions Relating to Disputed Claims ...........................................................50
    7.11.5.    Estimation of Disputed Claims and Disputed Interests .........................................50
    7.11.6.    Disposition of the FLAG Atlantic Disputed Claims Reserve and the
            FLAG Holdco Disputed Claims Reserve .............................................................51
    7.11.7.    Limitation of Requirement to Reserve for Certain Disputed Claims.......................51
7.12. Merger Rights.......................................................................................................................51
7.13. Surrender of Instruments, Securities and Other Documentation.............................................51
7.14. Retention of Causes of Action. .............................................................................................51
7.15. Ratification and Adoption of Executive Retention Plans and Employment and
    Indemnity Agreement............................................................................................................52
7.16. Intercompany Claims............................................................................................................52
7.17. Claims Against Multiple Debtors...........................................................................................52
7.18. Issuance of the Blackstone Note and the Houlihan Note........................................................52
    7.18.1.    Blackstone.............................................................................................................52
    7.18.2.    Houlihan ...............................................................................................................53
7.19. Exchange Rate for FLAG Bondholder Claims.......................................................................53
7.20. Prohibition on Issuance of Nonvoting Equity Securities ........................................................54
7.21. Bermuda Reorganization Reserve ..........................................................................................54
7.22. Litigation Trust.....................................................................................................................54

|  | 7.22.1. | Creation | 54 |
|  | 7.22.2. | Purpose and Characterization | 54 |
|  | 7.22.3. | Valuation | 54 |
|  | 7.22.4. | Term | 54 |
|  | 7.22.5. | Issuance of Beneficial Interests in Litigation Trust | 55 |
|  | 7.22.6. | Expenses | 55 |

**VIII. EFFECT OF CONFIRMATION OF PLAN** ............................................................... 55

    8.1. Revesting of Assets ............................................................................................... 55
    8.2. Discharge of Debtors ............................................................................................ 55
    8.3. Injunction Related to the Discharge ..................................................................... 56
    8.4. Releases ............................................................................................................. 56
        8.4.1. Releases by the Debtors and Non-Debtor Affiliates ......................... 56
        8.4.2. Releases by Certain Parties ................................................................ 56
        8.4.3. Exclusions and Clarifications with Respect to Releases .................... 57
        8.4.4. Option to Release Claims Against Directors and Officers .................. 58
        8.4.5. Injunction Related to Releases ........................................................... 58
        8.4.6. Further Provisions with Respect to Insurance Policies ...................... 58
    8.5. Release of Liens .................................................................................................... 58
    8.6. Term of Bankruptcy Injunction or Stays .............................................................. 58
    8.7. Binding Effect ....................................................................................................... 58

**IX. EFFECTIVENESS OF THE PLAN** ...................................................................... 59

    9.1. Conditions Precedent ............................................................................................ 59
    9.2. Effect of Failure of Conditions ............................................................................ 59
    9.3. Waiver of Conditions ............................................................................................ 59

**X. RETENTION OF JURISDICTION** ..................................................................... 59

    10.1. Bankruptcy Court .................................................................................................. 59
    10.2. No Limitation on Bermuda Court .......................................................................... 60

**XI. MISCELLANEOUS PROVISIONS** ..................................................................... 60

    11.1. Plan Supplement ................................................................................................... 60
    11.2. Authorization of Effectuating Documents and Further Transactions .................... 60
    11.3. Exemption from Transfer Taxes ............................................................................ 61
    11.4. Statutory Fees ....................................................................................................... 61
    11.5. Termination of Creditors' Committee .................................................................... 61
    11.6. Employment and Payment of Debtors' Professionals After Effective Date ........... 61
    11.7. Release and Exculpation With Respect to Actions Related to Plan and Chapter 11 Cases ... 61
    11.8. Amendment or Modification of Plan ..................................................................... 61
    11.9. Severability ........................................................................................................... 62
    11.10. Revocation or Withdrawal of Plan ........................................................................ 62
    11.11. Governing Law ..................................................................................................... 62
    11.12. Notices ............................................................................................................. 62
    11.13. Effect on Certain Agreements and REACH and Alcatel Assumption Order .......... 63
    11.14. Special Provisions Regarding the Continuance of Retiree Benefits ...................... 63
    11.15. Direction to Parties ............................................................................................... 63
    11.16. Inconsistency ........................................................................................................ 64

FLAG Telecom Holdings Limited, FLAG Limited, FLAG Pacific USA Limited, FLAG Telecom Group Services Limited, FLAG Telecom Limited, FLAG Telecom USA Ltd., FLAG Asia Limited, FLAG Atlantic Holdings Limited, FLAG Atlantic Limited and FLAG Atlantic USA Limited (collectively, the "Debtors"), jointly propose the following plan of reorganization (the "Plan") pursuant to section 1121(a) of title 11 of the United States Code:

For a discussion of the Debtors' history, business, properties, key contracts, and future business plans, creditors and shareholders of the Debtors should consult the Third Amended and Restated Disclosure Statement with Respect to Third Amended and Restated Joint Plan of Reorganization of Debtors Under Chapter 11 of the Bankruptcy Code, dated August 8, 2002 (the "Disclosure Statement"). All creditors and shareholders are encouraged to consult the Disclosure Statement and to read the Plan carefully before voting to accept or reject the Plan.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCE OR REJECTION OF THE PLAN.

## I.

## DEFINITIONS AND CONSTRUCTION OF TERMS

1.1. *Definitions*. As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

1.1.1. *Account* shall have the meaning given to it in section 9-102(b) of the Uniform Commercial Code, as adopted by the State of New York effective July 1, 2001.

1.1.2. *Ad Hoc FLAG Holdco Bondholders' Committee* means the informal committee comprised of certain FLAG Holdco Bondholders.

1.1.3. *Administrative Expense Claim* means any Claim against the Debtors under sections 503(b), 507(b), or 1114(e) of the Bankruptcy Code, including claims for (a) any actual and necessary expenses of preserving the Debtors' estates, (b) any actual and necessary expenses of operating the Debtors' business during the pendency of the Chapter 11 Cases, (c) all compensation or reimbursement of expenses allowed by the Bankruptcy Court under section 328, 330 or 503 of the Bankruptcy Code, or by Final Order of the Bankruptcy Court, (d) the costs of curing defaults under leases and executory contracts assumed under the Plan, and (e) severance payable under the terms of the Executive Employment Agreements (as amended by the terms hereof) as a result of a termination of the employment during the pendency of the Chapter 11 Cases of an Executive who is party to any such Executive Employment Agreement.

1.1.4. *Administrative Bar Date* means the thirtieth (30th) day after the Effective Date.

1.1.5. *Alcatel* means, collectively, Alcatel Submarine Networks, Alcatel Submarine Networks SA, Alcatel Submarine Networks Inc, Alcatel Submarine Networks Limited, Alcatel Italia S.p.A, Alcatel Espana, S.A., Alcatel CIT S.A., Alcatel Telecom U.K. Ltd., Alcatel U.K. Ltd., Alcatel USA Marketing, Inc and Alcatel S.A.

1.1.6. **Alcatel Agreements** means collectively (a) the Settlement Agreement between FLAG Telecom Holdings Limited, FLAG Atlantic Limited, FLAG Atlantic USA Limited, FLAG Atlantic UK Limited, FLAG Atlantic France SARL, FLAG Telecom Service Italia SPA, FLAG Telecom Ireland Network Limited, FLAG Telecom Network USA Limited, FLAG Telecom France Network SAS, FLAG Telecom Espana Network SAU, FLAG WEB Limited, and all of the other Debtors, and all of the aforementioned entities' respective subsidiaries, and Alcatel S.A., Alcatel Submarine Networks, Alcatel Submarine Networks S.A., Alcatel Submarine Networks Inc., Alcatel Submarine Networks Limited, Alcatel Italia S.p.A., Alcatel Espana SA, Alcatel CIT S.P., Alcatel U.K. Ltd, and Alcatel USA Marketing, Inc., all of their respective subsidiaries and affiliates, in the form and to the extent approved by the Bankruptcy Court at or before the Confirmation Hearing; (b) the Settlement Agreement, effective as of May 16, 2002, by and among (i) all of the Debtors, including without limitation FLAG Telecom Holdings Limited and FLAG Asia Limited, (ii) Reach Ltd., Reach Cable Networks Limited and Reach Networks, and (iii) Alcatel Submarine Networks S.A. and Alcatel S.A., in the form and to the extent approved by the Bankruptcy Court at or before the Confirmation Hearing; and (c) the Amended and Restated Construction Contract between FLAG Asia Limited, Alcatel Submarine Networks, Fujitsu Limited, Reach Cable Networks Limited and Reach Networks KK (Japan) for the North Asia Cable System, the Amended and Restated Contract between FLAG Asia Limited, Alcatel Submarine Networks, Reach Cable Networks Limited and Reach Networks KK, for the FLAG West Asia Cable System, and the Amended and Restated Marine Maintenance Agreement, between FLAG Asia Limited, Alcatel Submarine Networks S.A., Reach Cable Networks Limited and Reach Networks KK, and all other documents and agreements executed in connection therewith, in each case in the form and to the extent approved by the Bankruptcy Court at or before the Confirmation Hearing in connection with the Debtors' motion to assumed such agreements as amended.

1.1.7. **Alcatel Collateral** means one fiber pair and related equipment and rights on the FLAG North Asian Loop in which FLAG Asia Limited has an ownership interest, which is to be pledged to secure certain debt obligations to Alcatel.

1.1.8. **Allowed** means an Allowed Claim or an Allowed Interest in a particular Class or specified category.

1.1.9. **Allowed Claim** means:

(a)    a Claim against a Debtor, that has been or hereafter is listed by a Debtor in its Schedules (as such Schedules may be amended from time to time) as liquidated in amount and not disputed or contingent as to liability, as to which no Objection has been filed prior to the Effective Date;

(b)    a Claim against a Debtor, proof of which was filed on or before the Bar Date (or deemed timely filed pursuant to Bankruptcy Rule 3003(c)(3)), to the extent that such proof of Claim asserts liability against a Debtor in an amount which exceeds the amount for such Claim listed by a Debtor in its Schedules (as such Schedules may be amended from time to time) as liquidated in amount and not disputed or contingent as to liability or security for such Claim which is not reflected in the Schedules (as such Schedules may be amended from time to time), as to which no Objection has been timely filed; or

(c)　　　any other Claim against a Debtor, to the extent that such Claim has been allowed (i) by a Final Order; or (ii) pursuant to the express terms of the Plan.

1.1.10. ***Allowed Interest*** means an Interest that (a) was registered or listed as of the Distribution Date in a stock register that is maintained by or on behalf of a Debtor and (b) either (i) has not been the subject of any Objection or (ii) has been allowed (A) by a Final Order or (B) pursuant to the express terms of the Plan.

1.1.11. ***Avoidance Action*** means any action, other than those expressly released under the Plan or pursuant to a Final Order of the Bankruptcy Court prior to the Effective Date, which is filed or which may be filed pursuant to the provisions of sections 544, 545, 547, 548, 549, 550, and/or 553(b) of the Bankruptcy Code, any actions based on applicable nonbankruptcy law that may be incorporated or brought under the foregoing sections of the Bankruptcy Code, or any other similar action or proceeding filed to recover property for or on behalf of the Estates or to avoid a lien or transfer.

1.1.12. ***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.1.13. ***Bankruptcy Court*** means the United States District Court for the Southern District of New York, having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court under section 151 of title 28 of the United States Code.

1.1.14. ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, including the local rules and general orders of the Bankruptcy Court.

1.1.15. ***Bar Date*** means the applicable deadline by which a proof of Claim, proof of Interest or motion for allowance of Claim must have been or must be filed, as established by the Plan or an order of the Bankruptcy Court, including, but not limited to, the Bar Date Order and the Confirmation Order. The term "Bar Date" shall include any applicable deadline for filing (i) Administrative Expense Claims, including Claims for Professional Fees, or (ii) Claims arising from rejection of executory contracts and unexpired leases.

1.1.16. ***Bar Date Order*** means an order or orders entered or to be entered by the Bankruptcy Court setting procedures and a deadline for the filing of proofs of Claim, and, if appropriate, proofs of Interest.

1.1.17. ***Barclays*** means Barclays Bank plc, solely in its capacity as the Administrative Agent for the FLAG Atlantic Banks under the FLAG Atlantic Limited Credit Agreement.

1.1.18. ***Bermuda Court*** means the Supreme Court of Bermuda.

1.1.19. ***Bermuda Priority Claims*** means those claims entitled to priority distribution under the Bermuda Schemes or in the liquidation of FLAG Holdco, FLAG Atlantic Holdings Limited, and FLAG Atlantic Limited by reason of security, statutory preference, or other rule of law applicable thereto, but shall not include any claim to the extent that it is to be paid under the Plan.

1.1.20.  **Bermuda Provisional Liquidators** means Richard Heis and Chris Laverty of KPMG LLP in England and Robert D. Steinhoff of KPMG in Bermuda, in their capacity as the Joint Provisional Liquidators appointed in the Bermuda Proceedings.  The term Bermuda Provisional Liquidators shall also include any liquidators subsequently appointed in the Bermuda Proceedings and any liquidators or other officeholders appointed over FLAG Atlantic Holdings Limited.

1.1.21.  **Bermuda Proceedings** means the winding up proceedings initiated by FLAG Holdco, FLAG Limited, and FLAG Atlantic Limited on April 19, 2002, as Case Nos. 150, 151, and 152 of 2002, and by FLAG Asia Limited on April 30, 2002, as Case No 167 of 2002, in the Bermuda Court.

1.1.22.  **Bermuda Reorganization Reserve** means an amount equal to the total of the Bermuda Priority Claims and the amount established by the Bermuda Provisional Liquidators as reasonably required to complete the orderly winding up and liquidation or exit from provisional liquidation of (a) the companies subject to the Bermuda Proceedings; and (b) FLAG Atlantic Holdings Limited, including both incurred and estimated costs relating to the Bermuda Proceedings, the Bermuda Schemes and any proceedings relating to FLAG Atlantic Holdings Limited.  The reserve shall be treated as a single reserve held in trust by the Bermuda Provisional Liquidators (and any successors thereto) for the purposes only of paying the amounts set out herein and otherwise in resulting trust for the benefit of New Holdco.

1.1.23.  **Bermuda Schemes** means the creditors' schemes of arrangement between FLAG Holdco and FLAG Limited and their scheme creditors submitted in connection with the Bermuda Proceedings.

1.1.24.  **Blackstone** means The Blackstone Group.

1.1.25.  **Blackstone Note** means that certain note and related security documents to be issued by New Holdco under the under the New Holdco Indenture on the Effective Date to Blackstone pursuant to Section 7.18.1 as partial compensation for its services as financial advisors to the Debtors in the Chapter 11 Cases.

1.1.26.  **Business Day** means any day, other than a Saturday, Sunday or legal holiday, as such term is defined in Bankruptcy Rule 9006(a), that is a business day under the terms of the Bermuda Schemes.

1.1.27.  **Cash** or **$** means the legal tender of the United States of America and equivalents thereof.

1.1.28.  **Change in Control** means the occurrence of one or more of the following events after the Effective Date and other than as contemplated in the Plan:

> (a)  any "person" or "group" is or becomes the "beneficial owner" (as such terms are used in Rule 13d-3 promulgated under the Security Exchange Act of 1934, as amended, except that a Person shall be deemed to have "beneficial ownership" of all securities that such Person has the right to acquire, whether such right is exercisable immediately or only after the passage of time), directly or indirectly, of 51% or more of the New Holdco Common Shares (measured by voting power rather than number of shares); or

(b)　　New Holdco consolidates or merges with or into any other Person or sells, assigns, conveys, transfers, leases or otherwise disposes of all or substantially all of its assets and the assets of New Holdco's direct and indirect subsidiaries (on a consolidated basis) to any other Person, in either one transaction or a series of related transactions which occur within six months, other than a consolidation or merger or disposition of assets:  (i) of or by the New Holdco into or to a 100% owned subsidiary of New Holdco, or (ii) pursuant to a transaction in which the outstanding New Holdco Common Shares are changed into or exchanged for securities or other property with the effect that the beneficial owners of the outstanding New Holdco Common Shares immediately prior to such transaction, beneficially own, directly or indirectly, at least a majority of the New Holdco Common Shares (measured by voting power rather than number of shares) of the surviving corporation or the Person to whom New Holdco's assets are transferred immediately following such transaction.

1.1.29.  ***Chapter 11 Cases*** means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors and currently pending in the Bankruptcy Court as Jointly Administered Chapter 11 Case Nos. 02-11732 through 02-11736 and 02-11975 through 02-11979 (ALG).

1.1.30.  ***Ciena*** means Ciena Corporation.

1.1.31.  ***Claim*** means a "claim," as defined in section 101(5) of the Bankruptcy Code, whether or not asserted.

1.1.32.  ***Class*** means a category of Claims or Interests, as classified in Article III.

1.1.33.  ***Commencement Date*** means (a) April 12, 2002, with respect to FLAG Holdco, FLAG Atlantic Limited, FLAG Atlantic Holdings Limited, FLAG Limited, FLAG Pacific USA Limited, and (b) April 23, 2002, with respect to FLAG Telecom Group Services Limited, FLAG Telecom Limited, FLAG Telecom USA Ltd., FLAG Asia Limited, and FLAG Atlantic USA Limited.

1.1.34.  ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.1.35.  ***Confirmation Hearing*** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.1.36.  ***Confirmation Hearing Date*** means the day on which the Confirmation Hearing is first commenced.

1.1.37.  ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.1.38.  ***Corporate Documents*** means, with respect to each of the Debtors, the certificate of incorporation, formation or registration, articles of incorporation or association, memorandum of association, memorandum of continuance, charter, by-laws, and any other similar agreements, instruments or documents constituting the organization or formation of each of the Debtors.

1.1.39. ***Creditor*** means the holder of a Claim against any Debtor or any Estate.

1.1.40. ***Creditors' Committee*** means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as the same may be reconstituted from time to time by action of the U.S. Trustee or order of the Bankruptcy Court.

1.1.41. ***Debtors*** means one or more of FLAG Holdco, FLAG Limited, a company organized under the laws of Bermuda, FLAG Pacific USA Limited, a corporation organized under the laws of the State of Delaware, FLAG Telecom Group Services Limited, a company organized under the laws of Bermuda, FLAG Telecom Limited, a company organized under the laws of the United Kingdom, FLAG Telecom USA Ltd., a corporation organized under the laws of the State of Delaware, FLAG Asia Limited, a company organized under the laws of Bermuda, FLAG Atlantic Holdings Limited, a company organized under the laws of Bermuda, FLAG Atlantic Limited, a company organized under the laws of Bermuda, and FLAG Atlantic USA Limited, a corporation organized under the laws of the State of Delaware, in their capacities as prepetition, postpetition or postconfirmation debtors and as singular, consolidated, merged or reorganized entities, depending upon the context.

1.1.42. ***Disclosure Statement*** has the meaning given to it in the preamble.

1.1.43. ***Disputed Claim*** means a Claim against any Debtor or any Estate that (a) is not Allowed and (b) has not been disallowed or otherwise expunged by a Final Order.

1.1.44. ***Disputed Interest*** means an Interest that is asserted in a kind or amount that is inconsistent with the kind or amount reflected on the books and records of the Debtors, and as to which the existence and validity has not been determined, resolved or adjudicated by a Final Order or by an agreement executed by the Debtors and the holder of the asserted Interest.

1.1.45. ***Distribution Date***, when used with respect to each Claim and Interest, means as soon as practicable after (a) the Effective Date, or (b) solely with respect to Disputed Claims and Disputed Interests as of the Effective Date, thirty (30) days after the date upon which the Claim or Interest becomes an Allowed Claim or Allowed Interest.

1.1.46. ***Effective Date*** means the first Business Day after the date on which the conditions specified in Section 9.1 have been satisfied or waived by the Debtors, and on which date the Debtors shall file a notice of occurrence of Effective Date.

1.1.47. ***Estate*** means the legal entity administering the property of a Debtor, in its capacity as a debtor in possession, between the Commencement Date and the Effective Date, created pursuant to section 541 of the Bankruptcy Code.

1.1.48. ***Executive Employment Agreements*** means the Employment Agreements between FLAG Holdco and/or FLAG Telecom Limited and each of the Executives, each as amended pursuant to amendment approved by the board of directors of FLAG Holdco on April 4, 2002.

1.1.49. ***Executive Retention Plans*** means the Key Executive Retention Programme and the CEO Retention Programme approved by the board of directors of FLAG Holdco on April 4, 2002.

1.1.50.  ***Executive Term Sheet*** means the term sheet, dated August 5, 2002, concerning compensation, indemnity and other matters applicable to the Executives.

1.1.51.  ***Executives*** mean Andrés Bande, Michel Cayouette, John Draheim, Andrew Evans, Mehrdad Mansourpour, Edward McCormack, Adnan Omar, Kees van Ophem, and Scott Rowswell.

1.1.52.  ***Final Order*** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, administrative agency or other tribunal, as entered on the docket in any Chapter 11 Case or such other court or body, (a) which has not been reversed, stayed, modified or amended, and as to which the time to appeal, seek certiorari or move for reargument or rehearing has expired, and no appeal, petition for certiorari, or motion for reargument or rehearing has been timely taken, or (b) as to which any appeal has been taken, any petition for certiorari or motion for reargument or rehearing has been filed, and such appeal, petition or motion has been conclusively withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari, reargument or rehearing was sought.

1.1.53.  ***Final Resolution*** means entry of a Final Order either (a) resolving the dispute at issue or (b) approving a settlement of such dispute under Bankruptcy Rule 9019(a).

1.1.54.  ***FLAG Atlantic Banks*** means the lenders under the FLAG Atlantic Limited Credit Agreement.

1.1.55.  ***FLAG Atlantic Banks Claim*** means any and all Claims, whether or not they are Secured Claims, of the FLAG Atlantic Banks against any of the FLAG Atlantic Debtors, including any such Claims arising out of or relating to the FLAG Atlantic Limited Credit Agreement.

1.1.56.  ***FLAG Atlantic Debtors*** means FLAG Atlantic Holdings Limited, FLAG Atlantic Limited, and FLAG Atlantic USA Limited.

1.1.57.  ***FLAG Atlantic Disputed Claims Reserve*** means the amount necessary to pay in full all asserted Claims against the FLAG Atlantic Debtors in Classes FAHL-1, FAHL-2, FAL-1, FAL-2, FAUL-1, and FAUL-2 that are Disputed Claims as of the Effective Date, which shall be held in trust by the Plan Administrator for the benefit of the holders of Disputed Claims in Classes FAHL-1, FAHL-2, FAL-1, FAL-2, FAUL-1, and FAUL-2, and placed into one or more segregated, interest bearing accounts under the control of the Plan Administrator for use for the purposes set out in the Plan.

1.1.58.  ***FLAG Atlantic Holdings Assets*** means any and all property of the Estate of FLAG Atlantic Holdings Limited pursuant to section 541 of the Bankruptcy Code, including any and all rights under executory contracts or unexpired leases assumed by FLAG Atlantic Holdings Limited under section 365 of the Bankruptcy Code, after making all payments required of FLAG Atlantic Holdings Limited on the Effective Date, but shall not include (a) any rights under executory contracts or unexpired leases which are rejected by FLAG Atlantic Holdings Limited pursuant to section 365 of the Bankruptcy Code; (b) any Avoidance Actions; (c) the FLAG Atlantic Segregated Recovery Account Initial Deposit; (d) the FLAG Atlantic Disputed Claims Reserve; or (e) the right to receive payment on account of any Intercompany Claims.

1.1.59.  ***FLAG Atlantic Limited Assets*** means any and all property of the Estate of FLAG Atlantic Limited pursuant to section 541 of the Bankruptcy Code, including any and all rights under executory contracts or unexpired leases assumed by FLAG Atlantic Limited under

section 365 of the Bankruptcy Code, after making all payments required of FLAG Atlantic Limited on the Effective Date, but shall not include (a) any rights under executory contracts or unexpired leases which are rejected by FLAG Atlantic Limited pursuant to section 365 of the Bankruptcy Code; (b) any Avoidance Actions; (c) the FLAG Atlantic Segregated Recovery Account Initial Deposit; (d) the FLAG Atlantic Disputed Claims Reserve; or (e) the right to receive payment on account of any Intercompany Claims.

1.1.60. **FLAG Atlantic Limited Credit Agreement** means the Credit Agreement dated as of October 8, 1999 (as the same has been or may be from time to time amended, modified, supplemented or restated) between FLAG Atlantic Limited, as Borrower, and Barclays, as the Administrative Agent, Dresdner Bank AG, New York Branch, as the Documentation Agent, Westdeutsche Landesbank Girozentrale, New York Branch, as the Syndication Agent, Barclays Bank plc and the other Lenders listed therein, as Lenders, and Barclays Capital, as the Lead Arranger.

1.1.61. **FLAG Atlantic Net Avoidance Recoveries** means the recoveries, if any, obtained on account of the Avoidance Actions belonging to the Estates of any of the FLAG Atlantic Debtors after deducting the actual costs and attorneys' fees incurred in connection with pursuing such Avoidance Actions (which costs shall be borne equally by each of the FLAG Atlantic Debtors) and the repayment of the FLAG Atlantic Segregated Recovery Account Initial Deposit.

1.1.62. **FLAG Atlantic Segregated Recovery Account** means the segregated interest-bearing bank account to be established by the Reorganized FLAG Atlantic Debtors pursuant to Section 7.8.2.

1.1.63. **FLAG Atlantic Segregated Recovery Account Initial Deposit** means the sum of One Hundred Thousand Dollars ($100,000) which shall be provided to the FLAG Atlantic Debtors by New Holdco, and which shall be held in trust by the Plan Administrator for the joint benefit of the FLAG Atlantic Debtors and deposited into the FLAG Atlantic Segregated Recovery Account on the Effective Date or as soon thereafter as practical for use in carrying out the terms of the Plan.

1.1.64. **FLAG Atlantic USA Limited Assets** means any and all property of the Estate of FLAG Atlantic USA Limited pursuant to section 541 of the Bankruptcy Code, including any and all rights under executory contracts or unexpired leases assumed by any of FLAG Atlantic USA Limited under section 365 of the Bankruptcy Code, after making all payments required of FLAG Atlantic USA Limited on the Effective Date, but shall not include (a) any rights under executory contracts or unexpired leases which are rejected by FLAG Atlantic USA Limited pursuant to section 365 of the Bankruptcy Code; (b) any Avoidance Actions; (c) the FLAG Atlantic Segregated Recovery Account Initial Deposit; (d) the FLAG Atlantic Disputed Claims Reserve; or (e) the right to receive payment on account of any Intercompany Claims.

1.1.65. **FLAG Holdco** means FLAG Telecom Holdings Limited, a company organized under the laws of Bermuda.

1.1.66. **FLAG Holdco Assets** means any and all property of the Estate of FLAG Holdco pursuant to section 541 of the Bankruptcy Code, including any and all rights under executory contracts or unexpired leases assumed by FLAG Holdco under section 365 of the Bankruptcy Code, after making all payments required of FLAG Holdco on the Effective Date, but shall not include (a) any rights under executory contracts or unexpired leases which are rejected by FLAG Holdco pursuant to section 365 of the Bankruptcy Code; (b) the FLAG Holdco Disputed Claim Reserve, (c) the Bermuda Reorganization Reserve, (d) such other payments as required to be made

by FLAG Holdco under the Plan, (e) the shares of FLAG Atlantic Holdings Limited, and (f) the FLAG Limited Common Shares.

1.1.67. ***FLAG Holdco Bondholder*** means any beneficial owner of FLAG Holdco Bonds.

1.1.68. ***FLAG Holdco Bondholder Claim*** means the Claim of (a) any FLAG Holdco Bondholder that is based upon or arises from a FLAG Holdco Bond or the FLAG Holdco Indenture, including principal, accrued and unaccrued interest and other charges; and (b) the FLAG Holdco Indenture Trustee under the FLAG Holdco Indenture; provided, however, the defined term shall not include FLAG Holdco Bonds Section 510(b) Claims.

1.1.69. ***FLAG Holdco Bondholder Distribution Record Date*** means the date and time on which the holders of Allowed FLAG Holdco Bondholder Claims entitled to receive distributions under the Plan are determined, which shall be the Confirmation Hearing Date at 5:00 p.m. Eastern Time.

1.1.70. ***FLAG Holdco Bondholder Notes*** means those notes and related security documents to be issued by New Holdco to the FLAG Holdco Indenture Trustee under the New Holdco Indenture on the Effective Date in the original principal amount of Forty-Five Million Dollars ($45,000,000) pursuant to Section 4.4.2.1(c) containing the material terms set forth in Section 4.4.3 and otherwise in form and substance acceptable to the Ad Hoc FLAG Holdco Bondholders' Committee in its reasonable discretion.

1.1.71. ***FLAG Holdco Bondholder Notes Guarantors*** means the Reorganized Debtors (other than FLAG Holdco and the FLAG Atlantic Debtors) and the Non-Debtor Affiliates and all future subsidiaries of New Holdco or any other guarantor (the "Guarantors")

1.1.72. ***FLAG Holdco Bonds*** means any of the 11 5/8% Senior Dollar Notes Due 2010 and/or any of the 11 5/8% Senior Euro Notes Due 2010.

1.1.73. ***FLAG Holdco Bonds Section 510(b) Claims*** means any and all Section 510(b) Claims arising out of, or related to, the purchase or sale of FLAG Holdco Bonds, including such Claims asserted by former holders of FLAG Holdco Bonds, but shall not include FLAG Holdco Bondholder Claims.

1.1.74. ***FLAG Holdco Disputed Claims Reserve*** means the amount necessary to pay all asserted Claims against FLAG Holdco in Classes FH-1, FH-2, and FH-3 that are Disputed Claims as of the Effective Date, which shall be held in trust by New Holdco for the benefit of holders of Disputed Claims in Classes FH-1, FH-2, and FH-3, and placed into a segregated, interest bearing account under the control of New Holdco for use for the purposes set out in the Plan.

1.1.75. ***FLAG Holdco Indenture*** means the Indenture(s) dated March 17, 2000 (as the same has been or may be from time to time amended, modified, supplemented or restated) between FLAG Holdco and the FLAG Holdco Indenture Trustee relating to the FLAG Holdco Bonds.

1.1.76. ***FLAG Holdco Indenture Trustee*** means The Bank of New York.

1.1.77. ***FLAG Holdco Other Section 510(b) Claims*** means any and all Section 510(b) Claims arising out of, or related to, the purchase or sale of any Security of FLAG Holdco other than the FLAG Holdco Bonds.

1.1.78. **_FLAG Limited Banks_** means the lenders under the FLAG Limited Credit Agreement.

1.1.79. **_FLAG Limited Bondholder_** means any beneficial holder of FLAG Limited Bonds.

1.1.80. **_FLAG Limited Bondholder Claim_** means the Claim of (a) any FLAG Limited Bondholder that is based upon or arises from a FLAG Limited Bond or the FLAG Limited Indenture, including principal, accrued and unaccrued interest and other charges; and (b) the FLAG Limited Indenture Trustee under the FLAG Limited Indenture; provided, however, the defined term shall not include FLAG Limited Bonds Section 510(b) Claims.

1.1.81. **_FLAG Limited Bondholder Distribution Record Date_** means the date and time on which the holders of Allowed FLAG Limited Bondholder Claims entitled to receive distributions under the Plan are determined, which shall be the Confirmation Hearing Date at 5:00 p.m. Eastern Time.

1.1.82. **_FLAG Limited Bonds_** means any of the 8 1/4% Senior Notes Due 2008, issued under the FLAG Limited Indenture.

1.1.83. **_FLAG Limited Bonds Section 510(b) Claims_** means any and all Section 510(b) Claims arising out of, or related to, the purchase or sale of FLAG Limited Bonds, including such Claims asserted by former holders of FLAG Limited Bonds, but shall not include FLAG Limited Bondholder Claims.

1.1.84. **_FLAG Limited Common Shares_** means the common shares issued by FLAG Limited and in existence immediately prior to the Effective Date.

1.1.85. **_FLAG Limited Credit Agreement_** means the Amended and Restated Credit Agreement, dated as of February 16, 2000 (as the same has been or may be from time to time amended, modified, supplemented or restated), among FLAG Limited, the Term Lenders thereto, the Revolving Credit Lenders thereto, Barclays Capital, Dresdner Bank AG (New York and Grand Cayman Branches), Barclays Bank plc, and International Trust Company of Bermuda Limited.

1.1.86. **_FLAG Limited Indenture_** means the Indenture dated January 30, 1998 (as the same has been or may be from time to time amended, modified, supplemented or restated) between FLAG Limited and the FLAG Limited Indenture Trustee relating to the FLAG Limited Bonds.

1.1.87. **_FLAG Limited Indenture Trustee_** means HSBC Bank USA.

1.1.88. **_Fully Diluted Basis_** means, with respect to the calculation of a percentage of stock ownership at any date, such calculation performed giving effect to all actual issuances of stock pursuant to the Plan, whether on or after the Effective Date, but not giving effect to (a) any post-Effective Date issuance of stock not expressly contemplated and required by the Plan; or (b) specifically with respect to the New Holdco Common Shares, any options that may be issued to employees or directors of New Holdco or any of the Reorganized Debtors after the Effective Date pursuant to applicable law up to an amount not to exceed 10% of the otherwise outstanding New Holdco Common Shares.

1.1.89. **_General Unsecured Claim_** means a Claim that is not a Secured Claim, an Administrative Expense Claim, an Other Priority Claim, a Priority Tax Claim, a Bermuda Priority

Claim, a Section 510(b) Claim, a FLAG Holdco Bondholder Claim, or a FLAG Limited Bondholder Claim.

1.1.90. ***Houlihan*** means Houlihan Lokey Howard & Zukin Capital.

1.1.91. ***Houlihan Note*** means that certain note and related security documents to be issued by New Holdco under the New Holdco Indenture on the Effective Date to Houlihan pursuant to Section 7.18.2 as partial compensation for its services as financial advisors to the Creditors' Committee in the Chapter 11 Cases.

1.1.92. ***Intercompany Claim*** means any Claim by any Debtor or Non-Debtor Affiliate against a Debtor.

1.1.93. ***Interest*** means the rights of the holders of shares of equity securities of any Debtor authorized, issued and outstanding as of the Commencement Date, or any options, warrants and any rights of conversion or exchange with respect to equity securities of any Debtor.

1.1.94. ***Kasowitz*** means Kasowitz, Benson, Torres & Friedman LLP, legal counsel for the Ad Hoc FLAG Holdco Bondholders' Committee.

1.1.95. ***Kasowitz Performance Fee*** means the performance fee agreed upon between Kasowitz and the Ad Hoc FLAG Holdco Bondholders' Committee in the amount of Two Million Four Hundred and Fifty Thousand Dollars ($2,450,000).

1.1.96. ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code; provided, however, that a lien avoided in accordance with sections 544, 545, 547, 548 or 549 of the Bankruptcy Code shall not constitute a Lien.

1.1.97. ***Liquidation*** means (a) the sale of all or substantially all of the assets of New Holdco and its direct and indirect subsidiaries (on a consolidated basis) to any other Person, in either one sale or a series of related transactions which occur within six months, which occurs after or in connection with the cessation of all material business operations; or (b) the commencement of a case by or against New Holdco, or its successor, under the Bankruptcy Code, Bermuda law, or any insolvency-type proceeding in any jurisdiction.

1.1.98. ***Litigation Trust*** means the litigation trust created on the Effective Date pursuant to Section 7.22.

1.1.99. ***Litigation Trustee*** means the trustee of the Litigation Trust.

1.1.100. ***Litigation Trust Beneficiaries*** means the initial holders of New Holdco Common Shares as listed in the table in Section 7.5.1 in their capacity as the holders of all of the beneficial ownership interests in the Litigation Trust as provided in Section 7.22.

1.1.101. ***New Holdco*** means the corporation or other legal entity that will be created and come into existence under the laws of Bermuda on the Effective Date under Section 7.2 and pursuant to the formation documents to be included in the Plan Supplement.

1.1.102. ***New Holdco Common Shares*** means the fully paid and non-assessable common shares of New Holdco to be issued on the Effective Date pursuant to Section 7.5 to certain Creditors specified in the Plan.

1.1.103.   **New Holdco Indenture** means the indenture dated as of the Effective Date by and between New Holdco and the FLAG Holdco Indenture Trustee which shall be provided in the Plan Supplement and shall be in form and substance acceptable to the Ad Hoc FLAG Holdco Bondholders' Committee, in its reasonable discretion.

1.1.104.   **Non-Debtor Affiliates** means FLAG Acquisition No. 1 Corporation, FLAG Pacific Holdings Limited, FLAG Pacific Limited, FLAG Pacific Canada Limited, FLAG Pacific Japan Limited, FLAG Telecom Singapore Pte. Limited, FLAG Telecom Development Limited, FLAG Telecom Development Services Company LLC, FLAG Access India Private Ltd., FLAGWEB Limited, FLAG Telecom Network Services Limited, FLAG Telecom Ireland Limited, FLAG Telecom Japan Limited, FLAG Telecom Espana SA, FLAG Telecom Serizi Italia SpA, FLAG Telecom Ireland Services Limited, FLAG Telecom Servicios S.A. de C.V., FLAG Telecom Argentina SA, FLAG Telecom Brasil Holdings Ltda, FLAG Telecom Brasil Ltda, FLAG Telecom Ireland Network Limited, FLAG Telecom Network USA Limited, FLAG Telecom Deutschland Network GmbH, FLAG Telecom Nederland Network BV, FLAG Telecom Belgium Network SA, FLAG Telecom Switzerland Network AG, FLAG Telecom Austria Network GmbH, FLAG Telecom Norway Network AS, FLAG Telecom France Network SAS, FLAG Telecom Espana Network SAU, FLAG Telecom Global Network Limited, FLAG Telecom Asia Limited, FLAG Telecom France Services Eurl, FLAG Telecom Deutschland GmbH, FLAG Telecom Services Italia Srl (in liquidation) FLAG Telecom Nederland BV, FLAG Telecom Hellas AE, FLAG Telecom Austria GmbH, FLAG Asia Holdings Limited, FLAG Telecom Korea Limited, Seoul Telenet Inc., FLAG Telecom Taiwan Services Limited, FLAG Holdings (Taiwan) Limited, FLAG Telecom Taiwan Limited (in incorporation), FLAG Atlantic UK Limited, and FLAG Atlantic France SARL.

1.1.105.   **Other Indemnified Directors/Employees** means Thomas Bartlett, Natapun Boribalburibhand, Umberto Silvestri, Theodore Schell, Osama Jamjoom, Owen Best and Jim Boucher.

1.1.106.   **Other Priority Claim** means a Claim (or portion thereof), if any, entitled to priority under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

1.1.107.   **Objection** means an objection to the allowance of a Claim or Interest interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court.

1.1.108.   **Party in Interest** means a Person that has a direct financial interest in the outcome of a particular matter or is an agent or duly authorized representative of a Person that has a direct financial interest in the outcome of a particular matter.

1.1.109.   **Person** means any individual, entity, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint stock company, estate, trust, unincorporated association or organization, official committee, *ad hoc* committee, governmental agency or political subdivision thereof, the United States Trustee, and any successors or assigns of any of the foregoing.

1.1.110.   **Plan** means this chapter 11 plan of reorganization (including all exhibits and schedules annexed hereto and the documents contained in the Plan Supplement or otherwise delivered in connection herewith), either in its present form or as it may be altered, amended, or modified from time to time.

1.1.111.  **Plan Administrator** means the Person appointed under Section 7.7.3.1 to serve as administrator of the Plan with respect to the FLAG Atlantic Debtors, with the rights and duties set forth in Section 7.7.3.2.

1.1.112.  **Plan Supplement** means the volume containing certain implementation documents as provided for in Section 11.1.

1.1.113.  **Priority Tax Claim** means a Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.1.114.  **Professionals** means those Persons (a) employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code, for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(1) of the Bankruptcy Code and/or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court or is sought pursuant to section 503(b)(4) of the Bankruptcy Code.

1.1.115.  **Professional Fees** means the fees for professional services rendered and expenses incurred in connection with such services by Professionals.

1.1.116.  **Pro Rata Share** or **Pro Rata Basis** means the proportion that the amount of any Claim or Interest in a particular Class bears to the aggregate amount of all Claims or Interests in that Class, as of the date of determination, or, when used with respect to an Allowed Claim or Allowed Interest, the proportion that the amount of any Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in that Class.

1.1.117.  **Reach** means Reach Ltd., Reach Cable Networks Limited, and Reach Networks KK (Japan).

1.1.118.  **Reach Agreements** means collectively (a) the Settlement Agreement effective as of May 16, 2002, by and among (i) all of the Debtors, including without limitation FLAG Telecom Holdings Limited and FLAG Asia Limited, (ii) Reach Ltd., Reach Cable Networks Limited and Reach Networks, and (iii) Alcatel Submarine Networks S.A. and Alcatel S.A., in the form and to the extent approved by the Bankruptcy Court at or before the Confirmation Hearing; and (b) the Reach Development Agreement, the Amended and Restated Construction Contract between FLAG Asia Limited, Alcatel Submarine Networks, Fujitsu Limited, Reach Cable Networks Limited and Reach Networks KK (Japan) for the North Asia Cable System, the Amended and Restated Contract between FLAG Asia Limited, Alcatel Submarine Networks, Reach Cable Networks Limited and Reach Networks KK, for the FLAG West Asia Cable System, the O&M Escrow Agreement, the Amendment to the KT Landing Station Agreement, and the Amended and Restated Marine Maintenance Agreement, between FLAG Asia Limited, Alcatel Submarine Networks S.A., Reach Cable Networks Limited and Reach Networks KK, and all other documents and agreements executed in connection therewith, in each case in the form and to the extent approved by the Bankruptcy Court at or before the Confirmation Hearing in connection with the Debtors' motion to assume such agreements as amended.

1.1.119.  **Reach and Alcatel Assumption Order** means the Agreed Order Resolving Motion of Alcatel Submarine Networks for an Order (1) Compelling the Debtors to Assume or Reject the Alcatel-FLAG West Asia Cable System Contract on or Before May 30, 2002, (2) Compelling the Debtors to Make Post-Petition Payments Under the contract, or in the

Alternative, Requiring Adequate Protection in Favor of Alcatel, and (3) Conditioning the Debtors' Use of the FLAG West Asia Cable System and Related Cross Motion of Reach, Ltd., *et al.*, entered by the Bankruptcy Court on May 14, 2002 and attached to the Disclosure Statement as Exhibit H.

1.1.120. ***Reach Development Agreement*** means the Amended and Restated Submarine Cable System Development Agreement, between FLAG Asia Limited, Reach Cable Networks Limited and Reach Networks KK, in the form approved by the Bankruptcy Court at or before the Confirmation Hearing in connection with the Debtors' motion to assumed such agreements as amended.

1.1.121. ***Reinstated*** or ***Reinstatement*** means rendering a Claim or Interest "unimpaired" within the meaning of section 1124 of the Bankruptcy Code.

1.1.122. ***Released Parties*** means each of the FLAG Atlantic Banks, the FLAG Holdco Indenture Trustee, the FLAG Holdco Bondholders, the FLAG Limited Indenture Trustee, the FLAG Limited Bondholders, Alcatel, Ciena, Lucent Technologies Nederland B.V., the FLAG Limited Banks, and the members of the Creditors' Committee in their individual capacities.

1.1.123. ***Reorganized*** means, when used with reference to any Debtor, such Debtor on and after the Effective Date.

1.1.124. ***Retiree Benefits*** means "retiree benefits," as defined in section 1114(a) of the Bankruptcy Code.

1.1.125. ***Schedules*** means the Debtors' schedules of assets and liabilities and statements of financial affairs filed in the Chapter 11 Cases, as they may be amended from time to time, filed with the Bankruptcy Court pursuant to section 521 of the Bankruptcy Code.

1.1.126. ***Secondary Liability Claim*** means a Claim against a Debtor as a guarantor of, or otherwise being jointly, severally, or secondarily liable for, any contractual, tort or other obligation of another Debtor, including any Claim based on: (a) guaranties of collection, payment or performance of an obligation of another Debtor; (b) indemnity bonds, obligations to indemnify or obligations to hold harmless; (c) performance bonds; (d) contingent liabilities arising out of contractual obligations or out of undertakings (including any assignment or other transfer) with respect to leases, operating agreements or other similar obligations made or given by a Debtor relating to the obligations or performance of another Debtor; (e) vicarious liability; or (f) any other joint or several liability that any Debtor may have in respect of any obligation of another Debtor that is the basis of a Claim.

1.1.127. ***Section 510(b) Claim*** means any Claim arising from the rescission of a purchase or sale of a Security of any of the Debtors or any of the Non-Debtor Affiliates, for damages arising from the purchase or sale of such a Security, or a Claim for reimbursement or contribution (including Claims for indemnification) allowed under section 502 of the Bankruptcy Code of any Person on account of such a claim, which Claim is subject to subordination under section 510(b) of the Bankruptcy Code.

1.1.128. ***Secured Claim*** means any Claim that is (a) secured by a valid, perfected, and enforceable Lien on or against property of a Debtor's Estate, but only to the extent of the value (as agreed to by the holder of such Claim and the Debtor or as determined by a Final Order of the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code) of the Claim holder's interest

in the Estate's interest in the property securing the Claim or (b) subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the amount subject to setoff and only if a valid proof of secured claim reflecting the setoff right is filed on or before the Bar Date.

1.1.129. **Security** means a "security," as defined in section 101(49) of the Bankruptcy Code.

1.1.130. **Subcommittee of FLAG Limited Bondholders** means the subcommittee comprised of the FLAG Limited Bondholders serving on the Creditors' Committee.

1.1.131. **U.S. Trustee** means the United States Trustee appointed pursuant to section 581 of title 28 of the United States Code to serve in the Southern District of New York.

1.1.132. **Voting Deadline** means September 20, 2002.

1.1.133. **Voting Record Date** means August 1, 2002.

1.2. **Bankruptcy Code Terms**. A term used herein that is not defined herein but is defined in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.

1.3. **Accounting Terms.** All accounting terms not specifically defined herein shall be construed in accordance with United States generally accepted accounting principles applied on a consistent basis.

1.4. **Rules of Construction**. For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing exhibit or schedule to the Plan or document referenced therein means such exhibit, schedule or document as it may have been or may be amended, modified or supplemented, (c) unless otherwise specified, all references in the Plan to the Preamble, Articles and Sections are references to the Preamble, Articles and Sections of or to the Plan, (d) the words "herein," "hereof," "hereunder," "hereto" and other words of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, (f) whenever it appears appropriate from the context, each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter, (g) whenever it appears appropriate from the context, each reference to a Debtor includes the applicable Reorganized Debtor and (h) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

1.5. **Computation of Time.** In computing time prescribed or allowed by the Plan, unless otherwise expressly provided, Bankruptcy Rule 9006(a) applies.

## II.

### TREATMENT OF ADMINISTRATIVE
### EXPENSE CLAIMS AND PRIORITY TAX CLAIMS; PAYMENT OF CERTAIN
### STATUTORY FEES

2.1. **Administrative Expense Claims.** Each holder of an Allowed Administrative Expense Claim against any Debtor (other than an Administrative Expense Claim described in Section 2.3) shall receive, at the sole option of the relevant Debtor, (a) payment on the Distribution Date of Cash in an amount equal to the unpaid portion of such Allowed Administrative Expense Claim or (b) such other treatment as to which the relevant Debtor and such Claim holder shall have agreed in writing; provided, however, that

Allowed Administrative Expense Claims representing obligations incurred in the ordinary course of business of or assumed by the Debtors shall be paid in full and performed by the Reorganized Debtors in the ordinary course of business in accordance with the terms and conditions of the particular transactions and any agreements relating thereto.

2.2.    ***Bar Date for Filing Administrative Expense Claims***.  The holder of an Administrative Expense Claim (other than an Administrative Expense Claim described in Section 2.3) shall file with the Bankruptcy Court and serve on the Debtors a request for payment of such Claim no later than the Administrative Bar Date.  Unless the Debtors object to an Administrative Expense Claim within thirty (30) days after the Administrative Bar Date, such Administrative Expense Claim shall be deemed to be Allowed in the amount requested.  In the event that the Debtors object to an Administrative Expense Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Expense Claim.  Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be filed with respect to:  (a) an Administrative Expense Claim which is paid or payable by a Debtor in the ordinary course of its business; and (b) the Debtors' obligations under the Reach and Alcatel Assumption Order, the Reach Agreements, and the Alcatel Agreements.

2.3.    ***Professional Compensation and Expense Reimbursement Claims***.  Notwithstanding any other provision of the Plan dealing with Administrative Expense Claims, any Person seeking an award by the Bankruptcy Court of an Allowed Administrative Expense Claim on account of Professional Fees incurred through and including the Effective Date under sections 328, 330, 331, or 503(b) of the Bankruptcy Code, shall file a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date no later than sixty (60) days after the Effective Date.  To the extent that such an award is granted by the Bankruptcy Court, the requesting Person shall receive, (a) payment of Cash in an amount equal to the amount Allowed by the Bankruptcy Court less all interim compensation paid to such Professional during these Chapter 11 Cases (provided that the amounts otherwise due to Houlihan and Blackstone shall be satisfied in part by the issuance of the Houlihan Note and the Blackstone Note), (b) payment on such other terms as may be mutually agreed upon by the holder of the Allowed Administrative Expense Claim for Professional Fees and the applicable Debtor (but in no event shall the payment exceed the amount Allowed by the Bankruptcy Court), or (c) payment in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court.  All Professional Fees for services rendered in connection with the Chapter 11 Cases and the Plan after the Effective Date, including those relating to the prosecution of causes of action preserved hereunder and the resolution of Disputed Claims, shall be paid by the applicable Debtor upon receipt of an invoice therefor, or on such other terms as such Debtor may agree to, without the requirement of further Bankruptcy Court authorization or entry of a Final Order.

2.4.    ***Priority Tax Claims***.  Each holder of an Allowed Priority Tax Claim against a Debtor shall receive, at the sole option of the relevant Debtor: (a) payment on the Distribution Date of Cash in an amount equal to the unpaid portion of such Allowed Priority Tax Claim; (b) Cash payments over a period not exceeding six years after the assessment of the tax on which such Claim is based, totaling the principal amount of such Claim plus simple interest accruing from the Effective Date, calculated at the effective interest rate for 90-day securities obligations issued by the United States Treasury on the Effective Date or, if no such securities were issued on the Effective Date, on the date of issuance immediately preceding the Effective Date; (c) payment upon such other terms determined by the Bankruptcy Court to provide the holder of such Claim with deferred Cash payments having a value, as of the Effective Date, equal to such Claim; or (d) such other treatment agreed to in writing by the applicable Debtor and the holder of such Claim.

2.5.    ***Statutory Fees.***  The Debtors shall pay in full in Cash any unpaid fees or charges assessed against the Estates under section 1930(a)(6) of chapter 123 of title 28 of the United States Code on the

Effective Date.  The Debtors shall pay all amounts due to the U.S. Trustee upon confirmation and, on and after the Confirmation Date, each of the Reorganized Debtors shall be liable for and shall pay the fees due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) until the entry of a final decree in such Reorganized Debtor's Chapter 11 Cases or until such Chapter 11 Case is converted or dismissed; provided, however, that New Holdco shall be responsible for and shall pay any such fees assessed against FLAG Holdco.

# III.

## CLASSIFICATION OF CLAIMS AGAINST AND INTERESTS IN DEBTORS

3.1.    ***Classification of Claims***.  Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in each of the Debtors.  A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan and of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released, withdrawn, or otherwise settled prior to the Effective Date.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims of the kinds specified in sections 507(a)(1) and 507(a)(8), respectively, of the Bankruptcy Code have not been classified and their treatment is set forth in Article II.

3.2.    ***Classes with Respect to FLAG Holdco.***  The Claims against and Interests in FLAG Holdco are classified as follows:

> 3.2.1.    ***Class FH-1***:  All Other Priority Claims against FLAG Holdco.

> 3.2.2.    ***Class FH-2***:  All Secured Claims against FLAG Holdco.

> 3.2.3.    ***Class FH-3***:  All General Unsecured Claims against FLAG Holdco.

> 3.2.4.    ***Class FH-4***:  All FLAG Holdco Bondholder Claims.

> 3.2.5.    ***Class FH-5***:  All FLAG Bonds Section 510(b) Claims against FLAG Holdco.

> 3.2.6.    ***Class FH-6***:  All Interests in FLAG Holdco.

> 3.2.7.    ***Class FH-7***:  All FLAG Holdco Other Section 510(b) Claims against FLAG Holdco.

3.3.    ***Classes with Respect to FLAG Limited.***  The Claims against and Interests in FLAG Limited are classified as follows:

> 3.3.1.    ***Class FL-1***:  All Other Priority Claims against FLAG Limited.

> 3.3.2.    ***Class FL-2***:  All Secured Claims against FLAG Limited.

> 3.3.3.    ***Class FL-3***:  All General Unsecured Claims against FLAG Limited.

> 3.3.4.    ***Class FL-4***:  All FLAG Limited Bondholder Claims.

3.3.5. ***Class FL-5***:  All FLAG Limited Bonds Section 510(b) Claims against FLAG Limited .

3.3.6. ***Class FL-6***:  All Interests in FLAG Limited.

3.4. ***Classes with Respect to FLAG Telecom Group Services Limited.***  The Claims against and Interests in FLAG Telecom Group Services Limited are classified as follows:

3.4.1. ***Class FTGSL-1***:  All Other Priority Claims against FLAG Telecom Group Services Limited.

3.4.2. ***Class FTGSL-2***:  All Secured Claims against FLAG Telecom Group Services Limited.

3.4.3. ***Class FTGSL-3***:  All General Unsecured Claims against FLAG Telecom Group Services Limited.

3.4.4. ***Class FTGSL-4***:  All Interests in FLAG Telecom Group Services Limited.

3.5. ***Classes with Respect to FLAG Pacific USA Limited.***  The Claims against and Interests in FLAG Pacific USA Limited are classified as follows:

3.5.1. ***Class FPUL-1***:  All Other Priority Claims against FLAG Pacific USA Limited.

3.5.2. ***Class FPUL-2***:  All Secured Claims against FLAG Pacific  USA Limited.

3.5.3. ***Class FPUL-3***:  All General Unsecured Claims against FLAG Pacific USA Limited.

3.5.4. ***Class FPUL-4***:  All Interests in FLAG Pacific USA Limited.

3.6. ***Classes with Respect to FLAG Telecom Limited.***  The Claims against and Interests in FLAG Telecom Limited are classified as follows:

3.6.1. ***Class FTL-1***:  All Other Priority Claims against FLAG Telecom Limited.

3.6.2. ***Class FTL-2***:  All Secured Claims against FLAG Telecom Limited.

3.6.3. ***Class FTL-3***:  All General Unsecured Claims against FLAG Telecom Limited.

3.6.4. ***Class FTL-4***:  All Interests in FLAG Telecom Limited.

3.7. ***Classes with Respect to FLAG Telecom USA Ltd***.  The Claims against and Interests in FLAG Telecom USA Ltd. are classified as follows:

3.7.1. ***Class FTUL-1***:  All Other Priority Claims against FLAG Telecom USA Ltd.

3.7.2. ***Class FTUL-2***:  All Secured Claims against FLAG Telecom USA Ltd.

   3.7.3. ***Class FTUL-3***:  All General Unsecured Claims against FLAG Telecom USA Ltd.

   3.7.4. ***Class FTUL-4***:  All Interests in FLAG Telecom USA Ltd.

  3.8. ***Classes with Respect to FLAG Asia Limited.***  The Claims against and Interests in FLAG Asia Limited are classified as follows:

   3.8.1. ***Class FASL-1***:  All Other Priority Claims against FLAG Asia Limited.

   3.8.2. ***Class FASL-2***:  All Secured Claims against FLAG Asia Limited.

   3.8.3. ***Class FASL-3***:  All General Unsecured Claims against FLAG Asia Limited.

   3.8.4. ***Class FASL-4***:  All Interests in FLAG Asia Limited.

  3.9. ***Classes with Respect to FLAG Atlantic Holdings Limited.***  The Claims against and Interests in FLAG Atlantic Holdings Limited are classified as follows:

   3.9.1. ***Class FAHL-1***:  All Other Priority Claims against FLAG Atlantic Holdings Limited.

   3.9.2. ***Class FAHL-2***:  All Secured Claims against FLAG Atlantic Holdings Limited (other than the FLAG Atlantic Banks Claim).

   3.9.3. ***Class FAHL-3***:  All Secondary Liability Claims by the FLAG Atlantic Banks against FLAG Atlantic Holdings Limited.

   3.9.4. ***Class FAHL-4***:  All General Unsecured Claims against FLAG Atlantic Holdings Limited.

   3.9.5. ***Class FAHL-5***:  All Interests in FLAG Atlantic Holdings Limited.

  3.10. ***Classes with Respect to FLAG Atlantic Limited.***  The Claims against and Interests in FLAG Atlantic Limited are classified as follows:

   3.10.1. ***Class FAL-1***:  All Other Priority Claims against FLAG Atlantic Limited.

   3.10.2. ***Class FAL-2***:  All Secured Claims against FLAG Atlantic Limited senior in right of payment to the FLAG Atlantic Banks Claim, if any.

   3.10.3. ***Class FAL-3***:  The FLAG Atlantic Banks Claim.

   3.10.4. ***Class FAL-4***:  All General Unsecured Claims against FLAG Atlantic Limited.

   3.10.5. ***Class FAL-5***:  All Interests in FLAG Atlantic Limited.

3.11.     ***Classes with Respect to FLAG Atlantic USA Limited.***  The Claims against and Interests in FLAG Atlantic USA Limited are classified as follows:

3.11.1.   ***Class FAUL-1***:  All Other Priority Claims against FLAG Atlantic USA Limited.

3.11.2.   ***Class FAUL-2***:  All Secured Claims against FLAG Atlantic USA Limited (other than the FLAG Atlantic Banks Claim).

3.11.3.   ***Class FAUL-3***:  All Secondary Liability Claims by the FLAG Atlantic Banks against FLAG Atlantic USA Limited.

3.11.4.   ***Class FAUL-4***:  All General Unsecured Claims against FLAG Atlantic USA Limited.

3.11.5.   ***Class FAUL-5***:  All Interests in FLAG Atlantic USA Limited.

## IV.

## TREATMENT OF CLAIMS AND INTERESTS AND DESIGNATION WITH RESPECT TO IMPAIRMENT

4.1.     ***Treatment of Class FH-1 – Other Priority Claims Against FLAG Holdco.***

4.1.1.   ***Impairment and Voting.***  Class FH-1 is unimpaired by the Plan.  Each holder of an Allowed Other Priority Claim in Class FH-1 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.1.2.   ***Distributions.***  On the Distribution Date, the Allowed Other Priority Claims in Class FH-1 shall receive (i)  payment of Cash in an amount equal to the unpaid portion, without postpetition interest, of such Other Priority Claim, or (ii) such other treatment that FLAG Holdco and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.2.     ***Treatment of Class FH-2 – Secured Claims Against FLAG Holdco.***

4.2.1.   ***Impairment and Voting.***  Class FH-2 is unimpaired by the Plan.  Each holder of an Allowed Secured Claim in Class FH-2 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.2.2.   ***Distributions.***  On the Distribution Date, each Allowed Secured Claim in Class FH-2 shall receive, at the sole option of FLAG Holdco, (i) payment of Cash in an amount equal to the unpaid portion of such Allowed Secured Claim, plus postpetition interest as is allowable under section 506 of the Bankruptcy Code, (ii) surrender by FLAG Holdco of the asset subject to the Lien of the holder of the Allowed Secured Claim, or (iii) such other treatment that FLAG Holdco and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.3. ***Treatment of Class FH-3 – General Unsecured Claims Against FLAG Holdco.***

      4.3.1. ***Impairment and Voting.*** Class FH-3 is unimpaired by the Plan. Each holder of an Allowed Claim in Class FH-3 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

      4.3.2. ***Distributions.*** On the Distribution Date, each holder of an Allowed General Unsecured Claim in Class FH-3 shall receive one of the following treatments, at the sole option of FLAG Holdco: (i) payment of Cash in an amount equal to the unpaid portion, without postpetition interest, of such Allowed General Unsecured Claim, or (ii) such other treatment that FLAG Holdco and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.4. ***Treatment of Class FH-4 – FLAG Holdco Bondholder Claims.***

      4.4.1. ***Impairment and Voting.*** Class FH-4 is impaired by the Plan. The FLAG Holdco Bondholder Claims shall be deemed Allowed for all purposes under the Plan and, as such, each holder of a FLAG Holdco Bondholder Claim as of the Voting Record Date is entitled to vote to accept or reject the Plan.

      4.4.2. ***Distributions.***

        4.4.2.1. On the Distribution Date:

      (a)      FLAG Holdco shall pay, or cause to be paid, to the FLAG Holdco Indenture Trustee, on behalf of the holders of Allowed FLAG Holdco Bondholder Claims as of the FLAG Holdco Bondholder Distribution Record Date, for distribution among such holders on a Pro Rata Basis, to be applied in accordance with the FLAG Holdco Indenture, to pay any compensation or reimbursement owed to the FLAG Holdco Indenture Trustee which is not paid pursuant to Section 4.4.2.1(d), and then to the principal amount of the Allowed FLAG Holdco Bondholder Claims, the amount of Two Hundred Forty-Five Million Dollars ($245,000,000) in Cash, less a reserve in the amount equal to (i) Two Million Four Hundred and Fifty Thousand Dollars ($2,450,000) on account of the Kasowitz Performance Fee, plus (ii) all other fees and expenses asserted by Kasowitz as of the Effective Date other than the Kasowitz Performance Fee, which reserve shall be placed into a segregated interest-bearing account at a financial institution satisfactory to Kasowitz and the Ad Hoc FLAG Holdco Bondholders' Committee subject to disposition pursuant to Section 4.4.2.2;

      (b)      New Holdco shall issue to the FLAG Holdco Indenture Trustee, on behalf of the holders of Allowed FLAG Holdco Bondholder Claims as of the FLAG Holdco Bondholder Distribution Record Date, for distribution among such holders on a Pro Rata Basis, to be applied first to the principal amount of the Allowed FLAG Holdco Bondholder Claims, shares equal to 5% of the New Holdco Common Shares on a Fully Diluted Basis and a 5% interest in the Litigation Trust to be created pursuant to Section 7.22;

      (c)      New Holdco shall issue to the FLAG Holdco Indenture Trustee, on behalf of the holders of Allowed FLAG Holdco Bondholder Claims as of the FLAG Holdco Bondholder Distribution Record Date, for distribution among such holders on a Pro Rata Basis, to be applied first to the principal amount of the Allowed FLAG Holdco Bondholder Claims, the FLAG Holdco Bondholder Notes pursuant to the New Holdco Indenture and all related agreements as shall be set forth in the Plan Supplement (which shall be satisfactory to the Ad Hoc

FLAG Bondholders' Committee in its reasonable discretion);

(d)     FLAG Holdco shall pay the reasonable fees and expenses (including legal fees and expenses) of the FLAG Holdco Indenture Trustee incurred under the FLAG Holdco Indenture, including in connection with the Chapter 11 Cases, in an amount not to exceed One Hundred and Fifty Thousand Dollars ($150,000); and

(e)     the FLAG Holdco Bondholders and the FLAG Holdco Indenture Trustee shall be deemed to have been released by the Debtors and the Non-Debtor Affiliates pursuant to the provisions of Section 8.4.1.

4.4.2.2. On the later of the Distribution Date or eleven (11) days after entry of a Final Order of the Bankruptcy Court expressly approving such payments, FLAG Holdco shall:

(a)     reimburse the Ad Hoc FLAG Holdco Bondholders' Committee in an amount not to exceed One Hundred Twenty-Five Thousand Dollars ($125,000) for the reasonable fees and expenses of Kasowitz incurred prior to the Effective Date in connection with the Chapter 11 Cases; and

(b)     release to the Ad Hoc FLAG Bondholders' Committee or pay to Kasowitz Cash from the reserve established pursuant to Section 4.4.2.1(a) such amounts as the Bankruptcy Court approves in addition to the reimbursement pursuant to Section 4.4.2.2(a) for reimbursement and/or payment of fees and expenses asserted by Kasowitz as of the Effective Date other than the Kasowitz Performance Fee, and payment of the Kasowitz Performance Fee (to the extent that such approval is denied, in whole or in part, by the Bankruptcy Court, all amounts reserved under Section 4.2.2.1(a) not authorized for payment to the Ad Hoc FLAG Holdco Bondholders' Committee or Kasowitz shall be remitted to the FLAG Holdco Indenture Trustee for distribution to the FLAG Holdco Bondholders on a Pro Rata Basis in accordance with Section 4.4.2.1(a)).

4.4.2.3.  Neither the Debtors nor New Holdco shall be liable for the reimbursement or payment of any additional costs or expenses of the Ad Hoc FLAG Holdco Bondholders' Committee in excess of the amount set forth in Section 4.4.2.2, whether under section 503(b) of the Bankruptcy Code or otherwise.

4.4.3.  ***Terms of the FLAG Holdco Bondholder Notes.***  The precise form of the FLAG Holdco Bondholder Notes and the New Holdco Indenture shall be included in the Plan Supplement and have the following material terms and conditions:

4.4.3.1.  ***Transferability; Due Date; Guarantee.***  The FLAG Holdco Bondholder Notes shall be issued under section 1145 of the Bankruptcy Code as of the Effective Date without further act or action by any person, unless required by provision of the New Holdco Indenture or applicable law, regulation order or rule.  The FLAG Bondholder Notes shall be due and payable on the third anniversary of the Effective Date.  The FLAG Holdco Bondholder Notes shall be jointly and severally guaranteed on a senior secured basis by each of the FLAG Holdco Bondholder Notes Guarantors.

4.4.3.2.  ***Interest.***  The FLAG Holdco Bondholder Notes shall bear simple interest on the original principal amount ($45,000,000), less any principal payments made by New Holdco, as follows:  (i) 6.67% per annum for the first twelve months after the Effective Date; (ii) 7.33% per annum for months thirteen through twenty-four after the Effective

Date; and (iii) 8% per annum for months twenty-five through thirty-six after the Effective Date.  All interest on the FLAG Holdco Bondholder Notes shall be paid in Cash semi-annually in arrears.

4.4.3.3.  ***Call Right During First Eighteen Months.***  At any time during the first eighteen months after the Effective Date, New Holdco shall have the right, in its sole and absolute discretion, subject to certain conditions which shall be set forth in the New Holdco Indenture, to fully satisfy all obligations under the FLAG Holdco Bondholder Notes by paying the sum of Thirty Million Dollars ($30,000,000), plus accrued but unpaid interest as of the date of such payment.

4.4.3.4.  ***Call Right After Eighteen Months.***  Beginning on the day that is nineteen months after the Effective Date and on the corresponding day of each month thereafter, the amount which New Holdco may, in its sole and absolute discretion, subject to certain conditions which shall be set forth in the New Holdco Indenture, pay in order to fully satisfy all obligations under the FLAG Holdco Bondholder Notes shall increase as follows, in all instances in addition to accrued but unpaid interest as of the date of such payment, less principal amount prepaid:

| Month | Call Amount |
| --- | --- |
| 19 | $30,833,333.33 |
| 20 | $31,666,666.66 |
| 21 | $32,499,999.99 |
| 22 | $33,333,333.32 |
| 23 | $34,166,666.65 |
| 24 | $34,999,999.98 |
| 25 | $35,833,333.31 |
| 26 | $36,666,666.64 |
| 27 | $37,499,999.97 |
| 28 | $38,333,333.30 |
| 29 | $39,166,666.63 |
| 30 | $39,999,999.96 |
| 31 | $40,833,333.29 |
| 32 | $41,666,666.62 |
| 33 | $42,499,999.95 |
| 34 | $43,333,333.28 |
| 35 | $44,166,666.61 |
| 36 | $45,000,000.00 |

4.4.3.5. *Liquidation Amount.* Notwithstanding the callable amount of the FLAG Holdco Bondholder Notes, in the event of a Liquidation, the amount necessary to pay the FLAG Holdco Bondholder Notes in full shall be Forty-Five Million Dollars ($45,000,000) plus accrued and unpaid interest, less principal amounts prepaid.

4.4.3.6. *Liens.* To secure payment of the FLAG Holdco Bondholder Notes, the FLAG Holdco Indenture Trustee shall be granted Liens on all of the assets of New Holdco and all FLAG Holdco Bondholder Notes Guarantors, except that (a) the Lien shall not attach to property securing Permitted Liens as defined in the New Holdco Indenture, including the Alcatel Collateral and the cash collateral securing the reimbursement obligations under letter of credit facilities with West LB and Barclays Bank plc, and, with respect to FLAG Asia Limited, the Lien shall attach solely to property that FLAG Asia Limited is permitted to pledge as security under the terms of the Reach Development Agreement, and (b) the Lien shall be subject in all respects to Reach's right of quiet enjoyment under section 7.2 of the Reach Development Agreement. The Lien granted to secure repayment of the FLAG Holdco Bondholder Notes shall rank pari passu in priority

and right of payment with the Blackstone Note and the Houlihan Note. Upon the payment by New Holdco of the first Five Million Dollars ($5,000,000) of the original principal amount of the FLAG Holdco Bondholder Notes, any Lien in the Accounts of New Holdco and the Guarantors granted to secure payment of the FLAG Holdco Bondholder Notes shall be cancelled and released.

4.4.3.7. **Automatic Perfection of Lien.** The Liens granted to secure payment of the FLAG Holdco Bondholder Notes hereunder shall constitute valid and duly perfected security interests and Liens upon the Effective Date. The FLAG Holdco Indenture Trustee shall not be required to file or serve financing statements, notices of Lien or similar instruments which otherwise may be required under applicable law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and Liens. Upon the occurrence of the Effective Date, the Confirmation Order shall be deemed sufficient and conclusive evidence of the Liens granted to secure payment of the FLAG Holdco Bondholder Notes. If the FLAG Holdco Indenture Trustee, in its sole discretion, requests that New Holdco or any of the FLAG Holdco Bondholder Notes Guarantors file any financing statements, mortgages, assignments or other documents with respect to any such security interests and Liens, New Holdco or any of the FLAG Holdco Bondholder Notes Guarantors (as the case may be), shall execute and file such financing statements, mortgages, assignments and other documents upon reasonable request, and the filing, recording or service thereof (as the case may be) shall be deemed to have been made as of the Effective Date. The failure by New Holdco or a FLAG Holdco Bondholder Notes Guarantor to execute or file any documentation relating to the Lien granted hereunder shall in no way affect the validity, perfection or priority of such Lien.

4.4.3.8. **Right to Issue Equal and Ratable Debt.** Subject to certain conditions with shall be set forth in the New Holdco Indenture, New Holdco may issue, at its sole and absolute discretion, equal and ratable senior secured debt obligations upon the payment of Fifteen Million Dollars ($15,000,000) of the original principal amount of the FLAG Holdco Bondholder Notes, in which instance the FLAG Holdco Indenture Trustee shall execute appropriate intercreditor agreements with any such new secured lender.

4.4.3.9. **Application of Payments.** Any and all payments made by New Holdco on account of the FLAG Holdco Bondholder Notes shall be applied first to any accrued but unpaid interest and then to the outstanding principal balance.

4.4.1.10. **Cross-Default with Professional Notes.** Any default under either the Houlihan Note or the Blackstone Note shall constitute a default under the FLAG Holdco Bondholder Notes, subject to New Holdco's ability to cure such default in accordance with the terms of the Houlihan Note or the Blackstone Note, as the case may be.

4.4.1.11. **Change of Control.** Notwithstanding the callable amount of the FLAG Holdco Bondholder Notes, in the event of a Change in Control, the amount necessary to pay the FLAG Holdco Bondholder Notes in full shall be Forty-Five Million Dollars ($45,000,000) plus accrued and unpaid interest, less principal amounts prepaid, and the FLAG Holdco Bondholder Notes shall be immediately due and payable in full.

4.4.4. **Full and Complete Satisfaction.** The distributions to the FLAG Holdco Indenture Trustee under Section 4.4.2 shall be in full and complete satisfaction of the FLAG

Holdco Bondholder Claims. Except for the express obligations created by virtue of this Plan, neither the Reorganized Debtors nor New Holdco shall have any obligation under or with respect to the FLAG Holdco Bondholder Claims or the FLAG Holdco Bonds. Without limiting the foregoing, any and all further Claims for any amounts allegedly owing under the FLAG Holdco Bonds and the FLAG Holdco Indenture shall be discharged to the fullest extent permitted under section 1141 of the Bankruptcy Code and the FLAG Holdco Bonds and FLAG Holdco Indenture shall be cancelled and all obligations thereunder shall be deemed likewise discharged, and the FLAG Holdco Indenture Trustee shall be discharged of all duties under the FLAG Holdco Indenture. On the Effective Date, the FLAG Holdco Bondholders shall be deemed to have forever released and discharged the FLAG Holdco Indenture Trustee under the FLAG Holdco Indenture.

4.5. ***Treatment of Class FH-5 – All FLAG Holdco Bonds Section 510(b) Claims.***

4.5.1. ***Impairment and Voting.*** Class FH-5 does not receive or retain anything under the Plan and is therefore deemed to have rejected the Plan. As such, holders of FLAG Holdco Bonds Section 510(b) Claims in Class FH-5 are not entitled to vote to accept or reject the Plan.

4.5.2. ***Distributions.*** Holders of FLAG Holdco Bonds Section 510(b) Claims against FLAG Holdco shall not receive any distribution under the Plan and all such Claims shall be cancelled, annulled and extinguished on the Effective Date.

4.6. ***Treatment of Class FH-6 – Interests in FLAG Holdco.***

4.6.1. ***Impairment and Voting.*** Class FH-6 does not receive or retain anything under the Plan and is therefore deemed to have rejected the Plan. As such, holders of Interests in Class FH-6 are not entitled to vote to accept or reject the Plan.

4.6.2. ***Distributions.*** Holders of Interests in FLAG Holdco shall not receive any distribution under the Plan and ultimately all such Interests shall be cancelled, annulled and extinguished when FLAG Holdco is wound up under Bermuda law after the Effective Date.

4.7. ***Treatment of Class FH-7 – All FLAG Holdco Other Section 510(b) Claims.***

4.7.1. ***Impairment and Voting.*** Class FH-7 does not receive or retain anything under the Plan and is therefore deemed to have rejected the Plan. As such, holders of FLAG Holdco Other Section 510(b) Claims in Class FH-7 are not entitled to vote to accept or reject the Plan.

4.7.2. ***Distributions.*** Holders of FLAG Holdco Other Section 510(b) Claims against FLAG Holdco shall not receive any distribution under the Plan and all such Claims shall be cancelled, annulled and extinguished on the Effective Date.

4.8. ***Treatment of Class FL-1 – Other Priority Claims Against FLAG Limited.***

4.8.1. ***Impairment and Voting.*** Class FL-1 is unimpaired by the Plan. Each holder of an Allowed Other Priority Claim in Class FL-1 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.8.2. ***Distributions.*** On the Distribution Date, the Allowed Other Priority Claims in Class FL-1 shall (i) be Reinstated; provided, however, that such treatment shall be no less favorable than that provided in section 1129(a)(9)(B)(ii) of the Bankruptcy Code, or (ii) receive such other treatment that

FLAG Limited and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.9. **_Treatment of Class FL-2 – Secured Claims Against FLAG Limited_**.

4.9.1. **_Impairment and Voting_**. Class FL-2 is unimpaired by the Plan. Each holder of an Allowed Secured Claim in Class FL-2 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.9.2. **_Distributions_**. On the Distribution Date, each Allowed Secured Claim in Class FL-2 shall be treated as an unimpaired Claim in accordance with section 1124 of the Bankruptcy Code, and the legal, equitable and contractual rights to which the holder of such an Allowed Claim is entitled shall not be altered.

4.10. **_Treatment of Class FL-3 – General Unsecured Claims Against FLAG Limited_**.

4.10.1. **_Impairment and Voting_**. Class FL-3 is unimpaired by the Plan. Each holder of an Allowed Claim in Class FL-4 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.10.2. **_Distributions_**. On the Distribution Date, each holder of an Allowed General Unsecured Claim in Class FL-3 shall receive one of the following treatments, to be determined at the sole option of FLAG Limited: (i) payment of Cash in an amount equal to the unpaid portion, without postpetition interest, of such Allowed General Unsecured Claim, (ii) Reinstatement of such Allowed General Unsecured Claim or (iii) such other treatment that FLAG Limited and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.11. **_Treatment of Class FL-4 – FLAG Limited Bondholder Claims_**.

4.11.1. **_Impairment and Voting_**. Class FL-4 is impaired by the Plan. The FLAG Limited Bondholder Claim shall be deemed Allowed for all purposes under the Plan and, as such, each holder of a FLAG Limited Bondholder Claim as of the Voting Record Date is entitled to vote to accept or reject the Plan.

4.11.2. **_Distributions_**.

4.11.2.1. On the Distribution Date:

(a) the FLAG Limited Indenture Trustee shall receive, on behalf of the holders of Allowed FLAG Limited Bondholder Claims as of the FLAG Limited Bondholder Distribution Record Date, for distribution among such holders on a Pro Rata Basis, to be applied in accordance with the FLAG Limited Indenture, to pay any compensation or reimbursement owed to the FLAG Limited Indenture Trustee which is not paid pursuant to Section 4.11.2.1(c), and then to the principal amount of the Allowed FLAG Limited Bondholder Claims, shares equal to 62.79% of the New Holdco Common Shares on a Fully Diluted Basis and a 62.79% interest in the Litigation Trust to be created pursuant to Section 7.22;

(b) the FLAG Limited Bondholders and the FLAG Limited Indenture Trustee shall be deemed to have been released by the Debtors and the Non-Debtor Affiliates pursuant to the provisions of Section 8.4.1; and

(c)     FLAG Limited shall pay the reasonable fees and expenses (including legal fees and expenses) of the FLAG Limited Indenture Trustee incurred under the FLAG Limited Indenture, including in connection with the Chapter 11 Cases, in an amount not to exceed One Hundred and Fifty Thousand Dollars ($150,000).

4.11.2.2. On the later of the Distribution Date or eleven (11) days after entry of a Final Order of the Bankruptcy Court expressly approving such payment, FLAG Limited shall pay the reasonable fees and expenses of Anderson, Kill & Olick, counsel to the Subcommittee of FLAG Limited Bondholders, incurred prior to the Effective Date in connection with the Chapter 11 Cases, in an amount not to exceed One Hundred and Twenty-Five Thousand Dollars ($125,000) (neither the Debtors nor New Holdco shall be liable for the reimbursement or payment of any additional costs or expenses of the Subcommittee of FLAG Limited Bondholders in excess of the amount set forth in this Section 4.11.2.2, whether under section 503(b) of the Bankruptcy Code or otherwise).

4.11.3.   ***Full and Complete Satisfaction.***   The distributions to the FLAG Limited Indenture Trustee under Section 4.11.2 shall be in full and complete satisfaction of the FLAG Limited Bondholder Claims.  Except for the express obligations created by virtue of this Plan, neither the Reorganized Debtors nor New Holdco shall have any obligation under or with respect to the FLAG Limited Bondholder Claims or the FLAG Limited Bonds.  Without limiting the foregoing, any and all further Claims for any amounts allegedly owing under the FLAG Limited Bonds shall be discharged to the fullest extent permitted under section 1141 of the Bankruptcy Code and the FLAG Limited Bonds and the FLAG Limited Indenture shall be cancelled and all obligations thereunder shall be deemed likewise discharged and the FLAG Limited Indenture Trustee shall be discharged of all duties under the FLAG Limited Indenture.  On the Effective Date, the FLAG Limited Bondholders shall be deemed to have forever released and discharged the FLAG Limited Indenture Trustee under the FLAG Limited Indenture.

4.12.   ***Treatment of Class FL-5 – All FLAG Limited Bonds Section 510(b) Claims.***

4.12.1.   ***Impairment and Voting.***   Class FL-5 does not receive or retain anything under the Plan and is therefore deemed to have rejected the Plan.  As such, holders of FLAG Limited Bonds Section 510(b) Claims in Class FL-5 are not entitled to vote to accept or reject the Plan.

4.12.2.   ***Distributions.***   Holders of FLAG Limited Bonds Section 510(b) Claims against FLAG Limited shall not receive any distribution under the Plan and all such Claims shall be cancelled, annulled and extinguished on the Effective Date.

4.13.   ***Treatment of Class FL-6 – Interests in FLAG Limited.***

4.13.1.   ***Impairment and Voting.***   Class FL-6 does not receive or retain anything under the Plan and is therefore deemed to have rejected the Plan.  As such, holders of Interests in Class FL-6 are not entitled to vote to accept or reject the Plan.

4.13.2.   ***Distributions.***   Holders of Interests in FLAG Limited shall not receive any distribution under the Plan and the FLAG Limited Common Shares shall be transferred to the FLAG Limited Indenture Trustee pursuant to Section 7.6.

4.14. **Treatment of Class FTGSL-1 – Other Priority Claims Against FLAG Telecom Group Services Limited**.

4.14.1. **Impairment and Voting.** Class FTGSL-1 is unimpaired by the Plan. Each holder of an Allowed Other Priority Claim in Class FTGSL-1 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.14.2. **Distributions.** On the Distribution Date, the Allowed Other Priority Claims in Class FTGSL-1 shall (i) be Reinstated, provided, however, that such treatment shall be no less favorable than that provided in section 1129(a)(9)(B)(ii) of the Bankruptcy Code, or (ii) receive such other treatment that FLAG Telecom Group Services Limited and such holder shall have agreed upon in writing; provided; however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.15. **Treatment of Class FTGSL-2 – Secured Claims Against FLAG Telecom Group Services Limited**.

4.15.1. **Impairment and Voting.** Class FTGSL-2 is unimpaired by the Plan. Each holder of an Allowed Secured Claim in Class FTGSL-2 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.15.2. **Distributions.** On the Distribution Date, each Allowed Secured Claim in Class FTGSL-2 shall be treated as an unimpaired Claim in accordance with section 1124 of the Bankruptcy Code, and the legal, equitable and contractual rights to which the holder of such an Allowed Secured Claim is entitled shall not be altered.

4.16. **Treatment of Class FTGSL-3 – General Unsecured Claims Against FLAG Telecom Group Services Limited**.

4.16.1. **Impairment and Voting.** Class FTGSL-3 is unimpaired by the Plan. Each holder of an Allowed General Unsecured Claim in Class FTGSL-3 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.16.2. **Distributions.** On the Distribution Date, each holder of an Allowed General Unsecured Claim in Class FTGSL-3 shall receive one of the following treatments, to be determined at the sole option of FLAG Telecom Group Services Limited: (i) payment of Cash in an amount equal to the unpaid portion, without postpetition interest, of such Allowed General Unsecured Claim, (ii) Reinstatement of such Allowed General Unsecured Claim or (iii) such other treatment that FLAG Telecom Group Services Limited and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.17. **Treatment of Class FTGSL-4 – Interests in FLAG Telecom Group Services Limited**.

4.17.1. **Impairment and Voting.** Class FL-4 is unimpaired by the Plan. Each holder of an Allowed Interest in Class FL-4 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.17.2. **Distributions.** Each Allowed Interest in Class FL-4 shall be treated as an unimpaired Interest in accordance with section 1124 of the Bankruptcy Code, and the legal, equitable and contractual rights to which the holder of such an Allowed Claim is entitled shall not be altered.

4.18.    ***Treatment of Class FPUL-1 – Other Priority Claims Against FLAG Pacific USA Limited***.

4.18.1.    ***Impairment and Voting.***  Class FPUL-1 is unimpaired by the Plan.  Each holder of an Allowed Other Priority Claim in Class FPUL-1 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.18.2.    ***Distributions.***  On the Distribution Date, the Allowed Other Priority Claims in Class FPUL-1 shall (i) be Reinstated, provided, however, that such treatment shall be no less favorable than that provided in section 1129(a)(9)(B)(ii) of the Bankruptcy Code, or (ii) receive such other treatment that FLAG Pacific USA Limited and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.19.    ***Treatment of Class FPUL-2 – Secured Claims Against FLAG Pacific USA Limited***.

4.19.1.    ***Impairment and Voting.***  Class FPUL-2 is unimpaired by the Plan.  Each holder of an Allowed Secured Claim in Class FPUL-2 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.19.2.    ***Distributions.***  On the Distribution Date, each Allowed Secured Claim in Class FPUL-2 shall be treated as an unimpaired Claim in accordance with section 1124 of the Bankruptcy Code, and the legal, equitable and contractual rights to which the holder of such an Allowed Secured Claim is entitled shall not be altered.

4.20.    ***Treatment of Class FPUL-3 – General Unsecured Claims Against FLAG Pacific USA Limited***.

4.20.1.    ***Impairment and Voting.***  Class FPUL-3 is unimpaired by the Plan.  Each holder of an Allowed General Unsecured Claim in Class FPUL-3 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.20.2.    ***Distributions.***  On the Distribution Date, each holder of an Allowed General Unsecured Claim in Class FPUL-3 shall receive one of the following treatments, to be determined at the sole option of FLAG Pacific USA Limited:  (i) payment of Cash in an amount equal to the unpaid portion, without postpetition interest, of such Allowed General Unsecured Claim, (ii) Reinstatement of such Allowed General Unsecured Claim or (iii) such other treatment that FLAG Pacific USA Limited and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.21.    ***Treatment of Class FPUL-4 – Interests in FLAG Pacific USA Limited***.

4.21.1.    ***Impairment and Voting.***  Class FPUL-4 is unimpaired by the Plan.  Each holder of an Allowed Interest in Class FPUL-4 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.21.2.    ***Distributions.***  Each Allowed Interest in Class FPUL-4 shall be treated as an unimpaired Interest in accordance with section 1124 of the Bankruptcy Code, and the legal, equitable and contractual rights to which the holder of such an Allowed Claim is entitled shall not be altered.

4.22. ***Treatment of Class FTL-1 – Other Priority Claims Against FLAG Telecom Limited***.

4.22.1. ***Impairment and Voting.*** Class FTL-1 is unimpaired by the Plan. Each holder of an Allowed Other Priority Claim in Class FTL-1 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.22.2. ***Distributions.*** On the Distribution Date, the Allowed Other Priority Claims in Class FTL-1 shall (i) be Reinstated, provided, however, that such treatment shall be no less favorable than that provided in section 1129(a)(9)(B)(ii) of the Bankruptcy Code, or (ii) receive such other treatment that FLAG Telecom Limited and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.23. ***Treatment of Class FTL-2 – Secured Claims Against FLAG Telecom Limited***.

4.23.1. ***Impairment and Voting.*** Class FTL-2 is unimpaired by the Plan. Each holder of an Allowed Secured Claim in Class FTL-2 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.23.2. ***Distributions.*** On the Distribution Date, each Allowed Secured Claim in Class FTL-2 shall be treated as an unimpaired Claim in accordance with section 1124 of the Bankruptcy Code, and the legal, equitable and contractual rights to which the holder of such an Allowed Secured Claim is entitled shall not be altered.

4.24. ***Treatment of Class FTL-3 – General Unsecured Claims Against FLAG Telecom Limited***.

4.24.1. ***Impairment and Voting.*** Class FTL-3 is unimpaired by the Plan. Each holder of an Allowed General Unsecured Claim in Class FTL-3 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.24.2. ***Distributions.*** On the Distribution Date, each holder of an Allowed General Unsecured Claim in Class FTL-3 shall receive one of the following treatments, to be determined at the sole option of FLAG Telecom Limited: (i) payment of Cash in an amount equal to the unpaid portion, without postpetition interest, of such Allowed General Unsecured Claim, (ii) Reinstatement of such Allowed General Unsecured Claim or (iii) such other treatment that FLAG Telecom Limited and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.25. ***Treatment of Class FTL-4 – Interests in FLAG Telecom Limited***.

4.25.1. ***Impairment and Voting.*** Class FTL-4 is unimpaired by the Plan. Each holder of an Allowed Interest in Class FTL-4 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.25.2. ***Distributions.*** Each Allowed Interest in Class FTL-4 shall be treated as an unimpaired Interest in accordance with section 1124 of the Bankruptcy Code, and the legal, equitable and contractual rights to which the holder of such an Allowed Interest is entitled shall not be altered.

4.26.    ***Treatment of Class FTUL-1 – Other Priority Claims Against FLAG Telecom USA Ltd.***

4.26.1.    ***Impairment and Voting.***  Class FTUL-1 is unimpaired by the Plan.  Each holder of an Allowed Other Priority Claim in Class FTUL-1 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.26.2.    ***Distributions.***  On the Distribution Date, the Allowed Other Priority Claims in Class FTUL-1 shall (i) be Reinstated, provided, however, that such treatment shall be no less favorable than that provided in section 1129(a)(9)(B)(ii) of the Bankruptcy Code, or (ii) receive such other treatment that FLAG Telecom USA Ltd. and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.27.    ***Treatment of Class FTUL-2 – Secured Claims Against FLAG Telecom USA Ltd.***

4.27.1.    ***Impairment and Voting.***  Class FTUL-2 is unimpaired by the Plan.  Each holder of an Allowed Secured Claim in Class FTUL-2 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.27.2.    ***Distributions.***  On the Distribution Date, each Allowed Secured Claim in Class FTUL-2 shall be treated as an unimpaired Claim in accordance with section 1124 of the Bankruptcy Code, and the legal, equitable and contractual rights to which the holder of such an Allowed Secured Claim is entitled shall not be altered; provided, however, that, on the Distribution Date, FLAG Telecom USA Ltd. shall cure any defaults in connection with Allowed Secured Claims in Class FTUL-2 related to letters of credit secured by Cash.

4.28.    ***Treatment of Class FTUL-3 – General Unsecured Claims Against FLAG Telecom USA Ltd.***

4.28.1.    ***Impairment and Voting.***  Class FTUL-3 is unimpaired by the Plan.  Each holder of an Allowed General Unsecured Claim in Class FTUL-3 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.28.2.    ***Distributions.***  On the Distribution Date, each holder of an Allowed General Unsecured Claim in Class FTUL-3 shall receive one of the following treatments, to be determined at the sole option of FLAG Telecom USA Ltd.:  (i) payment of Cash in an amount equal to the unpaid portion, without postpetition interest, of such Allowed General Unsecured Claim, (ii) Reinstatement of such Allowed General Unsecured Claim or (iii) such other treatment that FLAG Telecom USA Ltd. and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.29.    ***Treatment of Class FTUL-4 – Interests in FLAG Telecom USA Ltd.***

4.29.1.    ***Impairment and Voting.***  Class FTUL-4 is unimpaired by the Plan.  Each holder of an Allowed Interest in Class FTUL-4 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.29.2.    ***Distributions.***  Each Allowed Interest in Class FTUL-4 shall be treated as an unimpaired Interest in accordance with section 1124 of the Bankruptcy Code, and the legal, equitable and contractual rights to which the holder of such an Allowed Interest is entitled shall not be altered.

4.30.    ***Treatment of Class FASL-1 – Other Priority Claims Against FLAG Asia Limited.***

4.30.1.    ***Impairment and Voting.***  Class FASL-1 is unimpaired by the Plan.  Each holder of an Allowed Other Priority Claim in Class FASL-1 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.30.2.    ***Distributions.***  On the Distribution Date, the Allowed Other Priority Claims in Class FASL-1 shall (i) be Reinstated, <u>provided</u>, <u>however</u>, that such treatment shall be no less favorable than that provided in section 1129(a)(9)(B)(ii) of the Bankruptcy Code, or (ii) receive such other treatment that FLAG Asia Limited and such holder shall have agreed upon in writing; <u>provided</u>, <u>however</u>, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.31.    ***Treatment of Class FASL-2 – Secured Claims Against FLAG Asia Limited.***

4.31.1.    ***Impairment and Voting.***  Class FASL-2 is unimpaired by the Plan.  Each holder of an Allowed Secured Claim in Class FASL-2 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.31.2.    ***Distributions.***  On the Distribution Date, each Allowed Secured Claim in Class FASL-2 shall be treated as an unimpaired Claim in accordance with section 1124 of the Bankruptcy Code, and the legal, equitable and contractual rights to which the holder of such an Allowed Claim is entitled shall not be altered; <u>provided</u>, <u>however</u>, that, on the Distribution Date, FLAG Asia Limited shall cure any defaults in connection with Allowed Secured Claims in Class FASL-2 related to letters of credit secured by Cash.

4.32.    ***Treatment of Class FASL-3 – General Unsecured Claims Against FLAG Asia Limited.***

4.32.1.    ***Impairment and Voting.***  Class FASL-3 is unimpaired by the Plan.  Each holder of an Allowed General Unsecured Claim in Class FASL-3 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.32.2.    ***Distributions.***  On the Distribution Date, each holder of an Allowed General Unsecured Claim in Class FASL-3 shall receive one of the following treatments, to be determined at the sole option of FLAG Asia Limited:  (i) payment of Cash in an amount equal to the unpaid portion, without postpetition interest, of such Allowed General Unsecured Claim, (ii) Reinstatement of such Allowed General Unsecured Claim or (iii) such other treatment that FLAG Asia Limited and such holder shall have agreed upon in writing; <u>provided</u>, <u>however</u>, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.33.    ***Treatment of Class FASL-4 – Interests in FLAG Asia Limited.***

4.33.1.    ***Impairment and Voting.***  Class FASL-4 is unimpaired by the Plan.  Each holder of an Allowed Interest in Class FASL-4 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.33.2.    ***Distributions.***  Each Allowed Interest in Class FASL-4 shall be treated as an unimpaired Interest in accordance with section 1124 of the Bankruptcy Code, and the legal, equitable and contractual rights to which the holder of such an Allowed Interest is entitled shall not be altered.

4.34. ***Treatment of Class FAHL-1 – Other Priority Claims Against FLAG Atlantic Holdings Limited.***

4.34.1. ***Impairment and Voting.*** Class FAHL-1 is unimpaired by the Plan. Each holder of an Allowed Other Priority Claim in Class FAHL-1 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.34.2. ***Distributions.*** On the Distribution Date, the Allowed Other Priority Claims in Class FAHL-1 shall receive (i) payment of Cash in an amount equal to the unpaid portion, without postpetition interest, of such Other Priority Claim, or (ii) such other treatment that FLAG Atlantic Holdings Limited and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.35. ***Treatment of Class FAHL-2 – Secured Claims Against FLAG Atlantic Holdings Limited (Other Than the FLAG Atlantic Banks Claim).***

4.35.1. ***Impairment and Voting.*** Class FAHL-2 is unimpaired by the Plan. Each holder of an Allowed Secured Claim in Class FAHL-2 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.35.2. ***Distributions.*** On the Distribution Date, each Allowed Secured Claim in Class FAHL-2 shall receive, at the sole option of FLAG Atlantic Holdings Limited, (i) payment of Cash in an amount equal to the unpaid portion of such Allowed Secured Claim, plus postpetition interest as is allowable under section 506 of the Bankruptcy Code, (ii) surrender by FLAG Atlantic Holdings Limited of the asset subject to the Lien of the holder of the Allowed Secured Claim or (iii) receive such other treatment that FLAG Atlantic Holdings Limited and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.36. ***Treatment of Class FAHL-3 – Secondary Liability Claims of FLAG Atlantic Banks.***

4.36.1. ***Impairment and Voting.*** Class FAHL-3 is impaired by the Plan. Each of the FLAG Atlantic Banks that holds an Allowed Secondary Liability Claim against FLAG Atlantic Holdings Limited as of the Voting Record Date is entitled to vote to accept or reject the Plan.

4.36.2. ***Distributions.*** The holders of the Secondary Liability Claims in Class FAHL-3 shall receive, in full and complete satisfaction of their Claims and any related Liens, the treatment specified in Section 4.41.2.

4.37. ***Treatment of Class FAHL-4 – General Unsecured Claims Against FLAG Atlantic Holdings Limited.***

4.37.1. ***Impairment and Voting.*** Class FAHL-4 is impaired by the Plan. Each holder of an Allowed General Unsecured Claim in Class FAHL-4 as of the Voting Record Date is entitled to vote to accept or reject the Plan.

4.37.2. ***Distributions.*** Each holder of an Allowed Claim in Class FAHL-4 shall receive in full satisfaction of the Claim: (i) a share of the FLAG Atlantic Net Avoidance Action Recoveries attributable to Avoidance Actions belonging to the Estate of FLAG Atlantic Holdings Limited at the times and to be distributed in the manner specified in Section 7.8; or (ii) such other treatment that the FLAG Atlantic Holdings Limited and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.38.    ***Treatment of Class FAHL-5 – Interests in FLAG Atlantic Holdings Limited.***

4.38.1.    ***Impairment and Voting.*** Class FAHL-5 does not receive or retain anything under the Plan and is therefore deemed to have rejected the Plan.  As such, holders of Interests in Class FAHL-5 are not entitled to vote to accept or reject the Plan.

4.38.2.    ***Distributions.*** All Interests in FLAG Atlantic Holdings Limited ultimately shall be cancelled, annulled and extinguished when FLAG Atlantic Holdings Limited is wound up under Bermuda law after the Effective Date and holders of any such Interests shall receive nothing under the Plan.

4.39.    ***Treatment of Class FAL-1 – Other Priority Claims Against FLAG Atlantic Limited.***

4.39.1.    ***Impairment and Voting.*** Class FAL-1 is unimpaired by the Plan.  Each holder of an Allowed Other Priority Claim in Class FAL-1 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.39.2.    ***Distributions.*** On the Distribution Date, the Allowed Other Priority Claims in Class FAL-1 shall receive (i) payment of Cash in an amount equal to the unpaid portion, without postpetition interest, of such Other Priority Claim, or (ii) such other treatment that FLAG Atlantic Limited and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.40.    ***Treatment of Class FAL-2 – Secured Claims against FLAG Atlantic Limited Senior in Right of Payment to the FLAG Atlantic Banks Claim.***

4.40.1.    ***Impairment and Voting.*** Class FAL-2 is unimpaired by the Plan.  Each holder of an Allowed Secured Claim in Class FAL-2 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.40.2.    ***Distributions.*** On the Distribution Date, each Allowed Secured Claim in Class FAL-2 shall receive, at the sole option of FLAG Atlantic Limited, (i) payment of Cash in an amount equal to the unpaid portion of such Allowed Secured Claim, plus postpetition interest as is allowable under section 506 of the Bankruptcy Code, (ii) surrender by FLAG Atlantic Limited of the asset subject to the Lien of the holder of the Allowed Secured Claim or (iii) receive such other treatment that FLAG Atlantic Limited and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.41.    ***Treatment of Class FAL-3 – FLAG Atlantic Banks Claim.***

4.41.1.    ***Impairment and Voting.*** Class FAL-3 is impaired by the Plan.  The FLAG Atlantic Banks Claim shall be deemed Allowed for all purposes under the Plan and, as such, each holder of a FLAG Atlantic Banks Claim against FLAG Atlantic Limited as of the Voting Record Date is entitled to vote to accept or reject the Plan.

4.41.2.    ***Distributions.*** On the Distribution Date:

4.41.2.1.    Barclays shall receive:  (a) on behalf of the holders of any Allowed FLAG Atlantic Banks Claim, for distribution among such holders on a Pro Rata Basis, to be applied to the principal amount of the Allowed FLAG Atlantic Banks Claim, 26.25% of the New Holdco Common Shares on a Fully Diluted Basis and corresponding Litigation Trust Certificates representing a 26.25%

interest in the Litigation Trust to be created pursuant to Section 7.22; and (b) Seven Hundred and Fifty Thousand Dollars ($750,000).

4.41.2.2.   the FLAG Atlantic Banks shall be deemed to have been released by the Debtors and the Non-Debtor Affiliates pursuant to the provisions of Section 8.4.1.

4.41.3.   *Full and Complete Satisfaction.*  The distributions contemplated under Section 4.41.2 shall be in full and complete satisfaction of the Allowed FLAG Atlantic Banks Claim and any Secondary Liability Claims related thereto.  Except for the express obligations created by virtue of this Plan, neither the Reorganized Debtors nor New Holdco shall have any obligation under or with respect to the FLAG Atlantic Banks Claim or the FLAG Atlantic Credit Agreement or any Secondary Liability Claims by any of the FLAG Atlantic Banks.  Without limiting the foregoing, any and all further Claim for any amounts allegedly owing under the FLAG Atlantic Credit Agreement and any Secondary Liability Claims by the FLAG Atlantic Banks shall be cancelled and discharged to the fullest extent permitted under section 1141 of the Bankruptcy Code.

4.42.    *Treatment of Class FAL-4 – General Unsecured Claims against FLAG Atlantic Limited.*

4.42.1.   *Impairment and Voting.*  Class FAL-4 is impaired by the Plan.  Each holder of an Allowed General Unsecured Claim in Class FAL-4 as of the Voting Record Date is entitled to vote to accept or reject the Plan.

4.42.2.   *Distributions.*  Each holder of an Allowed Claim in Class FAL-4 shall receive in full satisfaction of such Claim:  (i) a share of the FLAG Atlantic Net Avoidance Action Recoveries attributable to Avoidance Actions belonging to the Estate of FLAG Atlantic Limited at the times and to be distributed in the manner specified in Section 7.8 of this Plan; or (ii) such other treatment that FLAG Atlantic Limited and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.43.    *Treatment of Class FAL-5 – Interests in FLAG Atlantic Limited.*

4.43.1.   *Impairment and Voting.*  Class FAL-5 does not receive or retain anything under the Plan and is therefore deemed to have rejected the Plan.  As such, holders of Interests in Class FAL-5 are not entitled to vote to accept or reject the Plan.

4.43.2.   *Distributions.*  All Interests in any of FLAG Atlantic Limited ultimately shall be cancelled, annulled and extinguished when FLAG Atlantic Limited is wound up under Bermuda law after the Effective Date and holders of any such Interests shall receive nothing under the Plan.

4.44.    *Treatment of Class FAUL-1 – Other Priority Claims Against FLAG Atlantic USA Limited.*

4.44.1.   *Impairment and Voting.*  Class FAUL-1 is unimpaired by the Plan.  Each holder of an Allowed Other Priority Claim in Class FAUL-1 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.44.2.   *Distributions.*  On the Distribution Date, the Allowed Other Priority Claims in Class FAUL-1 shall receive (i) payment of Cash in an amount equal to the unpaid portion, without postpetition interest, of such Other Priority Claim, or (ii) such other treatment that FLAG Atlantic USA

Limited and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.45. **Treatment of Class FAUL-2 – Secured Claims Against FLAG Atlantic USA Limited (Other than the FLAG Atlantic Banks Claim).**

4.45.1. **Impairment and Voting.** Class FAUL-2 is unimpaired by the Plan. Each holder of an Allowed Secured Claim in Class FAUL-2 is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.45.2. **Distributions.** On the Distribution Date, each holder of an Allowed Secured Claim in Class FAUL-2 shall receive, at the sole option of FLAG Atlantic USA Limited, (i) payment of Cash in an amount equal to the unpaid portion of such Allowed Secured Claim, plus postpetition interest as is allowable under section 506 of the Bankruptcy Code, (ii) surrender by FLAG Atlantic USA Limited of the asset subject to the Lien of the holder of such Allowed Secured Claim or (iii) receive such other treatment that FLAG Atlantic USA Limited and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i); and provided, further, that, on the Distribution Date, FLAG Atlantic USA Limited shall cure any defaults in connection with Allowed Secured Claims in Class FAUL-2 related to letters of credit secured by Cash.

4.46. **Treatment of Class FAUL-3 – Secondary Liability Claims of FLAG Atlantic Banks.**

4.46.1. **Impairment and Voting.** Class FAUL-3 is impaired by the Plan. Each of the FLAG Atlantic Banks that holds an Allowed Secondary Liability Claim against FLAG Atlantic USA Limited as of the Voting Record Date is entitled to vote to accept or reject the Plan.

4.46.2. **Distributions.** The holders of the Secondary Liability Claims in Class FAUL-3 shall receive, in full and complete satisfaction of their Claims and any related Liens, the treatment specified in Section 4.41.2.

4.47. **Treatment of Class FAUL-4 – General Unsecured Claims Against FLAG Atlantic USA Limited.**

4.47.1. **Impairment and Voting.** Class FAUL-4 is impaired by the Plan. Each holder of an Allowed General Unsecured Claim in Class FAUL-4 as of the Voting Record Date is entitled to vote to accept or reject the Plan.

4.47.2. **Distributions.** Each holder of an Allowed Claim in Class FAUL-4 shall receive in full satisfaction of such Claim: (i) its Pro Rata Share of the FLAG Atlantic Net Avoidance Action Recoveries attributable to Avoidance Actions belonging to the Estate of FLAG Atlantic USA Limited at the times and in the manner specified in Section 7.8 of this Plan; or (ii) such other treatment that FLAG Atlantic USA Limited and such holder shall have agreed upon in writing; provided, however, that such agreed-upon treatment shall not be more favorable than the treatment provided in subsection (i).

4.48. **Treatment of Class FAUL-5 – Interests in FLAG Atlantic USA Limited.**

4.48.1. **Impairment and Voting.** Class FAUL-5 does not receive or retain anything under the Plan and is therefore deemed to have rejected the Plan. As such, holders of Interests in Class FAUL-5 are not entitled to vote to accept or reject the Plan.

4.48.2. **_Distributions_**.  All Interests in FLAG Atlantic USA Limited shall be cancelled, annulled and extinguished as of the Effective Date and holders of any such Interests shall receive nothing under the Plan.

4.49. **_No Duplication of Claims or Distributions_**.  All Claims scheduled by or filed against the Debtors in the Chapter 11 Cases are deemed to have been filed against those Debtors under the Bermuda Schemes to the extent the Bermuda Schemes purport to also deal with such Claims.  Any holder of an Allowed Claim that receives, under the Bermuda Schemes, the payment or transfer of Cash or other property on account of such Claim, shall not receive any distribution under the Plan on account of such Claim.  Any holder of an Allowed Claim that receives under the Plan a distribution of Cash or other property on account of such Claim shall not receive any distribution under the Bermuda Schemes on account of such Claim.

# V.

## PROVISIONS REGARDING VOTING, EFFECT OF REJECTION BY IMPAIRED CLASSES, AND CONSEQUENCES OF NONCONFIRMABILITY

5.1. **_Voting Rights_**.  Each holder of an Allowed Claim or Allowed Interest against a Debtor as of the Voting Deadline in an impaired Class of Claims or Interests that is not deemed to have rejected the Plan shall be entitled to vote separately to accept or reject the Plan as provided in the order entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

5.2 **_Controversy Regarding Impairment_**.  In the event of a controversy as to whether any Claim or Interest, or any class of Claims or Interests, is impaired under the Plan, the Bankruptcy Court shall, after notice and hearing, determine such controversy.

5.3. **_Acceptance Requirements_**.  An impaired class of Claims shall have accepted the Plan if votes in favor of the Plan have been cast by at least two-thirds in amount and more than one-half in number of the Allowed Claims in such class that have voted on the Plan.  There are no impaired Classes of Interests entitled to vote on the Plan.

5.4. **_Nonconsensual Confirmation_**.  Because certain Classes set forth in this Plan are deemed to have rejected the Plan, the Debtors will seek to confirm the Plan under section 1129(b) of the Bankruptcy Code.

5.5. **_Nonconfirmability_**.  If the Plan has not been accepted by the requisite majorities and the Debtors determine that the Plan cannot be confirmed under section 1129(b) of the Bankruptcy Code, or if the Bankruptcy Court upon consideration declines to approve confirmation of the Plan, the Debtors may seek to dismiss the Chapter 11 Cases.

# VI.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1. **_Assumption of Contracts and Leases_**.  Except as otherwise provided herein or pursuant to the Confirmation Order, all executory contracts and unexpired leases that exist between the Debtors and any person shall be assumed pursuant to section 365(a) of the Bankruptcy Code as of the Effective Date, except for any such contract or lease (a) that has been assumed or rejected, or renegotiated and either assumed or rejected on renegotiated terms, pursuant to an order of the Bankruptcy Court entered

prior to the Effective Date (including any agreements assumed under the Reach and Alcatel Assumption Order), (b) that has been entered into by the Debtors during the pendency of the Chapter 11 Cases in the ordinary course of business or pursuant to an order of the Bankruptcy Court, (c) that is the subject of a motion to reject, or a motion to approve renegotiated terms and to assume or reject on such renegotiated terms, that has been filed and served prior to the Effective Date, or (d) that is specifically treated otherwise in the Plan. Entry of the Confirmation Order shall constitute approval, pursuant to section 365(a) of the Bankruptcy Code, of the assumption of executory contracts and unexpired leases provided for herein.

6.2. ***Rejection of Certain Specified Contracts and Leases.*** Notwithstanding anything to the contrary contained in the Plan, including the immediately preceding Section, the Debtors shall provide a list of executory contracts and unexpired leases in the Plan Supplement which shall be deemed rejected pursuant to section 365(a) of the Bankruptcy Code as of the Effective Date, together with the Debtors' estimate of the rejection damage Claims that would result from such rejection, pursuant to section 502(g) of the Bankruptcy Code.

6.3. ***Insurance Policies***. Each of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, if not otherwise recognized as executory contracts, shall be deemed to be and treated as executory contracts, and shall be assumed as of the Effective Date pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code. Notwithstanding the foregoing, distributions under the Plan to any holder of a Claim covered by any of such insurance policies and related agreements, documents or instruments shall be in accordance with the treatment provided under Article II or Article IV, as applicable. Nothing contained herein shall constitute or be deemed a waiver of any cause of action or claim that the Debtors may hold against any entity, including the insurer under any of the Debtors' policies of insurance, or in any way to limit the obligation of such insurers to defend, indemnify, and/or hold harmless the Debtors and their officers, directors, and employees under the terms of any insurance policy issued to the Debtors or any of them.

6.4. ***D & O Advance and Reimbursement Obligations***.

6.4.1. New Holdco shall (a) pay its own attorneys' fees and costs in connection with its disputes as to coverage under the Debtors' directors and officers insurance policies and take all reasonably necessary action to resolve any such disputes; and (b) pay the actual documented litigation-related costs and expenses (including attorneys' fees) of each Executive and Other Indemnified Director/Employee to the extent that these are pending reimbursements or not actually reimbursed by the insurer under such policies, regardless of whether such costs and expenses were incurred prior to or after the Commencement Date, provided that the aggregate amount of the payments pursuant to this clause (b) shall not exceed Three Million Two Hundred and Fifty Thousand Dollars ($3,250,000) and the aggregate amount of such payments for the period through the first anniversary of the Effective Date shall not exceed One Million Six Hundred and Twenty-Five Thousand Dollars ($1,625,000). In order to receive the benefit of the foregoing clause, each Executive and Other Indemnified Director/Employee shall represent and certify that he has not knowingly made any fraudulent statements or material misrepresentations to the insurers or persons acting on their behalf in connection with the director and officer insurance application process. In the event that any Executive or Other Indemnified Director/Employee is found by a judgment or other final adjudication to have knowingly made such a fraudulent statement or material misrepresentation, subject to applicable nonbankruptcy law, New Holdco's obligation to make such payments would immediately terminate and such Executive or Other Indemnified Director/Employee so found would be required to refund his *pro rata* share of any such payments made by New Holdco (where such *pro rata* share is determined by dividing the aggregate amount of payments by the number of defendants in the relevant litigation). All payments made to any Executives and Other Indemnified Director/Employee under such foregoing clause, to the extent actually paid by New Holdco, shall be immediately reimburseable upon collection by the Executives and

Other Indemnified Director/Employee to the extent of and out of any indemnified fees, costs and expenses actually reimbursed by insurers under the insurance policies and the Executives and Other Indemnified Director/Employee shall take all reasonably necessary action to collect such fees, costs, and expenses.

6.4.2.    New Holdco shall reimburse the Executives for attorneys' fees and expenses incurred in connection with these Chapter 11 Cases, in an amount not to exceed One Hundred and Fifty Thousand Dollars ($150,000), in the aggregate; provided, however, that any such reimbursement would reduce the maximum amount of New Holdco's indemnification obligations under Section 6.4.1(b).

6.4.3.    Except as expressly provided in the Plan, each Executive and Other Indemnified Director/Employee shall be deemed to have waived any rights to be indemnified by any of the Debtors pursuant to such Executive's Executive Employment Agreement and any of the Debtors' Bye-Laws and any similar right to indemnification by any of the Debtors under any other document.  The Executives and Other Indemnified Director/Employee shall be indemnified with respect to facts occurring on or after the Effective Date to the same extent as the other directors and officers of New Holdco.

6.5.    **Cure of Defaults**.  On the Effective Date, the Debtors (a) shall cure or provide adequate assurance that they will cure any and all undisputed defaults under any executory contract or unexpired lease assumed pursuant to the Plan and (b) compensate or provide adequate assurance that they will promptly compensate the other parties to such executory contract or unexpired lease for the agreed amount of any actual pecuniary loss to such party resulting from such undisputed default in accordance with section 365(b)(1) of the Bankruptcy Code.  In the event that the Debtors dispute the existence of a default, or the nature, extent or amount of any required cure, adequate assurance or compensation, the Debtors' obligations under section 365(b) of the Bankruptcy Code shall be determined by a Final Order, and any such obligations shall be performed by the Debtors within thirty days after the date of the Final Order unless otherwise provided in such Final Order.

6.6.    **Rejection Claims**.  Claims arising out of the rejection of an executory contract or unexpired lease must be asserted by proof of Claim filed with the Bankruptcy Court no later than thirty days after the date of entry of the order approving the rejection of such contract or lease.  In the absence of a timely filed proof of Claim, any such Claims shall be forever barred and shall not be enforceable against the Debtors, their Estates and their property and will not receive any distributions under the Plan. Unless otherwise ordered by the Bankruptcy Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated, to the extent they are Allowed Claims, as General Unsecured Claims if asserted against the Reorganized Debtors.

6.7    **Special Provisions Regarding Executive Employment Agreements and Executive Retention Plans**.  For purposes of Section 6.1, the Executive Retention Plans and the Executive Employment Agreements shall be deemed executory contracts.  For purposes of this Section 6.7, "Cause" and "Good Reason" are defined in the manner set forth in the Executive Retention Plans and/or the Executive Employment Agreements.

6.7.1.    **Amendments.**  As of the Effective Date, the Executive Employment Agreements and Executive Retention Plans shall be amended to:

(a)    Eliminate the "enterprise value" bonus.

(b)    Provide for payment of an annual cash bonus for 2002, in accordance with the bonus payment provisions described below.

(c)     Provide that severance payments for each of Andrés Bande, Edward McCormack, and Adnan Omar shall equal one times their base salary plus target annual bonus.  Such severance payments shall be due and payable under the termination of employment circumstances contemplated by the Executive Employment Agreements and/or the Executive Retention Plans, whether occurring before, on or after the Effective Date, except that "1 October 2004" shall be substituted for "31 December 2003" in each of Clause 5(c) and Clause 2.2(c) in the Executive Employment Agreements for Andrés Bande and Edward McCormack, respectively.

(d)     Provide that the employment period and other terms of the Executive Employment Agreements and Executive Retention Plans (except as modified herein) would remain the same, except that Executives would waive any rights to resign for Good Reason solely as a result of a change in composition of the board of directors of New Holdco or a change in ownership of New Holdco, in each case as contemplated by the Plan, and the Executive Employment Agreement for Andrés Bande shall be amended (i) to delete provisions stating that New Holdco's failure to make option grants would be a basis for resignation with Good Reason and (ii) to state that it would be an event constituting Good Reason if (A) Andrés Bande is removed as chairman of the Board of New Holdco at any time prior to the end of the thirty-day period following the Effective Date or (B) Andrés Bande at any time ceases to be the chief executive officer of New Holdco reporting directly and exclusively to the full Board of New Holdco.

(e)     Delete any indemnification provisions so that the Executive Employment Agreements and Executive Retention Plans that are consistent with the Executive Term Sheet and add or delete any other provisions reasonably necessary to make the Executive Employment Agreements and Executive Retention Plans materially consistent with the Executive Term Sheet.

6.7.2.     **Severance.**  The severance provisions in the Executive Employment Agreements for Kees van Ophem, Michel Cayouette, Scott Rowswell, Andrew Evans, Mehrdad Mansourpour, and John Draheim shall remain in effect.  Severance payments shall be payable under the termination of employment circumstances contemplated by the Executive Employment Agreements and Executive Retention Plans, whether occurring before, on and after the Effective Date.  The employment period and other terms of the Executive Employment Agreements and Executive Retention Plans (except as modified herein) shall remain the same.

6.7.3     **Retention of Pre-Commencement Date Payments.**  Each Executive shall vest in his pre-Commencement Date retention payment, as agreed presently, on the Effective Date; provided, however, that such payment shall be forfeited, and must be returned, to FLAG Holdco or, after the Effective Date, New Holdco, in the event such Executive resigns without Good Reason or is terminated for Cause prior to the Effective Date.  The retention payment of $180,000 due to Scott Rowswell shall be paid on or prior to the Effective Date, subject to the repayment provisions described in the immediately preceding sentence.

6.7.4.     **Bonuses.**

6.7.4.1. Each Executive shall be eligible to earn his current target annual bonus for 2002.  The actual amount of the annual bonus shall be based upon the achievement of the performance criteria described in Section 6.7.4.2.  The annual bonus shall be payable in a cash lump sum as soon as practicable after December 31, 2002, but in no event later than January 20, 2003; provided, however, that, if fourth quarter 2002 financial results are not available on January 15, 2003, the portion of the bonus based upon such results shall be payable  within five days of such results becoming available.  An Executive shall be eligible for the annual bonus if (a) the Executive is employed by New Holdco on December 31, 2002 or (b) the Executive's employment with New Holdco terminates prior thereto for any reason other than a termination for Cause or voluntary resignation for other than Good Reason.

6.7.4.2. The initial 50% of the target annual bonus shall be payable if available cash plus working capital of New Holdco as of the Effective Date is equal to or greater than projected or if the available cash plus working capital of New Holdco as of the Effective Date is within 2.5 percent of such projection. The remaining 50% of the target bonus shall be payable if each of cash revenue and cash flow in fourth quarter 2002 is equal to or greater than projected or if each of cash revenue and cash flow in fourth quarter 2002 is within 2.5 percent of such projection.

6.7.4.3. For purposes of this Section 6.7, "working capital," "cash revenue" and "cash flow" will be reasonably defined consistent with past practice by agreement negotiated in good faith between the Creditors' Committee and the Debtors.

6.7.4.4. The Creditors' Committee and the Debtors shall continue to work in good faith to specify the projections referred to in this Section 6.7, and such projections will be materially consistent with the projections attached to the Executive Term Sheet as Attachment 1 thereto (which projections on Attachment 1 incorporate the 2.5% reduction contemplated by Section 6.7.4.2), and include appropriate adjustments, if any, for delay in the Effective Date or changes to the Plan approved or required by the Bankruptcy Court or required as part of the confirmation process.

6.7.6. ***No Defaults/Cure Obligations.*** As a condition to the assumption of each Executive Employment Agreement, the relevant Executive shall acknowledge that no default exists under such agreement that would be required to be cured upon assumption.

6.7.7. ***Waiver of Deferred Compensation.*** Except with respect to the items noted in this Section 6.7, any deferred compensation (other than deferred severance) earned or incurred by any Executive prior to the Effective Date shall be deemed waived.

## VII.

## MEANS OF IMPLEMENTATION OF THE PLAN

7.1. ***Funding of Plan.*** The various payments contemplated by the Plan shall be funded from the Debtors' available Cash on the Effective Date and revenues generated by the operation of the Debtors' business after the Effective Date. To the extent necessary, FLAG Holdco shall, prior to transferring the FLAG Holdco Assets to New Holdco, provide Cash to other Debtors or, in the respect of the Bermuda Reorganization Reserve to the Bermuda Provisional Liquidators, to make any and all payments and/or to establish reserves required on the Effective Date under the Plan.

7.2 ***Formation of New Holdco.*** On or before the Effective Date, the Debtors shall take the steps necessary so that New Holdco shall be duly formed and come into existence as a valid and legally existing entity. The specific formation documents with respect to New Holdco shall be included in the Plan Supplement.

7.3. ***Transfer of All Assets from FLAG Holdco to New Holdco Free and Clear of Liens.*** On the Effective Date, and after the formation of New Holdco, without further act or action by any person, unless required by provision of the Corporate Documents or applicable law, regulation, order or rule, all right, title, and interest in the FLAG Holdco Assets shall be transferred and assigned to, and vest in, New Holdco as of the Effective Date. Except as expressly provided in the Plan or the Confirmation Order, the FLAG Holdco Assets shall vest in New Holdco free and clear of any Claims or Liens.

7.4. ***Transfer of FLAG Atlantic Holdings and Limited Assets and Certain Cash to New Holdco; Transfer of FLAG Atlantic USA Limited Assets to FLAG Telecom USA Limited; Release of FLAG Atlantic Banks' Claims and Liens.***

7.4.1.    On the Effective Date, and after the formation of New Holdco, without further act or action by any person, unless required by provision of the Corporate Documents or applicable law, regulation, order or rule, the following transactions shall occur in the order specified:

7.4.1.1.  all existing Interests in FLAG Atlantic USA Limited shall be transferred by FLAG Atlantic Limited to New Holdco;

7.4.1.2.  (a) FLAG Atlantic Holdings Limited shall transfer to New Holdco in return for the payment of $1 in Cash, all right, title, and interest in the FLAG Atlantic Holdings Assets that are subject to the Lien of the FLAG Atlantic Banks, (b) FLAG Atlantic Limited shall transfer to FLAG Telecom Global Network Limited in return for the payment of $1 in Cash, all right, title, and interest in the FLAG Atlantic Limited Assets that are subject to the Lien of the FLAG Atlantic Banks, and (c) FLAG Atlantic USA Limited shall transfer to FLAG Telecom Network USA Limited in return for the payment of $1 in Cash, all right, title, and interest in the FLAG Atlantic USA Limited Assets that are subject to the Lien of the FLAG Atlantic Banks;

7.4.1.3.  (a) the FLAG Atlantic Banks and the FLAG Atlantic Debtors shall novate to New Holdco, FLAG Telecom USA Limited, and FLAG Telecom Global Network Limited, respectively, the FLAG Atlantic Banks Claim, Secondary Liability Claim and the Lien relating thereto, which Claims and Liens shall be immediately waived and released, and (b) immediately thereafter, New Holdco shall issue to the FLAG Atlantic Banks the New Holdco Common Shares detailed in Section 4.41.2; and

7.4.1.4.  all existing Interests in FLAG Atlantic USA Limited shall be cancelled, annulled and extinguished pursuant to Section 4.48.

7.4.2.    Concurrently with the transactions set forth in Section 7.4.1, and in return for the treatment specified in Section 4.41.2, which treatment shall be in full and complete satisfaction of the FLAG Atlantic Banks Claim and any Secondary Liability Claims by the FLAG Atlantic Banks, the FLAG Atlantic Banks shall (a) transfer to New Holdco all Cash which is or previously was the property of FLAG Holdco and/or FLAG Limited (including collateral for swap transactions not previously released pursuant to settlement agreements) currently held by the Barclays or any of the other FLAG Atlantic Banks, together with any interest actually accrued on such Cash from April 12, 2002 and (b) expressly release and waive any and all Claims or Liens against the FLAG Atlantic Holdings Assets, the FLAG Atlantic Limited Assets, and the FLAG Atlantic USA Limited Assets.  Except as expressly provided in the Plan or the Confirmation Order, the FLAG Atlantic Holdings Assets, the FLAG Atlantic Limited Assets, the FLAG Atlantic USA Limited Assets, and the Cash to be transferred by the FLAG Atlantic Banks to New Holdco pursuant to this Section, shall vest in New Holdco, FLAG Telecom USA Limited, and FLAG Telecom Global Network Limited, as the case may be, free and clear of any Claims or Liens.

7.5. ***Issuance of New Holdco Common Shares and FLAG Holdco Bondholder Notes.***

7.5.1.    ***Issuance of New Holdco Common Shares***.  The issuance of the New Holdco Common Shares shall be authorized under section 1145 of the Bankruptcy Code as of the Effective Date

without further act or action by any person, unless required by provision of the relevant Corporate Documents or applicable law, regulation, order or rule; and all documents evidencing the same shall be executed and delivered as provided for in the Plan or the Plan Supplement. In accordance with the terms of the Plan, the Bermuda Schemes, and certain agreements entered into prior to the Effective Date by and between the Debtors, on the one hand, and each of Alcatel, Ciena, and Reach, on the other, the New Holdco Common Shares shall be issued to, or for the beneficial interest of, the following:

| Name of Owner | Pro Forma Equity Ownership on a Fully Diluted Basis |
| --- | --- |
| FLAG Limited Bondholders | 62.79% |
| FLAG Atlantic Banks | 26.25% |
| FLAG Holdco Bondholders | 5.00% |
| Alcatel | 4.38% |
| Ciena | 1.58% |
| **Total** | **100%** |

The pro forma equity ownership shown above depicts the proposed ownership of the New Holdco Common Shares after issues of all shares on the Effective Date, but as provided for in the definition of "Fully Diluted Basis" does not take into account the stock option pool reserved for the employees and directors of New Holdco and the Reorganized Debtors which will equal up to 10% of such shares. Options under the stock option pool shall be issuable after the Effective Date within the sole discretion of the board of directors of New Holdco.

7.5.2    *Issuance of FLAG Holdco Bondholder Notes*.  The issuance of the FLAG Holdco Bondholder Notes shall be authorized under section 1145 of the Bankruptcy Code as of the Effective Date without further act or action by any person, unless required by provision of the relevant Corporate Documents or applicable law, regulation, order or rule; and all documents evidencing the same shall be executed and delivered as provided for in the Plan or the Plan Supplement.

7.5.3.    *Listing of New Holdco Common Shares*.  New Holdco shall use its commercially reasonable efforts to (a) cause the New Holdco Common Shares to be listed on a national securities exchange or the NASDAQ National Market System and (b) obtain and maintain a trading symbol for the New Holdco Common Shares as of or shortly after the issuance of such shares.  If the New Holdco Common Shares cannot be listed upon their issuance or shortly thereafter, then upon a later change of circumstances that is reasonably likely to permit a listing of such shares, the New Holdco shall use its commercially reasonable efforts to cause the New Holdco Common Shares to be listed on a national securities exchange or the NASDAQ National Market System, and to obtain and maintain a trading symbol.

7.6    *Transfer and Exchange of FLAG Limited Common Shares*.  On the Effective Date, (i) FLAG Holdco shall transfer the FLAG Limited Common Shares to the FLAG Limited Indenture Trustee, (ii) immediately thereafter, the FLAG Limited Indenture Trustee shall transfer the FLAG Limited Common Shares to New Holdco in return for shares equal to 62.79% of the New Holdco

Common Shares on a Fully Diluted Basis and the other treatment and distributions specified in Section 4.11.2.

7.7.    ***Post Effective-Date Management***.

7.7.1.    ***Reorganized Debtors (Other than FLAG Holdco and the FLAG Atlantic Debtors).***  Except as expressly provided in the Plan with respect to FLAG Holdco and the FLAG Atlantic Debtors, on and after the Effective Date, the operation, management and control of each of the Debtors shall be the general responsibility of their respective boards of directors and senior officers (or as otherwise provided in its governing instruments), which shall thereafter have the responsibility for the management, control and operation of the Reorganized Debtors.  The Reorganized Debtors and the Bermuda Provisional Liquidators shall take all steps necessary to obtain a Final Order of the Bermuda Court discharging the Bermuda Provisional Liquidators of their duties with respect to Reorganized FLAG Limited and Reorganized FLAG Asia Limited as soon as possible after the Effective Date.  Until those discharges, the Bermuda Provisional Liquidators shall continue in their role with respect to FLAG Limited and FLAG Asia Limited as appointed by the Bermuda Court.

7.7.2    ***FLAG Holdco.***  Immediately upon completion by FLAG Holdco of the transactions contemplated under the Plan on the Effective Date, operation, management and control of FLAG Holdco shall be transferred to the Bermuda Provisional Liquidators, which shall take the appropriate steps to wind up FLAG Holdco under Bermuda law; provided, however, that, subject to the Bermuda Provisional Liquidators, New Holdco shall have the authority to (a) prosecute Objections to Disputed Claims asserted against FLAG Holdco, and (b) administer the FLAG Holdco Disputed Claims Reserve.

7.7.3.    ***FLAG Atlantic Debtors.***

7.7.3.1. ***Appointment of Plan Administrator.***  The Confirmation Order shall provide for the appointment of a Person, acceptable to the Creditors' Committee in its reasonable discretion, as the Plan Administrator with respect to the FLAG Atlantic Debtors.  The Plan Administrator shall be empowered to act on the behalf of the FLAG Atlantic Debtors in all respects to carry out the provisions of the Plan.  The Plan Administrator shall not have an interest that is materially adverse to the FLAG Atlantic Debtors or their Estates.

7.7.3.2. ***Rights and Duties of Plan Administrator.***  The Plan Administrator shall have the rights and powers and shall perform all the functions and duties set forth in the Plan.  In particular, the Plan Administrator shall:

(a)    Pursue Avoidance Actions belonging to the Estates of any of the FLAG Atlantic Debtors (other than those waived or released under the Plan or pursuant to a Final Order of the Bankruptcy Court prior to the Effective Date) for the benefit of the holders of Allowed General Unsecured Claims against these Debtors pursuant to the Plan.

(b)    Prosecute Objections to Disputed Claims in Classes FAHL-1, FAHL-2, FAL-1, FAL-2, FAUL-1, and FAUL-2, asserted against any of the FLAG Atlantic Debtors and administer the FLAG Atlantic Disputed Claims Reserve, and prosecute Objections to Disputed Claims in Class FAUL-4 (the Bermuda Provisional Liquidators shall resolve, or procure the resolution of, Claims which have been the subject of Objections in Classes FAL-4 and FAHL-4).

(c)     Maintain a detailed accounting of all deposits into and withdrawals from the FLAG Atlantic Disputed Claims Reserve and FLAG Atlantic Segregated Recovery Account, including records sufficient to enable the Plan Administrator to determine each of the FLAG Atlantic Debtors respective shares of the funds contained in the FLAG Atlantic Segregated Recovery Account based on the recoveries attributable to Avoidance Actions owned by each FLAG Atlantic Debtor.  The Plan Administrator shall make such accounting available to Parties in Interest upon written request.  For purposes of maintaining the accounting provided for in the subsection, the Plan Administrator shall deduct any expenses incurred by the Plan Administrator or its professionals equally from the share of FLAG Atlantic Net Avoidance Recoveries.

(d)     Make distributions of available Cash in accordance with the procedures described in Section 7.8.4.

(e)     Act as the duly authorized representative of each of the Reorganized FLAG Atlantic Debtors for all corporate, tax law or any other purposes.

(f)     Take any and all other actions that may be necessary and appropriate for the Reorganized FLAG Atlantic Debtors to fulfill their obligations under the Plan.

(g)     In respect of FLAG Atlantic Holdings Limited and FLAG Atlantic Limited, act subject to the oversight of and in accordance with the reasonable requests of the Bermuda Provisional Liquidators, and at all times in accordance with applicable Bermuda law so far as it is relevant.

7.7.3.3.  ***Access to Books and Records.***  Upon written request and reasonable notice, New Holdco shall make any and all books and records relating to any of the FLAG Atlantic Debtors available during regular business hours for review by the Plan Administrator to the extent needed to enable the Plan Administrator to carry out its duties under the Plan.

7.7.3.4.  ***Payment of Plan Administrator.***  The Plan Administrator shall be paid a reasonable hourly rate from the FLAG Atlantic Debtors Segregated Recovery Account, or such other method of compensation approved by the Creditors' Committee in its reasonable discretion, for the Plan Administrator's services and shall be entitled to reimbursement of reasonable expenses incurred in fulfilling its duties under the Plan without the need for filing fee applications under the Bankruptcy Code; provided, however, that the Plan Administrator shall provide the U.S. Trustee, counsel for the Debtors, and counsel for the Bermuda Provisional Liquidators with 20 days' prior written notice of its intent to compensate itself.  In the event that any party receiving notice under the preceding sentence objects in writing to the payment of the fees or costs in question, the parties shall use their reasonable efforts to resolve the dispute and, if such efforts are unsuccessful, the Plan Administrator may file an application with the Bankruptcy Court seeking permission to make the disputed payments.  The Bermuda Provisional Liquidators, FLAG Atlantic Holdings Limited, and FLAG Atlantic Limited shall not be liable for the costs and expenses incurred by the Plan Administrator, unless otherwise provided herein or agreed by them.

7.7.3.5.  ***Retention and Payment of Professionals.***  After the Effective Date, the Plan Administrator will be permitted to retain such law firms or attorneys, experts, advisors, consultants, investigators, appraisers, auctioneers, corporate management services, or other persons or professional firms as the Plan Administrator, in its reasonable discretion, may select to aid in the performance of its duties under the Plan.  Such professionals may be retained by the Plan Administrator without any further order of the Bankruptcy Court or the Bermuda Court.  The Plan Administrator may pay such professionals reasonable compensation from the Segregated Recovery Account for services rendered and expenses incurred without any need for filing fee applications under the Bankruptcy Code; provided, however, that

the Plan Administrator shall provide the U.S. Trustee, counsel for the Debtors, and counsel for the Bermuda Provisional Liquidators with 20 days' prior written notice of its intent to compensate such professionals. In the event that any party receiving notice under the preceding sentence objects in writing to the payment of the fees or costs in question, the parties shall use their reasonable efforts to resolve the dispute and, if such efforts are unsuccessful, the Plan Administrator or the professional in question may file an application with the Bankruptcy Court seeking permission for the Plan Administrator to make the disputed payments. The Bermuda Provisional Liquidators, FLAG Atlantic Holdings Limited, and FLAG Atlantic Limited shall not be liable for any costs and expenses incurred by professionals pursuant to the above sub-paragraph, unless otherwise provided herein or agreed by them.

### 7.7.4. *New Holdco.*

#### 7.7.4.1. *Board of Directors.*

The Plan Supplement shall contain Corporate Documents which provide that the initial board of directors of New Holdco shall be comprised of thirteen members, two of whom shall be officers of New Holdco as required by Bermuda law, seven of whom shall be nominated and elected by the Subcommittee of FLAG Limited Bondholders, three of whom shall be nominated and elected by Barclays, acting on behalf of the FLAG Atlantic Banks, and one of whom shall be nominated and elected by the Creditors' Committee. Any director of the New Holdco may resign at any time by giving written notice to the board of directors or to the Secretary of New Holdco. Any such resignation shall take effect at the time specified therein, or, if the time be not specified, it shall take effect immediately upon its receipt; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective. Except as otherwise provided in New Holdco's charter documents, any vacancy in the board of directors, whether because of death, resignation, disqualification, an increase in the number of directors, or any other cause, may be filled by vote of the majority of the remaining directors, although less than a quorum. Each director so chosen to fill a vacancy shall hold office until his successor shall have been elected and shall qualify or until he shall resign or shall have been removed in the manner hereinafter provided. The Plan Supplement shall include Bye Laws for New Holdco containing additional provisions related to New Holdco's board of directors.

#### 7.7.4.2. *Officers.*

The officers of New Holdco shall be a Chief Executive Officer, a Chief Operating Officer, a Chief Financial Officer, a General Counsel, a Secretary, an Assistant Secretary, and a Chief Technology Officer. The Plan Supplement shall include Corporate Documents which provide that the initial officers of New Holdco shall be: Andrés Bande (Chief Executive Officer), Edward McCormack (Chief Operating Officer), Michel Cayouette (Chief Financial Officer), Kees van Ophem (General Counsel and Assistant Secretary), Lucia Kempe (Secretary), and Andrew Evans (Chief Technology Officer). Thereafter, the officers of New Holdco shall be elected annually by the board of directors of New Holdco at the first meeting thereof held after the election thereof, subject in all respects to any rights such officer may have under employment agreements assigned to New Holdco or entered into by New Holdco. Each officer shall hold office until his successor shall have been duly chosen and shall qualify or until his resignation or removal in the manner provided in the Corporate Documents for New Holdco to be provided in the Plan Supplement. The Plan Supplement shall include Bye Laws for New Holdco containing additional provisions related to New Holdco's officers.

### 7.8. *The FLAG Atlantic Net Avoidance Recoveries.*

#### 7.8.1. *Rights to Prosecute.*

Unless otherwise ordered by the Bankruptcy Court after notice and hearing, the Plan Administrator, on behalf of the Reorganized FLAG Atlantic Debtors, shall have the exclusive right from and after the Effective Date to prosecute the Avoidance Actions belonging to any of the FLAG Atlantic Debtors.

7.8.2. ***The FLAG Atlantic Segregated Recovery Account.*** On the Effective Date, or as soon thereafter as practical, the FLAG Atlantic Debtors shall establish the FLAG Atlantic Segregated Recovery Account and deposit the FLAG Atlantic Segregated Recovery Account Initial Deposit, which funds shall be used by or on behalf of the FLAG Atlantic Debtors as the Plan Administrator deems reasonably necessary to carry out its rights and duties in respect of the FLAG Atlantic Debtors under the Plan. Other than the FLAG Atlantic Segregated Recovery Account Initial Deposit, neither the Reorganized Debtors nor New Holdco shall have any responsibility or legal obligation to fund the prosecution of the Avoidance Actions which belong to the FLAG Atlantic Debtors.

7.8.3. ***Repayment of the FLAG Atlantic Segregated Recovery Account Initial Deposit.*** At such time as there are sufficient funds in the FLAG Atlantic Segregated Recovery Account to allow for the repayment of the FLAG Atlantic Segregated Recovery Account Initial Deposit (plus interest, as provided below) and leave a balance in the FLAG Atlantic Segregated Recovery Account after the Plan Administrator has paid its costs and disbursements to date of at least One Hundred Thousand Dollars ($100,000), the Plan Administrator shall be authorized and directed, without any Order of the Bankruptcy Court, to repay the FLAG Atlantic Segregated Recovery Account Initial Deposit in full with simple interest at the rate of ten percent (10%) per annum from the date of the FLAG Atlantic Segregated Recovery Account Initial Deposit to the date of repayment. Such repayment shall be made directly to New Holdco.

7.8.4. ***Distributions of the FLAG Atlantic Net Avoidance Action Recoveries.*** At such time as the Plan Administrator determines in its reasonable discretion that the Reorganized FLAG Atlantic Debtors have completed the prosecution of the Avoidance Actions which belong to them and have resolved all Disputed Claims asserted against them pursuant to a Final Resolution, the Plan Administrator shall pay all outstanding costs and fees incurred in connection with the prosecution of such Avoidance Actions and Objections and thereafter shall distribute the funds in the FLAG Atlantic Segregated Recovery Account as follows:

7.8.4.1. ***Distribution to Class FAUL-4.*** The Plan Administrator shall make a distribution of all amounts in the FLAG Atlantic Segregated Recovery Account which are attributable to Avoidance Actions which belong to the Estate of FLAG Atlantic USA Limited on a Pro Rata Basis to the holders of Allowed General Unsecured Claims in Class FAUL-4.

7.8.4.2. ***Distribution to Bermuda Provisional Liquidators on Account of Classes FAHL-4 and FAL-4.*** The Plan Administrator shall make a distribution of all amounts remaining in the FLAG Atlantic Segregated Recovery Account after making the distributions required under Section 7.8.4.1, which shall be the amounts attributable to Avoidance Actions which belong to the Estates of FLAG Atlantic Holdings Limited and FLAG Atlantic Limited, to the Bermuda Provisional Liquidators for distribution to the holders of Allowed General Unsecured Claims in Class FAHL-4 and FAL-4 in accordance with applicable Bermuda law.

7.9. ***Eventual Wind Down and Liquidation of the FLAG Atlantic Debtors.***

7.9.1. ***FLAG Atlantic USA Limited.*** As soon as practical after FLAG Atlantic USA Limited has fulfilled its express duties under the Plan, FLAG Atlantic USA shall be liquidated and dissolved by the Plan Administrator pursuant to, and in accordance with, applicable law.

7.9.2. ***FLAG Atlantic Holdings Limited and FLAG Atlantic Limited.*** As soon as practical after FLAG Atlantic Holdings Limited and FLAG Atlantic Limited have fulfilled their express duties under the Plan, each of FLAG Atlantic Holdings Limited and FLAG Atlantic

Limited shall be wound up by the Bermuda Provisional Liquidators pursuant to, and in accordance with, Bermuda law.

7.10. ***Method of Distributions Under the Plan***. Distributions under the Plan, shall be made in accordance with the following:

7.10.1. ***In General***. All distributions under the Plan shall be made by the Reorganized Debtors. All distributions under the Plan to the holders of Allowed Claims or Interests governed by an indenture shall be made in accordance with the provisions of the applicable indenture.

7.10.2. ***Delivery of Distributions***. All distributions to be made under the Plan shall be made to holders of Claims (a) if any such holder has filed a proof of Claim, at the address of such holder as set forth in the proof of Claim, or (b) if any such holder has not filed a proof of Claim, at the last known address of such holder as set forth in the Debtors' books and records.

7.10.3. ***Timing of Distributions***. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be due on the next succeeding Business Day. All payments or distributions due on the Effective Date shall be made thereon or as soon as practicable thereafter but in no event later than ten calendar days after the Effective Date.

7.10.4. ***Distributions of Cash***. Any payment of Cash to be made pursuant to the Plan shall be made by check drawn, or wire transfer made, on a bank, or as otherwise required or provided in any applicable documents, and payment shall be deemed made when the check or wire transfer is transmitted.

7.10.5. ***Minimum Cash Distributions***. No payment of Cash less than fifty dollars shall be made to any holder of a Claim unless a request therefor is made in writing to the Debtors.

7.10.6. ***Unclaimed Distributions***. If any Cash or other distribution pursuant to the Plan, including but not limited to any distribution of interest, to any holder of an Allowed Claim is returned as undeliverable, the Debtors shall make reasonable efforts to determine the then current address of such holder, but no distributions to such holder shall be made unless and until the Debtors have determined such address, at which time distributions to such holder shall be made without interest; provided, however, that such distributions shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year after the distribution was initially attempted. After such date, all Cash or other distribution shall be forfeited and revested in the Debtors and the claim of any holder to such Cash or other distribution pursuant to the Plan, including but not limited to any distribution of interest, shall be discharged and forever barred.

7.10.7. ***Withholding and Reporting Requirements***. In connection with the Plan and all instruments issued in connection therewith and distributions thereunder, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

7.10.8. ***Set Off Rights***. The Debtors may, but shall not be required to, set off against or recoup from any Claim and the distributions to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever that the Debtors may have against the holder of the Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by any of the Debtors of any such claim it may have against the holder; provided, however, that the Debtors shall

have no set off rights with respect to Alcatel, Ciena, and Reach in connection with the rights and obligations, if any, of the Debtors under the Term Sheet Agreements referred to in Section 11.13.

7.11. *Disputed Claims and Disputed Interests*.

7.11.1. **Right to Object to Claims**. Unless otherwise ordered by the Bankruptcy Court after notice and hearing, the Reorganized Debtors shall have the exclusive right from and after the Effective Date to make and file Objections to Claims, except that any Party in Interest may file an Objection to (a) Claims of the Debtors' directors and officers and (b) applications for allowances of Professional Fees.

7.11.2. **Process for Disputing Claims**. The Reorganized Debtors may dispute any Claim evidenced by a proof of Claim or request for payment filed with the Bankruptcy Court, or any Interest evidenced by a proof of Interest filed with the Bankruptcy Court, except for Claims allowed pursuant to the Plan, by filing with the Bankruptcy Court and serving upon the holder of such Claim or Interest an Objection thereto in accordance with the Bankruptcy Code, the Bankruptcy Rules or a Final Order.

7.11.3. **Deadline for Asserting Disputes**. If the Reorganized Debtors seek to dispute any Claim or Interest, (a) if a proof of Claim, request for payment or proof of Interest with respect to such Claim or Interest has been filed in the Bankruptcy Court, they must file and serve an Objection thereto by the later of ninety days after the Effective Date or the date that is thirty days after the filing of the applicable proof of Claim, request for payment or proof of Interest; or (b) whether or not a proof of Claim, request for payment or proof of Interest was filed in the Bankruptcy Court, if the Reorganized Debtors have elected to dispute the Claim or Interest outside of the Chapter 11 Cases, they must initiate appropriate action in another court or tribunal of competent jurisdiction by the later of the Effective Date or the date on which the Debtors would be obligated to pay such Claim or recognize such Interest in the ordinary course of business or pursuant to the terms of any applicable agreement or other document.

7.11.4. **Distributions Relating to Disputed Claims**. Distributions shall be made to a holder of a Disputed Claim only when, and to the extent that, such Disputed Claim becomes an Allowed Claim. Each distribution on account of a Disputed Claim that becomes an Allowed Claim shall be made in accordance with the treatment specified for such Claim in the Plan.

7.11.5. **Estimation of Disputed Claims and Disputed Interests.** The Debtors may, at any time, request that the Bankruptcy Court estimate any Disputed Claim or Disputed Interest subject to estimation under section 502(c) of the Bankruptcy Code and for which the Debtors may be liable under this Plan, including any Disputed Claim or Disputed Interest for taxes, to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim or Interest; and the Bankruptcy Court will retain jurisdiction to estimate any Disputed Claim or Disputed Interest pursuant to section 502(c) of the Bankruptcy Code at any time during litigation concerning any Objection to the Claim or Interest. In the event that the Bankruptcy Court estimates any contingent or unliquidated Disputed Claim or Disputed Interest, that estimated amount will constitute (at the Debtors' option, to be exercised at the commencement of the estimation proceeding) either the Allowed amount of such Claim or Interest or a maximum limitation on the Allowed amount of such Claim or Interest, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Allowed amount of such Claim or Interest, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim or Interest. All of the aforementioned Disputed Claims or Disputed Interests Objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Disputed Claims or Disputed Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

7.11.6. ***Disposition of the FLAG Atlantic Disputed Claims Reserve and the FLAG Holdco Disputed Claims Reserve.*** Upon Final Resolution of a Disputed Claim for which funds were reserved in either the FLAG Atlantic Disputed Claims Reserve and the FLAG Holdco Disputed Claims Reserve which results in the Claim in question is reduced or disallowed in its entirety, the amount of such reduction or Claim (in the event the entire Claim is disallowed) shall be deducted from the FLAG Atlantic Disputed Claims Reserve or the FLAG Holdco Disputed Claims Reserve, as applicable, and transferred to New Holdco free and clear of any Liens and Claims.

7.11.7. ***Limitations on Requirement to Reserve for Certain Disputed Claims.*** Notwithstanding anything to the contrary contained in the Plan, including the definitions of FLAG Holdco Disputed Claims Reserve and FLAG Atlantic Disputed Claims Reserve: (a) the reserve amount necessary for a Disputed Claim that is the subject of a written settlement agreement with the Creditor in question shall, pending Bankruptcy Code approval of such settlement pursuant to Bankruptcy Rule 9019, be the amount needed to pay the agreed settlement amount, rather than the full amount of the Disputed Claim; (b) in the event that a purported Creditor has filed duplicate proofs of Claim against a single Debtor asserting the same Claim, such Debtor shall not be required to reserve for the Claim more than once; and (c) FLAG Holdco and the FLAG Atlantic Debtors shall not be required to reserve any amount on account of any Claim that is also asserted against another Debtor or Non-Debtor Affiliate and which Claims shall be paid in full by such other Debtor or Non-Debtor Affiliate on the Effective Date pursuant to the Plan or in the ordinary course of business, as the case may be.

7.12. ***Merger Rights***. Following the Effective Date, any or all of the Reorganized Debtors, any or all of the subsidiaries of the Reorganized Debtors, and/or New Holdco may, at the sole discretion of each of them and, subject to, and in accordance with, applicable law, be merged into one or more of the Reorganized Debtors.

7.13. ***Surrender of Instruments, Securities and Other Documentation.*** Following the Effective Date, the FLAG Holdco Bondholders, the FLAG Limited Bondholders, and the FLAG Atlantic Banks will receive from their respective Indenture Trustee or agents specific instructions regarding the time and manner in which the instruments relating to such Claims are to be surrendered. Any such instrument that has been lost, stolen, mutilated or destroyed, shall be deemed surrendered when the holder of a Claim based thereon delivers to the applicable Indenture Trustee or agent: (a) evidence satisfactory to the Indenture Trustee or agent of the loss, theft, mutilation or destruction of such instrument or certificate, and (b) such security or indemnity as may be required by the Indenture Trustee or agent to hold each of them harmless with respect thereto. No holder of a FLAG Holdco Bondholder Claim, FLAG Limited Bondholder Claim, or FLAG Atlantic Banks Claim, shall receive any distribution on account of its Claim under the Plan or the Bermuda Schemes until it has complied with the provisions of this Section 7.13. The applicable Indenture Trustee or agent shall return to the applicable Reorganized Debtor any distributions that become Unclaimed Property pursuant to Section 7.10.6 and such amounts shall be revested in the applicable Reorganized Debtor or New Holdco, as appropriate.

7.14. ***Retention of Causes of Action*** . Except as expressly set forth in the Plan (including Section 11.13), and except as the result of the releases set forth in Section 8.4.1 and in the Reach Agreements and the Alcatel Agreements, the Reorganized Debtors do not release or abandon any claims, demands or causes of action owned by them, including any Avoidance Actions, and the Reorganized Debtors may seek to assert such claims, demands and causes of action against any persons at any time, subject to any applicable statutes of limitation. Except as expressly provided herein with respect to the FLAG Atlantic Debtors, any recoveries realized by the Reorganized Debtors from the assertion of any claims, demands and causes of action shall be the sole property of the Reorganized Debtors. To the extent necessary, the Reorganized Debtors shall be deemed representatives of their estates under section 1123(b) of the Bankruptcy Code.

7.15. ***Ratification and Adoption of Executive Retention Plans and Employment and Indemnity Agreement.*** Notwithstanding any other provision of the Plan, on the Effective Date, subject to Section 6.7.6, each of the Executive Retention Plans (as amended in accordance with the terms of Section 6.7 hereof) shall be deemed ratified and adopted by each of the Reorganized Debtors and New Holdco; provided that, without limiting the generality of the foregoing, the Executive Retention Plans and the Executive Employment Agreements (as amended in accordance with the terms of Section 6.7 hereof) shall constitute executory contracts within the meaning of section 365 of the Bankruptcy Code and shall be deemed assumed by the Reorganized Debtors, and assigned to New Holdco, and the non-Debtor parties to such Executive Retention Plans shall be entitled to the treatment with respect to executory contracts specified in Article VI.

7.16. ***Intercompany Claims.*** Each Intercompany Claim arising prior to the Commencement Date shall be Allowed as an Unsecured Claim and each Intercompany Claim arising on or after the Commencement Date shall be Allowed as an Administrative Expense Claim; except that (a) any Intercompany Claims against FLAG Holdco shall be deemed released and extinguished as of the Effective Date; (b) any Intercompany Claims by or against any of the FLAG Atlantic Debtors shall be deemed released and extinguished as of the Effective Date; and (c) any Avoidance Actions by one Debtor against another Debtor or against any Non-Debtor Affiliate shall be deemed released and extinguished as of the Effective Date. Each Holder of an Intercompany Claim hereby agrees that it shall receive no distribution on account of any Intercompany Claim. The amount of such Intercompany Claims shall be disregarded in determining any distributions to, or allocations among, Unsecured Claims or Administrative Expense Claims.

7.17. ***Claims Against Multiple Debtors.*** Except as provided for in the Reach Agreements or otherwise expressly agreed by the Debtors, all guarantees by and of the Debtors of the obligations of any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be only an obligation against the Debtor that is the primary obligor with respect to such obligation; any Claim filed against multiple Debtors shall be deemed to be one Claim for purposes of receiving a distribution under the Plan; and, unless otherwise ordered by the Bankruptcy Court, the disallowance of any such Claim against any Debtor shall be deemed to be the disallowance of such Claim against each of the other Debtors; and the allowance of any such Claim against any Debtor shall be deemed to be the sole allowance of such Claim and such Claim shall not be Allowed against any of the other Debtors. None of the foregoing treatment of guarantees shall affect, other than for purposes related to the Plans (a) the legal and corporate structures of the Reorganized Debtors or New Holdco and (b) the Interests in the Debtors.

7.18. ***Issuance of the Blackstone Note and the Houlihan Note.***

7.18.1. ***Blackstone.*** On the Effective Date, New Holdco shall issue the Blackstone Note under the New Holdco Indenture. The Blackstone Note shall have the same material terms and conditions as the FLAG Holdco Bondholder Notes except: (a) the Blackstone Note shall be transferable, but not tradable; (b) the Blackstone Note shall be in the original principal amount of Four Million Dollars ($4,000,000); (c) the Blackstone Note shall be due and payable two years from the Effective Date; (d) in the event of a Liquidation, the amount necessary to pay the Blackstone Note in full shall be Six Million Dollars ($6,000,000) plus accrued and unpaid interest, less principal amounts prepaid; (e) the Blackstone Note shall not be callable at a discount; (f) the Blackstone Note shall be cross-defaulted with both the FLAG Holdco Bondholder Notes and the Houlihan Note; (g) upon the payment by New Holdco of Five Million Dollars ($5,000,000) of the principal amount of the FLAG Holdco Bondholder Notes, Blackstone's Lien in the Accounts of the Reorganized Debtors, the Non-Debtor Affiliates, and New Holdco shall be cancelled and released; and (h) New Holdco may issue senior secured debt obligations equal and ratable to the Blackstone Note upon the payment by New Holdco of Fifteen Million ($15,000,000) of the original

principal amount of the FLAG Holdco Bondholder Notes. The Blackstone Note shall be secured by Liens on the same assets as the FLAG Holdco Bondholder Notes and shall rank pari passu in priority and right of payment with the FLAG Holdco Bondholder Notes and the Houlihan Note. As such, (a) the Lien shall not attach to property securing Permitted Liens as defined in the New Holdco Indenture, including the Alcatel Collateral and the cash collateral securing the reimbursement obligations under letter of credit facilities with West LB and Barclays Bank plc, and, with respect to FLAG Asia Limited, the Lien shall attach solely to property that FLAG Asia Limited is permitted to pledge as security under the terms of the Reach Development Agreement, and (b) the Lien shall be subject in all respects to Reach's right of quiet enjoyment under section 7.2 the Reach Development Agreement. Notwithstanding anything to the contrary contained in the Plan, New Holdco's obligations under the Blackstone Note shall be subject in all respects to, and conditional upon, the approval of the Bankruptcy Court in connection with the final fee application of Blackstone pursuant to section 328 and 330 of the Bankruptcy Code filed in accordance with the provisions of Section 2.3. The form of the Blackstone Note shall be provided in the Plan Supplement and shall be in form and substance acceptable to Blackstone in its reasonable discretion.

7.18.2. **_Houlihan._** On the Effective Date, New Holdco shall issue the Houlihan Note under the New Holdco Indenture. The Houlihan Note shall have the same material terms and conditions as the FLAG Holdco Bondholder Notes except: (a) the Houlihan Note shall be transferable, but not registered and tradable; (b) the Houlihan Note shall be in the original principal amount of One Million Two Hundred and Fifty Thousand Dollars ($1,250,000); (c) the Houlihan Note shall be due and payable two years from the Effective Date; (d) in the event of a Liquidation, the amount necessary to pay the Houlihan Note in full shall be One Million Eight Hundred and Seventy-Five Thousand Dollars ($1,875,000) plus accrued and unpaid interest, less principal amounts prepaid; (e) the Houlihan Note shall not be callable at a discount; (f) the Houlihan Note shall be cross-defaulted with both the FLAG Holdco Bondholder Notes and the Blackstone Note; (g) upon the payment by New Holdco of Five Million Dollars ($5,000,000) of the principal amount of the FLAG Holdco Bondholder Notes, Houlihan's Lien in the Accounts of the Reorganized Debtors, the Non-Debtor Affiliates, and New Holdco shall be cancelled and released; and (h) New Holdco may issue senior secured debt obligations equal and ratable to the Houlihan Note upon the payment by New Holdco of Fifteen Million ($15,000,000) of the original principal amount of the FLAG Holdco Bondholder Notes. The Houlihan Note shall be secured by Liens on the same assets as the FLAG Holdco Bondholder Notes and shall rank pari passu in priority and right of payment with the FLAG Holdco Bondholder Notes and the Blackstone Note. As such, (a) the Lien shall not attach to property securing Permitted Liens as defined in the New Holdco Indenture, including the Alcatel Collateral and the cash collateral securing the reimbursement obligations under letter of credit facilities with West LB and Barclays Bank plc, and, with respect to FLAG Asia Limited, the Lien shall attach solely to property that FLAG Asia Limited is permitted to pledge as security under the terms of the Reach Development Agreement, and (b) the Lien shall be subject in all respects to Reach's right of quiet enjoyment under section 7.2 the Reach Development Agreement. Notwithstanding anything to the contrary contained in the Plan, New Holdco's obligations under the Houlihan Note shall be subject in all respects to, and conditional upon, the approval of the Bankruptcy Court in connection with the final fee application of Houlihan pursuant to section 328 and 330 of the Bankruptcy Code filed in accordance with the provisions of Section 2.3. The form of the Houlihan Note shall be provided in the Plan Supplement and shall be in form and substance acceptable to Houlihan in its reasonable discretion.

7.19. **_Exchange Rate for FLAG Holdco Bondholder Claims_**. For purposes of distributions to individual holders of FLAG Holdco Bondholder Claims, the amounts of such Claims shall be determined in United States dollars in accordance with the exchange rate in effect on the Commencement Date.

7.20    ***Prohibition on Issuance of Nonvoting Equity Securities***.  In accordance with section 1123(a)(6) of the Bankruptcy Code, New Holdco's charter shall prohibit the issuance by New Holdco of nonvoting equity securities and the Corporate Documents shall include appropriate amendments to the charters of each of the Debtors (other than FLAG Holdco and the FLAG Atlantic Debtors) prohibiting the issuance by any Reorganized Debtor of nonvoting equity securities.

7.21.    ***Bermuda Reorganization Reserve.***  The Debtors shall transfer to the Bermuda Provisional Liquidators Cash equal to the Bermuda Reorganization Reserve on the Effective Date or as soon as practicable thereafter.  If the Debtors have not made this transfer in full within 7 days of the Effective Date, New Holdco forthwith shall transfer to the Bermuda Provisional Liquidators Cash equal to the balance of the Bermuda Reorganization Reserve which was not transferred by the Debtors.  The Bermuda Provisional Liquidators and the Debtors or New Holdco may agree that part of the Bermuda Reorganization Reserve shall be provided by financial instrument such as letter of credit rather than Cash.  If the Bermuda Provisional Liquidators determine that there is a balance remaining in the Bermuda Reorganization Reserve after all the payments due from it have been made, they shall pay the balance to New Holdco.

7.22.    ***Litigation Trust.***

7.22.1.    ***Creation.***  On the Effective Date, the Litigation Trust will be formed.  On the Effective Date, the Debtors shall transfer and assign any choses in action then in existence possessed by the Debtors against any of their officers and directors, together with all insurance coverage applicable to such choses in action, including all choses in action against insurers that sold insurance policies covering liabilities of the Debtors and their directors and officers, to the Litigation Trust, which will retain and liquidate these choses in action as the successor to the Debtors for these purposes.  As and when there is any recovery on these choses in action, whether by settlement, judgment or otherwise, such recovery shall be distributed on a Pro Rata Basis to the Litigation Trust Beneficiaries.

7.22.2.    ***Purpose and Characterization.***  The primary purpose of the Litigation Trust will be to liquidate the assets transferred to it with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the trust in accordance with Treasury Regulation Section 301.7701-4(d).  For U.S. federal income tax purposes, the transfer of assets to the Litigation Trust shall be treated as the transfer of such assets to the Litigation Trust Beneficiaries followed by the transfer of such assets by the Litigation Trust Beneficiaries to the Litigation Trust; and the Litigation Trust Beneficiaries shall be treated as the grantors, or owners, of the Litigation Trust.

7.22.3.    ***Valuation.***  As soon as possible after the Effective Date, but in no event later than ninety (90) days thereafter, the Litigation Trustee, based upon his or her good faith determination, shall inform the Litigation Trust Beneficiaries in writing as to his or her estimate of the value of the assets transferred to the Litigation Trust, which valuation shall be used consistently by the Litigation Trustee and the Litigation Trust Beneficiaries for all purposes, including U.S. federal income tax purposes.

7.22.4.    ***Term.***  The Litigation Trust will terminate on the earlier of (i) sixty (60) days after the final distribution of trust assets in accordance with the terms of the Litigation Trust Agreement and the Plan and (ii) the fifth anniversary of the Effective Date; provided, however, that on or before a date that is less than six (6) months before such termination date, the Bankruptcy Court, upon motion of a party in interest, may extend the term of the Litigation Trust if necessary for the liquidating purpose of the trust. Notwithstanding the foregoing, multiple extensions may be obtained so long as the Bankruptcy Court provides its approval therefor within six (6) months before the expiration date of each extended term.  The

aggregate of all such extensions shall not exceed three (3) years unless the Litigation Trustee receives a favorable ruling from the U.S. Internal Revenue Service that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for U.S. federal income tax purposes.

7.22.5. ***Issuance of Beneficial Interests in the Litigation Trust.*** Beneficial ownership interests in the Litigation Trust will be distributed to the owners of New Holdco Common Shares as of the Effective Date on a Pro Rata Basis in proportion to their pro forma equity ownership of New Holdco on a Fully Diluted Basis, as listed in the table in Section 7.5.1. Beneficial ownership interests in the Litigation Trust will not be evidenced by certificates and will not be transferable.

7.22.6. ***Expenses.*** The reasonable expenses of the formation and operation of the Litigation Trust will be paid exclusively by New Holdco; provided, however, that the liability of New Holdco under this Section 7.22.6 shall not exceed $150,000 in total. New Holdco shall, on the Effective Date, provide an initial funding amount of $50,000 toward such costs and expenses and shall transfer such initial funding amount to the Litigation Trust. The affairs of the Litigation Trust shall be governed by the Litigation Trust Agreement, substantially in the form attached as Exhibit A hereto. Certain modified tax disclosures with respect to the Litigation Trust are attached as Exhibit B hereto.

# VIII.

## EFFECT OF CONFIRMATION OF PLAN

8.1. ***Revesting of Assets.*** Except as expressly provided herein (including Section 11.13), the property of the estate of each of the Debtors shall revest in the respective Reorganized Debtors on the Effective Date. From and after the Effective Date, the Debtors may operate their businesses, and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, except as provided herein. As of the Effective Date, all property of the Debtors shall be free and clear of all Claims and Interests, except as provided in the Plan and Bermuda Schemes. This clause shall be subject where applicable to the role of the Bermuda Provisional Liquidators.

8.2. ***Discharge of Debtors.*** Except as otherwise expressly provided in the Plan (including Section 11.13) or the Confirmation Order, the Confirmation of the Plan shall, as of the Effective Date: (i) discharge the Debtors from all Claims, demands, liabilities, other debts and Interests that arose on or before the Effective Date, including all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (A) a proof of Claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (B) a Claim based on such debt is Allowed pursuant to section 502 of the Bankruptcy Code or (C) the holder of a Claim based on such debt has accepted the Plan; (ii) cancel all Interests and other rights of equity Security holders in the Debtors except to the extent that the Plan expressly provides for the retention or Reinstatement of such Interests, whether or not (A) a proof of Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (B) an Interest is Allowed pursuant to section 502 of the Bankruptcy Code or (C) the holder of an Interest has accepted the Plan; and (iii) preclude all persons from asserting against the Reorganized Debtors, their successors, or their assets or properties, any other or further Claims or Interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, all pursuant to sections 524 and 1141 of the Bankruptcy Code. The discharge provided in this Section 8.2 shall void any judgment obtained against a Debtor at any time, to the extent that such judgment relates to a discharged Claim or cancelled Interest.

8.3.    ***Injunction Related to the Discharge.***  Except as otherwise provided in the Plan (including Section 11.13) or the Confirmation Order, all entities that have held, currently hold, or may hold Claims or other debts or liabilities against the Debtors, or an Interest or other right of an equity Security holder in any or all of the Debtors, that are discharged pursuant to the terms of the Plan are permanently enjoined, on and after the Effective Date, from taking any of the following actions on account of any such Claims, debts, liabilities or Interests or rights:  (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, debt, liability, Interest or right, other than to enforce any right to a distribution pursuant to the Plan; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtors, the Reorganized Debtors, or their property or interests in property, on account of any such Claim, debt, liability, Interest or right; (iii) creating, perfecting, or enforcing any Lien or encumbrance against the Debtors, the Reorganized Debtors or their property or interests in property on account of any such Claim, debt, liability, Interest or right; (iv) asserting any right of setoff, subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors or the Reorganized Debtors or against their property or interests in property on account of any such Claim, debt, liability, Interest or right; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.  Such injunction shall extend to any successor of the Debtors (including the Reorganized Debtors) and their respective property and interests in property.  Any entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

8.4    ***Releases.***

8.4.1.    ***Releases by the Debtors and Non-Debtor Affiliates.***  Except for obligations expressly created or Reinstated under the Plan, as of the Effective Date, the Debtors and the Non-Debtor Affiliates, their successors and assigns, and each of them, and all persons or entities claiming through or under them, shall be deemed to have forever relieved, released and discharged the Released Parties, along with the Released Parties' attorneys and financial advisors in connection with these Chapter 11 Cases, and each of them, each in its respective capacity as described with respect to the Released Party, jointly and severally from any and all Claims, demands, claims for relief, causes of action, debts, losses and liabilities, or any combination of the same, of every type and nature whatsoever, whether known or unknown, whether suspected or unsuspected, whether at law or in equity, whether fixed or contingent, whether liquidated or unliquidated, whether matured or unmatured, whether direct, indirect or consequential, and whether asserted or unasserted, which any of the releasing parties or the persons or entities on whose behalf they release had, now have, or may, shall, or can hereafter have for or by the reason of any occurrences, events, or facts whatsoever from the beginning of time to the Effective Date, related to any of the Debtors, the Estates, the Chapter 11 Cases, any Claims against the Debtors, any Liens against property of the Estates or the Debtors, any Interest in any Debtor, any Security issued by any Debtor, the Plan, or any of the facts discussed in the Disclosure Statement.

8.4.2.    ***Releases by Certain Parties.***  Except for obligations expressly created or Reinstated under the Plan, as of the Effective Date, in exchange for their receipt of distributions and other treatment contemplated under this Plan, including the release by the Debtors in the immediately preceding Section, the Released Parties, their successors and assigns, and each of them, and all persons or entities claiming through or under them, shall be deemed to have forever relieved, released and discharged the Debtors, the Non-Debtor Affiliates, the Bermuda Provisional Liquidators, Gibson, Dunn & Crutcher LLP, and Blackstone, and each of them, jointly and severally from any and all Claims, demands, claims for relief, causes of action, debts, losses and

liabilities, or any combination of the same, of every type and nature whatsoever, whether known or unknown, whether suspected or unsuspected, whether at law or in equity, whether fixed or contingent, whether liquidated or unliquidated, whether matured or unmatured, whether direct, indirect or consequential, and whether asserted or unasserted, which any of the releasing parties or the persons or entities on whose behalf they release had, now have, or may, shall, or can hereafter have for or by the reason of any occurrences, events, or facts whatsoever from the beginning of time to the Effective Date, related to any of the Debtors, the Estates, the Chapter 11 Cases, the Bermuda Proceedings, any Claims against the Debtors, any Liens against property of the Estates or the Debtors, any Interest in any Debtor, any Security issued by any Debtor, the Plan, or any of the facts discussed in the Disclosure Statement.

8.4.3. ***Exclusions and Clarifications with Respect to Releases.*** Notwithstanding anything to the contrary contained in the Plan:

(a) The Debtors and Alcatel will not release each other from any preserved Claims referenced as preserved Claims in the FLAG Asia Term Sheet (attached as Exhibit A to the Reach and Alcatel Assumption Order) and the Alcatel Agreements.

(b) Nothing in the Plan will affect, release, enjoin, estop or otherwise impact in any way the prosecution of any Claim, demand, liability, cause of action, or right asserted or assertable against non-Debtor parties or by any party (whether directly or derivatively through the Debtors or their successors or assigns), except (i) as expressly provided in Sections 8.4.1 and 8.4.2, and (ii) if any individual Creditor that is entitled to vote to accept or reject the Plan fails to opt to retain its Claims against the Debtors' current and former officers and directors pursuant to Section 8.4.4 then all such Claims of that Creditor against the Debtors' current and former officers and directors shall be deemed released pursuant to Section 8.4.4.

(c) For purposes of clarification, nothing in the Plan will affect, release, enjoin, estop or otherwise impact in any way the prosecution of any Claim, demand, liability, cause of action, or right asserted or assertable directly, or derivatively through the Debtors or their successors or assigns, against the Debtors' current and former directors and officers by any party, including without limitation a representative appointed by a court of competent jurisdiction, other than a Creditor that has failed to opt to retain its Claims pursuant to Section 8.4.4 and any such unreleased Claims shall be preserved. The Plan does not release (i) the Debtors' current and former directors and officers from any Claim, demand, debt, liability, cause of action, right or Interest asserted or assertable (x) directly by, or derivatively through, the Debtors or their successors or assigns, and/or (y) directly by or on behalf of the Purported Class Action Plaintiffs (as that term is defined in the Disclosure Statement) and any such Claims shall be preserved, and may be asserted by or on behalf of the Purported Class Action Plaintiffs and/or by the applicable Debtor, its successor or assign (including the Litigation Trust), or a representative assigned by a court of competent jurisdiction, or (ii) any Claim, demand, liability, cause of action, or right asserted or assertable by or on behalf of the Purported Class Action Plaintiffs against non-Debtor parties.

(d) The Plan does not contain any releases by and among the Released Parties, and all Claims that may exist by one Released Party against any other Released Party shall survive and be unaffected by confirmation of the Plan.

8.4.4. **Option to Release Claims Against Directors and Officers.** The ballots distributed to holders of Claims in Classes entitled to vote to accept or reject the Plan shall contain a space where the Creditor may indicate its desire to retain its Claims, if any, asserted or assertable directly or indirectly through the Debtors or their successor or assigns against the Debtors' current and former officers and directors. Notwithstanding anything to the contrary contained in the Plan, each Creditor who affirmatively indicates its option to retain such Claims shall be deemed not to release any Claims, demands, claims for relief, causes of action, debts, losses and liabilities, or any combination of the same, against the Debtors' current and former directors and officers as a result of any provision of the Plan. If a creditor does not indicate an option to retain such Claims, demands, claims for relief, causes of action, debts, losses and liabilities, or combination of the same, they will be released upon the Effective Date. The provisions of this Section 8.4.4 do not affect any Class of Creditors that is not entitled to vote to accept or reject the Plan, including those Classes containing Section 510(b) Claims.

8.4.5. **Injunction Related to Releases.** The Confirmation Order will constitute an injunction permanently enjoining the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claim, demand, debt, liability, cause of action, right or Interest released and waived pursuant to the Plan against the released parties.

8.4.6. **Further Provision with Respect to Insurance Policies.** Nothing contained in the Plan is intended to impair or adversely affect the right of any party to coverage under any of the Debtors' insurance policies, or reduce or modify the obligations of any or all insureds under the Debtors' and the Non-Debtor Affiliates' insurance policies to procure and/or ensure their continued compliance with all such insurance policies' terms and conditions.

8.5. **Release of Liens.** On the Effective Date, all Liens and rights of setoff against the property of any Estate shall be released, and all of the right, title and interest of any holder of any Lien shall revert to the applicable Reorganized Debtor and its successors and assigns, except: (a) as otherwise expressly provided in the Plan or in any contract, instrument, indenture or other agreement or document expressly incorporated by reference in the Plan, (b) with respect to the rights and interests of Alcatel in the Alcatel Collateral and the cash collateral securing the reimbursement obligations under letter of credit facilities with West LB and Barclays Bank plc, and (c) with respect to any rights of setoff by Reach expressly preserved or created under the Reach Agreements.

8.6. **Term of Bankruptcy Injunction or Stays.** All injunctions or stays provided for in the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date or, solely with respect to the holders of Disputed Claims, the date on which the such Disputed Claim has been resolved, whether by consent, Final Order or otherwise.

8.7. **Binding Effect**. The Plan shall be binding upon, and inure to the benefit of, the Debtors and all holders of Claims and Interests, and their respective successors and assigns, whether or not the Claims and Interests of such holders are impaired under the Plan and whether or not such holders have accepted the Plan.

## IX.

## EFFECTIVENESS OF THE PLAN

9.1.     *Conditions Precedent*.  The Plan shall not become effective unless and until the following conditions have been satisfied:  (a) at least ten (10) days shall have passed after the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Debtors; (b) there shall not be in force any order, decree or ruling of any court or governmental body having jurisdiction, restraining, enjoining or staying the consummation of, or rendering illegal the transactions contemplated by, the Plan; (c) all authorizations, consents and regulatory approvals (if any) necessary to effectuate the Plan shall have been obtained; and (d) the conditions in the Bermuda Schemes (save for the effectiveness of the Plan) shall have been satisfied or waived in accordance with the terms of the Bermuda Schemes.

9.2.     *Effect of Failure of Conditions*.  In the event that the conditions specified in Section 9.1 have not been satisfied or waived in the manner provided in Section 9.3 below on or before sixty days after the Confirmation Date, then upon written notification filed by the Debtors with the Bankruptcy Court and served upon counsel for the Bermuda Provisional Liquidators, counsel for the Creditors' Committee, counsel for the Ad Hoc FLAG Holdco Bondholders' Committee, counsel to the Subcommittee of FLAG Limited Bondholders, counsel to the FLAG Atlantic Banks, counsel for the Bermuda Provisional Liquidators, counsel for Reach, counsel for Alcatel, counsel for Ciena, and the U.S. Trustee, (a) the Confirmation Order shall be vacated and the Bermuda Court Order sanctioning the Bermuda Schemes shall not be filed with the Bermuda Registrar of Companies, (b) no distributions under the Plan and Bermuda Schemes shall be made, (c) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) all the Debtors' obligations with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

9.3.     *Waiver of Conditions*.  The conditions set forth in Sections 9.1(a), (b) and (c) may be waived by the Debtors, with the consent of the Creditors' Committee, unless proscribed by law.  Any such waivers shall be evidenced by a writing, signed by the Debtors, that is filed with the Bankruptcy Court and served upon counsel for the Bermuda Provisional Liquidators, counsel for the Creditors' Committee, counsel for the Ad Hoc FLAG Holdco Bondholders' Committee, counsel to the Subcommittee of FLAG Limited Bondholders, counsel to the FLAG Atlantic Banks, counsel for the Bermuda Provisional Liquidators, counsel for Reach, counsel for Alcatel, counsel for Ciena, and the U.S. Trustee.

## X.

## RETENTION OF JURISDICTION

10.1.     *Bankruptcy Court.*  The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes: (a) to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, and the allowance of Claims resulting therefrom; (b) to determine any and all adversary proceedings, applications, and contested matters; (c) to hear and determine any Objections to Administrative Expense Claims or to other Claims; (d) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(e) to issue such orders in aid of execution of the Plan as may be necessary or appropriate to carry out its intent and purpose or to implement the Plan; or in furtherance of the discharge, to the extent authorized by section 1142 of the Bankruptcy Code; (f) to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order; (g) to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 327, 328, 329, 330, 331, 503(b), and 1103 of the Bankruptcy Code; (h) to ensure that distributions and rights granted to holders of Allowed Claims and Interests are accomplished as provided herein; (i) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan; (j) to enforce any order, judgment, injunction or ruling entered or made in the Chapter 11 Cases; (k) to recover all assets of the Debtors and all property of the Chapter 11 Estates, wherever located; (l) to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code; (m) to hear any other matter not inconsistent with the Bankruptcy Code; or (n) to enter a final decree closing the Chapter 11 Cases.

10.2. ***No Limitation on Bermuda Court.*** Notwithstanding the foregoing, nothing in this Article X shall be construed as a limitation on the jurisdiction of the Bermuda Court in the Bermuda Proceedings or in respect of the Bermuda Schemes. The Bermuda Court shall have exclusive jurisdiction in respect of the Bermuda Reorganization Reserve and matters making up such reserve.

## XI.

## MISCELLANEOUS PROVISIONS

11.1 ***Plan Supplement***. No later than ten (10) days prior to the Confirmation Hearing Date, the Debtors shall file with the Bankruptcy Court in the Plan Supplement such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Such documents shall include the notes, guarantees, and security documents related to the FLAG Holdco Bondholder Notes, the New Holdco Indenture, the amended and restated Corporate Documents, including the formation documents for New Holdco, the terms of the New Holdco Common Shares, all documents necessary to effectuate the transfers contemplated under the Plan, and the list of contracts to be rejected under Section 6.2. If required by the Trust Indenture Act of 1939, as amended, New Holdco shall make the appropriate application for the qualification of the New Holdco Indenture. Upon the filing of the Plan Supplement with the Court, (a) the Debtors will serve copies of the Plan Supplement on the U.S. Trustee, counsel to the Creditors' Committee, counsel for the Ad Hoc FLAG Holdco Bondholders' Committee, counsel to the Subcommittee of FLAG Limited Bondholders, counsel for the FLAG Atlantic Banks, counsel for the Bermuda Provisional Liquidators, counsel for Reach, counsel for Alcatel, counsel for Ciena, counsel for the FLAG Holdco Indenture Trustee, and all non-Debtor parties to executory contracts and unexpired leases that are included in the list of such contracts and leases to be rejected as of the Effective Date pursuant to Section 6.2, and (b) the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to the Debtors' counsel.

11.2. ***Authorization of Effectuating Documents and Further Transactions***. Each of the officers of the Debtors is authorized in accordance with their authority under the resolutions of the respective boards of directors of the Debtors to execute, deliver, file, or record such contracts, instruments, releases, indentures and other agreements or documents, and to take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan and the debt and equity securities issued pursuant to the Plan.

11.3.    ***Exemption from Transfer Taxes***.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of amalgamation or consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

11.4.    ***Statutory Fees***.  All fees payable under section 1930 of chapter 123 of title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing at which the Court considers confirmation of the Plan shall be paid on the Effective Date.  Any such fees accrued after the Effective Date shall be paid when due pursuant to such section 1930 until the entry of a final decree or the conversion or dismissal of the Chapter 11 Cases.

11.5.    ***Termination of Creditors' Committee***.  On the date by which both (a) the Effective Date has occurred and (b) the Confirmation Order has become a Final Order, the Creditors' Committee shall cease to exist and its members, employees or agents (including attorneys, investment bankers, financial advisors, accountants and other professionals) shall be released and discharged from any further authority, duties, responsibilities and obligations relating to, arising from, or in connection with the Creditors' Committee.  The Creditors' Committee shall continue to exist after such date solely with respect to all applications seeking payment of Professional Fees, and any matters pending as of the Effective Date in the Chapter 11 Cases, until such matters are finally resolved.

11.6.    ***Employment and Payment of Debtors' Professionals After Effective Date***.  The Debtors may employ and pay professionals, including any professionals retained in the Chapter 11 Cases, with respect to services to be rendered after the Effective Date, including services in connection with the implementation and consummation of the Plan, without further order of the Bankruptcy Court.

11.7.    ***Release and Exculpation with Respect to Actions Related to Plan and Chapter 11 Cases***.  None of the Debtors, the Creditors' Committee and its members (in such capacity), the Bermuda Provisional Liquidators, the Ad Hoc FLAG Holdco Bondholders' Committee and its members (in such capacity), or the Subcommittee of FLAG Limited Bondholders and its members (in such capacity), Barclays, or any of their respective successors, assigns, and past and present attorneys, accountants, financial advisors, agents, principals, representatives, affiliates, parents, subsidiaries, officers, directors, partners, employees, employers, sureties, and stockholders, shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, or arising out of:  (a) the negotiation, documentation or implementation of the transactions contemplated herein (including the considerations of alternatives thereto (if any)), (b) the pursuit of confirmation of the Plan, (c) the consummation of the Plan, (d) the administration of the Plan or the property to be distributed under the Plan, or (e) the administration of the Chapter 11 Cases, in all cases except to the extent such liability of a released party under this Section is determined by a court of competent jurisdiction to have arisen primarily as a result of that party's gross negligence or willful misconduct (including any breach of fiduciary duty constituting gross negligence or willful misconduct); and, in all respects, the parties released hereunder shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

11.8.    ***Amendment or Modification of Plan***.  Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date, if the Plan, as altered, amended or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors have complied with section 1125 of the Bankruptcy Code.  Without limiting the foregoing, the Debtors expressly reserve the right to modify or amend the Plan in such a manner so as to

provide for reorganization of any of the Debtors individually or any group of less than all of the Debtors. The Plan may be altered, amended or modified at any time after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court after notice and hearing confirms the Plan as altered, amended or modified.  A holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended or modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Interest of the holder.  Otherwise, the Debtors may alter, amend or modify the treatment of Claims and Interests provided for under the Plan if the holders of Claims or Interests affected thereby agree or consent to any such alteration, amendment or modification.

11.9.    *Severability*.  In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, the Debtors may, at their option, (a) treat such provision as invalid, void or unenforceable with respect to the holder or holders of such Claims or Interests that the provision is determined to be invalid, void or unenforceable, in which case such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan, or (b) alter, amend, revoke, or withdraw the Plan.

11.10.    *Revocation or Withdrawal of Plan*.  The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

11.11.    *Governing Law*.  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or Bermuda law are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of law thereof.

11.12.    *Notices*.  Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid.  If to the Debtors, any such notice shall be directed to the following at the addresses set forth below:

Kees van Ophem
General Counsel
FLAG Telecom Holdings Limited
9 South Street
London, England W1K 2XA
United Kingdom

**with a copy to**

**Gibson, Dunn & Crutcher LLP**
**200 Park Avenue**
**New York, New York  10166**
**Attention: Conor D. Reilly**
         **M. Natasha Labovitz**
         **Craig A. Bruens**

    11.13.   ***Effect on Certain Agreements and Reach and Alcatel Assumption Order.***
Notwithstanding anything to the contrary contained herein, the Plan shall not be construed as limiting,
modifying, expanding, effecting, altering, enlarging, or amending, the rights and obligations of the
Debtors, Alcatel, Ciena, and Reach, under (a) the FLAG Asia Termsheet (attached as Exhibit A to the
Reach and Alcatel Assumption Order), FLAG Atlantic Termsheet, FLAG Network Services Termsheet,
and the Ciena Settlement Term Sheet, (b) Reach and Alcatel Assumption Order, (c) the Reach
Agreements, and (d) the Alcatel Agreements.

    11.14.   ***Special Provisions Regarding the Continuance of Retiree Benefits.***  Notwithstanding
anything to the contrary contained in this Plan, the Reorganized Debtors (other than FLAG Holdco and
the FLAG Atlantic Debtors) shall continue payment of all Retiree Benefits, if any, after the Effective Date
at the level of at least that established pursuant to subsection (e)(1)(B) or (g) of section 1114 of the
Bankruptcy Code.  Any and all Claims of the beneficiaries of such Retirement Benefits shall be deemed
Reinstated as of the Effective Date.

    11.15.   ***Direction to Parties.***  From and after the Effective Date, any Party in Interest may apply to
the Bankruptcy Court for an order directing any necessary party to execute or deliver or to join in the
execution and delivery of any instrument required to effect a transfer of property dealt with by the Plan, and
to perform any other act that is necessary for the consummation of the Plan, pursuant to section 1142(b) of
the Bankruptcy Code.

11.16.  **_Inconsistency_.**  In the event of any material inconsistency between the Plan and the Disclosure Statement, any exhibit to the Plan or Disclosure Statement or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern.

Dated:  September 23, 2002

FLAG TELECOM HOLDINGS LIMITED,
FLAG LIMITED,
FLAG TELECOM GROUP SERVICES LIMITED,
FLAG PACIFIC USA LIMITED,
FLAG TELECOM LIMITED,
FLAG TELECOM USA LTD.,
FLAG ASIA LIMITED,
FLAG ATLANTIC HOLDINGS LIMITED,
FLAG ATLANTIC LIMITED, and
FLAG ATLANTIC USA LIMITED

By: _____
    Kees van Ophem
    General Counsel

GIBSON, DUNN & CRUTCHER LLP

By: _____
    Conor D. Reilly
    M. Natasha Labovitz
    Craig A. Bruens

Attorneys for Debtors

30272486_31_1.doc